UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x

SONYA HONG and MARK WHITSETT,

                        Plaintiffs          DOCKET NO.

**CV 25 - 922**

-against-

                                      **COMPLAINT**
                                 *Jury Trial Demanded*

CITY OF NEW YORK, NEW
YORK CITY DEPARTMENT OF FINANCE,
NEW YORK CITY OFFICE OF TECHNOLOGY
AND INNOVATION, NYC DEPARTMENT
OF CITYWIDE ADMINISTRATIVE SERVICES,
and  ERIC ADAMS,

           SCANLON, M.J.

                 Defendants
_____x

**PLAINTIFFS SONYA HONG  and MARK WHITSETT,** ("Plaintiffs") proceeding Pro

Se, as and for their Summons and Complaint filed to protect their Constitutional rights

against the above-captioned Defendants City of New York, New York City Department of

Finance, New York City Office of Technology and Innovations (formerly DOITT), NYC

Department of Citywide Administrative Services and Eric Adams (henceforth

"Defendants"), alleges upon knowledge as to their own facts and upon information and

belief as to all other matters:

## PRELIMINARY STATEMENT

1.  After the COVID-19 pandemic panic became a topic of concern in the fall of 2019, the

    City of New York started a process that was based upon an autocratic presumption of

    police power with widespread discrimination in implementing its vaccine mandates.

2.  The First Amendment to the Constitution of the United States protects the right of the


RESUME OFFICE
FEB 21 '25 PM5:30

1

individual to freedom in his or her religious belief and from bodily harm. This freedom is subject only to the qualification that its exercise may be limited by governmental action where such exercise clearly and presently endangers the public health, welfare or morals. The instant case illustrates one facet of the problem which arises when public interests conflict with private interests. Prince v. Massachusetts, 321 U.S. 158 (1943); In re Estate of Brooks, 32 Ill.2d 361, 205 N.E.2d 435 (1965). The COVID Vaccine Mandate (CVM) was not neutral or generally applicable, and Defendants refused to give strict scrutiny to any accommodation request or appeal.

3. By discarding due process rights and adopting a facially discriminatory religious accommodation policy and a meaningless medical accommodation procedure, Defendants also conditioned approvals for municipal workers - who wanted to continue working while unvaccinated- on membership in a favored religion and on blind support for an Emergency Use Authorization (EUA) vaccine that was temporary yet created permanent harm for Plaintiffs. This order allowed accommodations for remaining unvaccinated.
   **EXHIBIT 1 The Department of Health Order.**

4. While hundreds of municipal workers were given approved remote positions for their religious beliefs and/or medical condition pursuant to invalid, lawless and unknown reasons never explained, Plaintiffs were denied approval, which made very little sense as both worked in jobs that were not public-facing, and had made accommodations for employees.

5. What is now known is that the City made asking for an accommodation into "misconduct", a new disciplinary charge that the City punished by termination. It is also clear that the NYC COVID Vaccine Mandate ("CVM") was unconstitutional, and not neutral or generally applicable when implemented for municipal workers in NYC,

including Plaintiffs Hong and Whitsett.

6. The City and other Defendants acting under color of law created the COVID Vaccine Mandate ("CVM") in order to terminate as many municipal workers as possible in a lawless manner and punish anyone who challenged their presumed total power. The goal was to fire municipal workers who had employment protections such as Civil Service titles, which are soundly despised by the leaders of City politics.

7. That's not all that went wrong in 2021-2022. Not a single union in the City agreed with, or ratified, a change of the terms and conditions in their contracts that agreed with the City's mandate to coerce their members into getting vaccinated or lose their jobs. Yet the City imposed the CVM and argued that the mandates changed union workers' terms of employment. This was a lie. The City used this false information and their power over the City budget and salaries as collateral, destroying the lives of thousands of honest, good workers and their families.

8. This action seeks recovery of monetary damages for the violation of constitutional rights and due process enshrined in Federal Statutes and state law.

## JURISDICTION AND VENUE

9. This is a civil action seeking injunctive relief, monetary relief, including past and on-going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected procedural and substantive due process rights pursuant to 42 U.S.C. Section 1983, 1st, 5th and 14th Amendments to the United States Constitution, 42 U.S. Code § 2000e et seq., New York State Human Rights Law (NYSHRL), NY Executive Law §296 et seq., and New York City Human Rights Law (NYCHRL), NYC Administrative Code Title 8, and New York City Civil Service Laws 75-b and 77.

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343 for claims arising federal questions under 42 U.S.C. §1983 and 42 U.S.C. §1988, in particular the protections given by the Free Exercise Clause, Equal Protection Clause, First, Fifth, and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Civil Service Laws protecting procedural and substantive due process rights..

11. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiffs' claims within the original jurisdiction of this Court that they form part of the same case or controversy.

12. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiffs as well as committing fraud in the inducement.

13. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because this is the district in which a substantial part of the events giving rise to the Plaintiffs' claims occurred.

14. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. Plaintiffs submitted their religious and medical accommodation requests in a timely fashion yet were never given any dialogue on what accommodation could be offered or reasons for the deprivation of Constitutional rights.

16. Plaintiffs were denied their due process pursuant to the DC 37 contracts, and City, State,

and Constitutional Law.

## **PARTIES**

17.  Plaintiff SONYA HONG held two titles at the same time at the NYC Department of Finance: first, from 09/04/2018, City Research Scientist, Data Analyst/Modeler (Non-Competitive title); second, from 06/17/2019 Statistician (Competitive Permanent Title). She had an impeccable reputation and record. Her job was not public-facing.

18. At all relevant times, Plaintiff was a public employee of DOF within the meaning of an "employee" as defined in NYSCHRL and NYCHRL and New York State Civil Service Laws § 75, 77. She lives in Brooklyn, N.Y.

19. Plaintiff MARK WHITSETT started working at the Office of Technology and Innovations OTI, (Formerly, Department of Information Technology and Telecommunications (DOITT)) in 09/08/2008. He obtained the title Certified IT Administrator (LAN/WAN) as Senior Data Protection Engineer (Competitive Permanent Title). His job was not public-facing.

20. At all relevant times, Plaintiff Whitsett was an employee of DOITT and then OTI and the City within the meaning of the NYSHRL and NYCHRL and New York State Civil Service Laws § 75, 77. He lives in Brooklyn, N.Y.

21. Defendant the CITY OF NEW YORK, acting under color of law, is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

22. Defendant the NEW YORK CITY DEPARTMENT OF FINANCE, acting under color of

law, is an agency of the CITY OF NEW YORK. The principal office is located at 66 John Street, 9th Floor, N.Y., N.Y.10038.

23. Defendant the NEW YORK CITY OFFICE OF TECHNOLOGY AND INNOVATIONS, acting under color of law, is an agency of the CITY OF NEW YORK. The principal office is located at 2 Metrotech Center, Brooklyn, N.Y. 11201.

24. Defendant the NYC DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, acting under color of law, is an agency of the CITY OF NEW YORK. The principal office is located at 1 Centre Street, 17th Floor, N.Y., N.Y. 10007.

25. At all times herein mentioned, Defendants DOF, OTI, DCAS, and City of New York have been "employers" as defined by the NYSHRL (N.Y. Exec. Law § 292(5)) and the NYCHRL (N.Y.C. Admin. Code § 8-102).

26. At all relevant times herein, Eric Adams was the Mayor of the City of New York, was acting under color of law, and was responsible for creating, executing, and enforcing the Vaccine Mandate. Mayor Adams is responsible for setting and overseeing the policies of the City and the manner in which they are maintained, applied, and enforced. Mayor Adams acted at all times under color of law in the acts attributed to him herein. Mayor Adams' office is located at 1 City Hall, New York, NY 10007.

27. At all times herein mentioned, Defendants employed no fewer than fifteen (15) persons.

## STATEMENT OF RELEVANT FACTS

### City Vaccine Mandate (CVM) (Plaintiff Sonya Hong)

28. Plaintiff Hong had two titles at the Department of Finance:

   09/04/2018   City Research Scientist (Non-competitive title starting on the hire date)
   Data Analyst / Modeler.

06/17/2019    Statistician (Competitive Permanent title)

29. On March 17, 2020 the Department of Finance went on remote/telework schedule.

30. On May 3, 2021 Plaintiff Hong and all other employees returned to the office, and DOF set up a hybrid work schedule where two groups, Group A and Group B alternated between 2 days (week 1) and 3 days (week 2) in-person hybrid schedule. Telework was permitted until September 2021, at which time Plaintiff was allowed to use intermittent FMLA leave between May 2021 through September 2021.

31. In preparation for the return to the office during COVID, Plaintiff Hong's office at the Department of Finance was re-designed with Plexiglass to separate each employee from other employees. Employees wore masks during the hybrid in-office schedule, and sat 6 feet apart with different groups coming in on different days (Group A and Group B hybrid schedule is on the excel chart). When Plaintiff went in full-time, she did weekly testing for COVID. EXHIBIT 2 DOF Return to Work Hybrid Plan.

32. Plaintiff Hong used intermittent FMLA between May 7, 2021 – Sept. 17, 2021; and Jan. 5, 2022 – Jan. 14, 2022, to take care of her children due to school closure due to COVID.

33. On September 13, 2021 the DOF office opened full-time and Plaintiff Hong was required to test for COVID weekly, wear a mask and social distance.

34. On October 27, 2021 Plaintiff Hong submitted to the Equal Employment Opportunity office ("EEO") her request for a religious exemption, and a request for a medical accommodation. She was told she had to apply, even though her workplace accommodated her by separating employees and intermittent remote work. **EXHIBIT 3** Hong Religious Statement; **EXHIBIT 4** Hong Medical Statement.

35. Plaintiff Hong's religious request was denied on November 12, 2021. **EXHIBIT 5** Hong Religious Exemption Denied.

36. Plaintiff remained on salary, working for DOF, with weekly COVID testing, masking and social distancing. From April 16, 2022 – April 29, 2022 Plaintiff Hong tested positive for COVID and was on excused leave.

37. On May 31, 2022 Plaintiff Hong was notified that her medical accommodation request was denied. **EXHIBIT 6** Medical Appeal denied.

38. On June 6, 2022 Plaintiff Hong was forced to sign the unlawful document that was titled "LWOP" in which she had to sign away her right to sue for the deprivation of Constitutional rights to her job.

39. On June 30, 2022 Plaintiff Hong was informed by DOF that she was terminated because she did not get vaccinated by order of the Health Commissioner. She was told that "Compliance with that order is a condition of employment" which was a lie. She was already accommodated at work by the separation of employees, the mask and test policy, and the fact that her job was not public-facing. None of that relevant information mattered. Plaintiff was the only employee in her Group who was terminated. **EXHIBIT 7** Hong Termination.

40. This termination violated her Civil Service right to a due process, and did not comply with the Guidelines For the Administration of Reduction in Force issued by the NYC Department of Civil Service. https://www.cs.ny.gov/extdocs/pdf/rif_guidelines.pdf

41. On or about September 26, 2022, Plaintiff Hong was told by the NYS Department of Labor to which she had applied for unemployment, that the DOF had claimed Plaintiff was guilty of misconduct, thus denying all unemployment benefits. Plaintiff Hong was given no chance to clear her name from her file and was deprived of her due process rights.

**EXHIBIT 8** Hong unemployment Denied

42. After Mayor Adams made CVM voluntary, not mandatory, on February 10, 2023, Plaintiff requested reinstatement to her former position on March 13, 2023. On April 17, 2023 DOF denied her reinstatement request. On April 28, 2023 Plaintiff Hong asked DOF for reinstatement to any unit with a similar position. On May 1, 2023 the NYC DOF denied reinstatement to similar jobs to any unit at the DOF.

43. On June 21, 2023 Plaintiff Hong asked the DOF for reinstatement because a vacancy to the former position and title opened in the Tax Policy's Data Intelligence Group. On June 26, 2023 the DOF denied Plaintiff Hong reinstatement to this vacant position.

44. On December 7, 2023, Plaintiff Hong applied for Data Analyst/Modeler position in the Tax Policy's Data Intelligence Group, the same job that Plaintiff Hong held before at the NYC Department of Finance.

45. On February 15, 2024, Plaintiff Hong received information that a previous co-worker, Oren Shmuel, left the group. Hong emailed Brett Morgenstern, the previous manager at NYC Department of Finance, about the vacant Data analyst/Modeler position in the Tax Policy's Data Intelligence Group and informed him about the availability and willingness to return to the position. There was no response from Brett Morgenstern, Director of Tax Policy and Data Analytics Division's Data Intelligence Group. Brett Morgenstern reports and defers to Karen Schlain, the Deputy Commissioner of Tax Policy and Data Analytics, who is the decision maker and responsible for the Tax Policy and Data Analytics group decisions. Plaintiff was not hired.

46. Throughout 2024 and continuing in 2025, Plaintiff Hong sent out her resume seeking positions that she was qualified for to several City Agencies. She received no response.

47. The unlawful LWOP and CVM implemented in New York City has permanently labelled Plaintiff Hong as guilty of misconduct. The City has never informed her of any procedures on how to restore her good name, give her back the job she loved and compensate her for her financial losses incurred by the injustice of the termination.

### City Vaccine Mandate (CVM) (Plaintiff Mark Whitsett)

48. Plaintiff MARK WHITSETT started working at the Office of Technology and Innovations OTI, (Formerly, Department of Information Technology and Telecommunications (DOITT)) in 09/08/2008. He obtained the title Certified IT Administrator (LAN/WAN) as Senior Data Protection Engineer (Competitive Permanent Title). His job was not public-facing.

49. From March 2020 to September 2021, the entire agency worked from home with the exception of a few infrastructure employees due to the pandemic.

50. During a few concluding months of the work from home time, Plaintiff Whitsett was on a partial FMLA leave so he could care for one of his children while daycare places were still closed for business.

51. Plaintiff Whitsett returned to the office a few months after the agency went back in partial staggered schedule. The work from home period was successful because of the back office nature of IT. The job was not public facing and employees normally worked in isolation, on computer systems that were remote to the in-office and remote-office working environments.

52. On October 20, 2021 Mayor Bill de Blasio implemented a vaccine mandate requirement of November 1, 2021 for all City Civil Service to be vaccinated. Plaintiff Whitsett wrote to his employer:

> Hello,
> Today the Mayor of the City of New York, Bill Deblasio, has demanded that all City employees be vaccinated by November 1st. I would like to request at this time the proper documents to file

for a religious exemption from this vaccination program, which is in direct opposition to my religious conviction. Please advise! Regards,-Mark Whitsett

53. On October 22, 2021 Plaintiff Whitsett received information about the COVID vaccine and what his office plan was for employees. **EXHIBIT 9.**

54. On October 27, 2021 Plaintiff Whitsett filed a Religious accommodation request with the OTI EEO office. **EXHIBIT 10.** Religious exemption request.

55. On November 3, 2021 Plaintiff Whitsett was interviewed by EEO at work.  Elsa Hampton ESQ. did the interview.

56. On November 19, 2021 Plaintiff Whitsett's Religious accommodation request was denied by EEO.

57. On November 24, 2021 Plaintiff Whitsett appealed the denial to the Citywide panel. He received an email receipt from the automated apparatus indicating the appeal was received. He was entered into the third-party workflow system.

58. On February 17, 2022 the appeal was denied without reason. Plaintiff Whitsett never received the automated religious accommodation decision email that originated from the third-party workflow system, the Citywide Appeal panel. Defendants were unable to get his requested decision criteria results. **EXHIBIT 11**

59. On February 28, 2022 Plaintiff Whitsett received a "Leave Without Pay" or LWOP notice. The document denied that the coerced leave was disciplinary, which Whitsett and all the other employees knew was false. OTI made a misconduct charge against him for his submission of a religious exemption/accommodation appeal. He was discriminated against because of his religious beliefs. **EXHIBIT 12.**

60. Defendants fraudulently denied Plaintiff Whitsett, who dedicated fourteen years of service to the Defendants, the right to a fair appeal process that should have been given to him pursuant

11

to the DCAS rules and Guidelines. In 2023 he tried to get Reinstated, after the CVM ended. He was denied without any reason. The rule of OTI was that any employee could get reinstated if they requested this within a year of separation. This rule did not apply to him. **EXHIBIT 13**

61. There is nothing on record that the Citywide Panel appeal decision was ever communicated to Plaintiff Whitsett, therefore the separation from employment was based on hearsay.

62. From February 17 – March 1, 2022 Plaintiff Whitsett tried to ascertain the reason the denial was given by the Citywide Panel. OTI's HR moved the Leave Without Pay start date from February 24 to March 1, 2022. **EXHIBIT 14**

63. All other colleagues at OTI were notified 3 weeks earlier than Whitsett.

64. On March 10, 2022 Plaintiff Whitsett was forced to sign a Leave Without Pay (LWOP) waiver under duress. The illegal waiver was an agreement of voluntary resignation on June 30, 2022 if not vaccinated.

65. On June 30, 2022 Plaintiff Whitset's religious position not to vaccinate remained the same despite his accommodation request denied by the Defendants. He did not vaccinate for that reason. His employment was illegally terminated without union representation and on false terms. **EXHIBIT 15**

66. On March 13, 2023, a month after the Mayor ended the CVM, Plaintiff Whitsett made a request to be reinstated. He followed the rules set by his union contract and City, that any employee of any City agency could be reinstated to his or her job if they applied within a year of separation. He did that, but on March 14, 2022 the Defendants responded that Whitsett was not eligible for reinstatement but may be eligible for rehire by applying for a vacant position on the nyc.gov website.

67. On March 14, 2023 Plaintiff Whitsett informed the Defendants that he had signed the extended illegal Leave Without Pay (LWOP), hence was eligible for reinstatement. He was within the year allowed by contract and law, after separating June 30, 2022.

68. On March 28, 2023 the Defendants subsequently responded with a reinstatement form (DP-71) and another illegal waiver that superseded the previous illegal LWOP (Leave Without Pay) waiver and any previous agreements, written or verbal. Whitsett did not sign the second waiver.

69. Plaintiff did not, at any time, intentionally and willingly waive his rights to sue or be deprived of any of his constitutional rights.

70. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937).

71. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

> "Presuming waiver from a silent record is impermissible. The record must show, or thise must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

72. On April 4, 2023 the Defendants responded, that a signed waiver was required to review and process Plaintiff Whitsett's reinstatement request.

73. On June 20, 2023, Plaintiff Whitsett returned to the Defendants a signed copy of his DP-71 reinstatement form, a signed copy of the fraudulent waiver, that struck out information that did not apply and a copy of the previous separation agreement signed by the Claimant on March 10, 2022. **EXHIBIT 16**

74. On June 21, 2023, the Defendants responded that the waiver needed to be unmodified or unaltered and that the Defendants could not proceed with Plaintiff Whitsett's reinstatement process.

75. On June 22, 2023, Plaintiff Whitsett returned a signed copy unmodified, but signed noting "under duress" due to the force to resign termination fraud committed by the Defendants.

76. On July 28, 2023, the Defendants denied the reinstatement request, despite the request requirements being met within 1-year of the separation date, submitted June 22, 2023. The reinstatement denial reason was that the line was eliminated via the Citywide Program to Eliminate the Gap (PEG). Prior to the request, Whitsett's position and title was listed in the Defendants' Human Resource computer system (ESS). Plaintiff Whitsett initiated the request on March 13, 2023 and finalized June 22, 2023.

77. Due to the fraud committed by the Defendants, Whitsett was not offered any civil service position and none were kept open for reinstatement nor did the Defendants offer him any similar or vacant positions that met the civil title requirements. The Defendant retaliated against Plaintiff Whitsett for writing "under duress" on the waiver.

78. On August 23, 2023, Plaintiff Whitsett requested a meeting with Nicole Murry-Bloomfield, Joetta Daniel, Yisroel Hecht, Kareem Gabriel, Olgierd Bilanow, to discuss the reinstatement denial. There was no response.

79. On February 15, 2024, Plaintiff Whitsett contacted Olgierd Bilanow, Yisroel Hecht and Kareem Gabriel requesting his original position back, after Defendants fraudulently declined due to a Position Elimination Gap program (PEG). His request was ignored.

80. Plaintiff Whitsett's position that was denied for reinstatement became vacant due to the retirement of Luis Liendo, an employee that occupied the same role and title as Whitsett. Olgierd Bilanow, Manager of Data Protection, did not respond to Plaintiff Whitsett's request. Yisroel Hecht, Deputy Commissioner, Infrastructure Information Management, did not respond to his request either, and neither did Kareem Gabriel, Associate Commissioner, Personnel Human Resources.

81. In the leave without pay, it states: "Your leave is not considered a disciplinary action, and you shall continue to be eligible for health benefits while on Leave Without Pay. "

82. In the reinstatement request process, there was a lot of back and forth. Plaintiff Whitsett requested that they update the DP-17 form to include the new salary information (a raise was issued). They updated the DP-71 that included his new salary, which showed that his position was not eliminated.

83. In 2024 Plaintiff Whitsett continued to look for work. He applied to NYC Careers - OTI Data Protection Director - Director, Enterprise Data Protection Services position (reference number: 625653), March 8, 2024; B&H Photos – UNIX administrators, March 31, 2024; August 4, 2023 – NYC Careers – Backup and Recovery Manager (Job ID 580663 - Systems Administrator); August 16, 2024 – DEPT OF ENVIRONMENT PROTECTION  / Senior IT Systems Specialist (Cloud and Infrastructure) Queens, NY; November 26, 2024 – Eastwood Company – Customer Service Technical advisor.

84. Plaintiff Whitsett currently is working part-time in a driving school as a Driving instructor.

85. Whitsett was removed from the City of New York's online employee self-service system.

## City Vaccine Mandate (CVM) (Both Plaintiffs)

86. This action arises from the Defendants unconstitutional deceit and neglect in trashing customs, policies, practices, statutes and laws protecting the rights of permanent municipal employees in public service in New York City.

87. Defendants' neglect deprived Plaintiffs' of their lawfully protected civil rights, including procedural and substantive due process with a right to be heard on matters of accommodation and on disciplinary charges made against them.

88. Both Plaintiffs' jobs were not public facing. They both worked with computers and data. Ironically, both workplaces of the Plaintiffs made the appropriate accommodations for unvaccinated employees to work together safely. Defendants than forced Plaintiffs to apply to get accommodations when they already had these accommodations. Both were denied without just cause or reason without any dialogue or suggestion for alternate relief.

89. While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v Cuomo, 208 L.Ed. 2d 206, 210 (2020). A citizen has as his greatest right the inviolability of his person. Pratt v. Davis, 224 Ill. 300, 79 N.E. 562 (1903). Affirming the order for transfusions substituted judicial discretion for the individual's judgment. Application of

President & Directors of Georgetown College, Inc., 331 F.2d 1000, 1013 (D.C. Cir. 1964), cert. denied 377 U.S. 978 (1964) (dissenting opinion).

90. On or about March 17, 2020, Plaintiffs' workplaces shut down, and they worked remotely.

91. On August 3, 2021 Mayor Bill de Blasio announced a "Key to New York City" pass which intentionally excluded unvaccinated people from accessing basic aspects of life in New York - even attending any private events and restaurants -in a blatant effort to coerce the unvaccinated to get vaccinated with one of the experimental COVID-19 vaccines.  No accommodations for religious beliefs or medical conditions were allowed.

92. On August 12, 2021 Harry Nespoli, Chairperson of the Municipal Labor Committee, wrote a letter to Renee Campion, Commissioner of the New York City Office of Labor Relations ("OLR") wherein Nespoli wrote about MLC's officers meeting with the City to negotiate working conditions for municipal employees who could not get the vaccine due to religious, medical, or other reasons. He also mentioned:

> "Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under the collective bargaining agreements and law….no policy should be implemented before it is negotiated."

93. At the same time, Wolf Blitzer interviewed CDC Director Rochelle Walensky, who acknowledged on national television that the vaccines could not stop transmission of COVID. https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html

94. On October 20, 2021, the New York City Commissioner of Health and Mental Hygiene Hygiene issued the City Worker COVID-19 Vaccine Mandate ("CVM). The Mandate left open the accommodation clause according to law, for anyone to apply to remain on salary while unvaccinated. **EXHIBIT 1**

95. The scientific community was quickly countering the increasingly harsh statements and emergency orders coming from the Mayor's office with statements about the dangers of the vaccine and the ineffectiveness to stop transmission of the virus. See Declaration of Dr. Jayanta Bhattacharya at https://www.documentcloud.org/documents/22125801-bhattacharya-declaration; and Affirmation of Dr. Harvey Risch at https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2025/01/Dr.-Harvey-Risch-AFFIDAVIT.pdf

96. Within Defendants' lies was a huge error: the implementation of the CVM pursuant to a never-before heard of "Leave Without Pay" wherein LWOP became a disciplinary action for those who, like Plaintiffs here, challenged the coerced signing of the LWOP which waived their Constitutional rights to get accommodation for their remaining unvaccinated. Well-known Arbitrator Martin Scheinman issued an Award on Sept. 10 2021 wherein he created a "leave without pay" (LWOP) out of thin air. No human resources manager ever based a hiring decision on a forced leave without just cause in the workplace, especially a permanent list for a City Agency. Scheinman's first Award on the CVM is here: https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/10/SCHEINMAN-AWARD-SEPT-10.pdf

97. On 11/28/21, United States Court of Appeals for the Second Circuit threw out LWOP and the Scheinman Award which created LWOP. Instead, a new panel to decide on accommodations, the Citywide Panel, or "merit panel" was set up:

> "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First Amendment is somehow inapplicable to those proceedings."

> The Order also reaffirmed that a fresh consideration of people's request for religious accommodation:

"In addition to the First Amendment such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law."
**EXHIBIT 17** Court of Appeals Order.

98. What the Plaintiffs never knew until June 2022 and later, was that they had been also charged and found guilty of misconduct by signing the LWOP. A code was placed on their personnel files so that they could not work for the City of New York. Ever. This is retaliatory discrimination, exactly as the US Supreme Court prohibited in Burlington v White (**548 US 53 (2006)**.

See: https://advocatz.com/2023/04/13/suspension-without-pay-is-retaliatory-discrimination/

99. Neither Plaintiff was ever given any chance to be heard on their reasons for claiming religious exemption (both Plaintiffs) and medical need for exemption from getting vaccinated with the COVID vaccine (Plaintiff Hong). Instead, Defendants charged Plaintiffs with misconduct/insubordination for requesting religious and medical accommodations rather than get vaccinated. This action by Defendants may clearly be defined as disciplinary retaliation and discrimination, motivated by intentional harm with actual malice.

100.    On March 24, 2022, the Mayor issued EMERGENCY EXECUTIVE ORDER 62, https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62 which gave permission to various members of sports teams, athletes, performing artists and others to remain unvaccinated and still do their work. This infuriated municipal workers and DOE employees who were terminated for not getting vaccinated, because the City and the DOE showed their cards – the COVID Vaccine Mandate ("CVM") was an Order that was not neutral, and did not have general applicability, but targeted City Agencies and municipal workers.

101.    The CVM was forever afterwards seen as a discriminatory weapon used to punish

employees at any and all levels of seniority, tenured/permanent or not. Everyone was

fired, except delivery people, volunteers to schools, cafeteria workers and school bus

drivers; private businesses and Broadway actors; sports players, etc.. None of these groups

of people were ever told they had to get the vaccine to work.

102.    In June, 2022, Arbitrator Martin Scheinman issued a second Citywide Award where

he apologized for setting up the LWOP. In Scheinman's June 27 Award Scheinman wrote:

> "Leave without pay is an unusual outcome. Yet, I decided it was appropriate for
> employees whose requests for a medical or religious exemption were denied. This is
> because such employees intentionally decided to disregard the mandate they be
> vaccinated by September 27, 2021, the date established by Commissioner Chokshi and
> Mayor de Blasio."

Yet Defendants continued to use the LWOP to punish anyone who dared to remain

Unvaccinated. See Scheinman June 27, 2022 Award:

**https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/10/Scheinman-June-27-**

**AWARD.pdf**

103.    "Salus populi" or "health of the people" seems to be the mantra of the Defendants in

this matter except they acted under color of law to make up any arguments that were

convenient for their agenda rather than those that made sense or had constitutional validity.

Salus populi expresses a common law principal for the state's—and NYC's—exercise of

police powers.

104.    The agenda of the Defendants was to allow City agencies to cull the municipal

workforce according to a business model created by Jack Welch. Welch said that

businesses should always fire the bottom 10% of the workforce every year, because this

keeps everyone on their toes.

105.    In this case, the Defendants' theme was: "government can restrain individual liberties to the extent it furthers the ends of preventing harm to other citizens. As the CVM stopped the COVID-19 virus in its' tracks, NYC would have a compelling interest to mandate everyone living and working there to get vaccinated. Even if the Vaccine resulted in even mild side effects, the benefit to the public would outweigh the risk to the individual."

106.    There was a problem with this argument, namely that the COVID vaccine did not, and does not, stop the transmission of the virus and does not slow the spread of the virus, or prevent COVID-19 either.

107.    The risk of contracting COVID-19 is omnipresent in every public place, not just City workplaces, and both the DOF and OTI accommodated their unvaccinated employees who were never public-facing.

108.    Thus the CVM was never generally applicable or neutral.

109.    COVID-19 Vaccines are completely different than traditional vaccines. Prevalent breakthrough cases do not exist for measles, mumps, rubella, and polio in people who have had received vaccination or gained natural immunity.

110.    Both Plaintiffs had compelling and sincere religious beliefs that prohibited them from getting vaccinated with the COVID vaccine.

111.    Plaintiff Hong has a medical condition that prevented her from getting vaccinated, as she explained when she submitted her request for an accommodation in October 2021. A copy of her doctor's evaluation will be presented in discovery under seal if requested.

112.    Both Plaintiffs received auto-machine-created denials that had no details about why they were denied, in violation of the rules of City Service and their rights under Civil Service Law Section 75(b):

"A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information:**(i)** regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or**(ii)**which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation."

113.    Civil Service Law Section 77 says:

"Pursuant to N.Y. Civil Service Law Section 77, a City employee who is unlawfully removed from his or her position, and who thereafter is restored to such position as a result of court order, is entitled to receive back pay and other benefits. See, e.g., Johnson v. New York City Dep't of Env't Prot., 824 N.Y.S.2d 39 (1st Dep't 2006), aff'd 882 N.E.2d 386 (2008). Section 77 requires compensation for back pay and other losses. See Boylan v. Town of Yorktown, 579 N.Y.S.2d 126, 127 (2d Dep't 1992); Johnson, 824 N.Y.S.2d at 40 (a reinstated City employee is entitled to recover lost overtime "to the extent that those amounts can be documented")."

114.    According to Eric Eichenholtz, the attorney at the City Law Department who created the Citywide Panel, from October 2021 through December 2022 religious and medical accommodations were given to several hundred applicants from all agencies in NYC. See the Transcripts of Eric Eichenholtz, **The Citywide Panel and the Final Judgment in Kane-Keil-New Yorkers For Religious Liberty** (https://advocatz.com/2025/01/25/new-york-state-court-of-appeals-issues-an-amended-judgment-in-new-yorkers-for-religious-liberty-et-al-v/;); and the AFFIRMATION OF ALLAN DEUSCH at https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2025/01/Affirmation-ALLAN-DEUTSCH-DCAS.pdf.

115.    None of the members of the Citywide panel could give accurate numbers or individual criteria for the approvals or denial of the appeals brought to the Citywide Panel. Each person deposed said there were way too many applicants to know each person's information, and no one knew what "undue burden" meant in terms of Title VII or

NYSCHRL and NYCHRL standards.

116.    The scam promoted by the City of New York of the Citywide Panel supposedly "protecting" religious freedom in the municipal workplace with the assistance of the Department of Citywide Administrative Services pursuant to TITLE VII, has not gone unnoticed. In the case of former NYPD Isaac Valdez, Attorney Jimmy Wagner wrote as follows:

> "The NYPD states it will not reinstate Mr. Valdez unless he gets vaccinated in violation of his religious beliefs. However, in a brutal twist of infinite government mocking of Plaintiff's religious beliefs, Plaintiff has been hired to work as a private contractor, armed professional guard in the NYC subway systems, without any requirement to be vaccinated, for half the pay rate and minimal benefits. How can Plaintiff work as if he was doing the same task from municipal employment to private employment. It is legally discriminatory practice against Plaintiff based on his religious beliefs."
> (Index No. 152301/2022)

117.    On January 31 2023 in the same case, Mr. Michael Melocowsky, Executive Director of the Equal Employment Opportunity Division (EEOD) of the NYPD testified that if he found someone credible in their religious beliefs, and they had held them for a long time, then maybe he would give this person a reasonable accommodation, which was weekly testing and no finding of a positive PCR for the COVID virus. He approved 176 out of almost 7,000 applicants. He could not say whether these approved people had medical or religious appeals, he was vague on the credibility determination criteria, and knew of no costs for what an "undue burden" on the agency might mean. He could not remember any individual who was interviewed in person.

118.    The Citywide Panel failed to comply with the directive from this Court to follow Title VII and Human Rights Law.

119.    LWOP was stunningly in violation of all the rights Plaintiffs had as permanent city service employees. Human Resources law does not have any forced leave without pay.

Leaves are voluntary. The employment contract for city employees allows leaves for sabbaticals, bereavement, illness, taking care of a relative, and injuries. If someone wants to take a sabbatical, or time off to take care of an ill relative, he or she may apply to take an unpaid leave from their work for a limited time. This applies to the Family Leave Act as well. All these are common in the workplace, and voluntary.

120.    Indeed, the United States Supreme Court made a ruling in 2006 in the case Burlington v White which labelled any suspension/leave without pay as "retaliatory discrimination." The Judges ordered Ms. White to be compensated for the 37 days she was involuntarily suspended without pay. See: **Suspension Without Pay is Retaliatory Discrimination**

https://advocatz.com/2023/04/13/suspension-without-pay-is-retaliatory-discrimination/

121.    AWOP or AWOL are Human Resource terms for misconduct because the employee willingly and deliberately does not show up at work, and gives no notice. This type of leave is absent without pay, and not allowed. So what Martin Scheinman did was he created LWOP out of thin air and argued that the forced removal of an employee was not disciplinary, which is absurd, so that no one could get a fair hearing or any hearing. Yet Plaintiffs' employers used this invalid procedure to terminate them both without due process.

122.    While this case challenges Defendants' deprivation of Plaintiffs' due process in the manner in which the COVID Mandate was implemented, not the Mandate itself, it is worth noting the decision of Judge Gerard J. Neri in the case Medical Professionals For Informed Consent et al., v Mary T. Bassett, Index. No. 008575/2022:

> "Arbitrary action is without sound basis in reason and is generally taken without regard to the Respondents acknowledge then-current COVID-19 shots do not prevent transmission (see Summary of Assessment of Public Comment, NYSCEF Doc. No.7, p. 25). The Mandate defines, in the loosest meaning of the word, "fully vaccinated" as determined by the Department in accordance with applicable federal guidelines and recommendations" (ibid). "[I]t is a well-established rule that resort must be had to the

natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning" (Gawron v. Town of Cheektowaga, 117 A.D.3d 1410, 1412 [Fourth Dept. 2014], citing Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577,583 [1998]). A term which is defined at the whim of an entity, subject to change without a moment's notice contains all the hallmarks of "absurdity" and is no definition at all. In the alternative, the Court finds the Mandate is arbitrary and capricious."

In his footnote he wrote:

"1 Absurdity -1)  the quality or state of being absurd; 2) something that is absurd –

https://www.merriam-webster.com/dictionary/absurdity

Absurd - 1) ridiculously unreasonable, unsound, or incongruous; 2) having no rational or orderly relationship to human life; 3) dealing with the absurd (the state or condition in which human beings exist in an irrational and meaningless universe and in which human life has no ultimate meaning) - https://www.merriam-webster.com/dictionary/absurd".

123.    In order for Plaintiffs to be lawfully terminated, they both had to have intentionally committed a known act of misconduct that brought harm to someone or the Agency. They then had to be given a hearing at which they presented their statements and supporting documents and were given a chance to get the same from their employer. At all times they had the right to face their accusers at a fair hearing. This never happened.

124.    Plaintiffs were found guilty of misconduct and terminated for their religious beliefs (and medical condition – Hong)  and given no due process mandated by union contract DC37 and by Statute, Civil Service Law.

125.    Both Plaintiffs filed Notices of Claim in 2024. Defendants never responded.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR RELIGIOUS DISCRIMINATION

126.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 119 as if the same were fully set forth at length herein.

127.    Plaintiffs submitted to Defendants statements on their sincere religious beliefs which forbade them from getting vaccinated with the COVID-19 vaccine. They were both denied by a computer, while other employees similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine.

128.    Plaintiff Hong was the only employee terminated in her group for submitting her exemption request.

129.    Defendants have neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendants' invocation of "undue hardship" defenses are plainly false pretexts attempting to cover for the Defendants' explicit religious discrimination.

130.    Defendants had knowledge of Plaintiffs' sincerely-held religious beliefs yet chose to ignore these beliefs, forced them into a suspension without pay, denied their exemption requests and Appeals based upon an unconstitutional ruling that cited "undue burden" or "does not meet criteria" without any further details or reason, and terminated their employment.

131.    This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ....."

132.    Further, a hardship that is attributable to employer animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue." Bias or hostility to a religious practice or accommodation cannot supply a defense."

133.    Defendants wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce Plaintiffs to choose to relinquish their protected beliefs in order to submit to an experimental vaccine, and then punished them both for not agreeing to this extortion and discrimination.

134.    Eric Adams did not enforce the mandate as it applied to employees in the private sector; he and NYC did not prevent unvaccinated private sector employees from going to work; he and NYC did not fine private sector employees for not complying with the Mandate.

135.    The Mandate only applied to City Workers like Plaintiffs.

136.    A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs.  Likewise, the government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government.  Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones.  All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment. "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S. Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

137.    Plaintiff Hong's unemployment and her unvaccinated status due to her medical condition led directly to her being harassed and belittled by employees and her workplace peer and

supervisors who were vaccinated.

138.   In the new category of discipline titled "insubordinate unvaccinated employee", Plaintiffs were not only removed unfairly and without due process from their jobs, but ostracized and humiliated by peers both inside and outside of the workplace.

139.   Both Plaintiff sought their jobs back after the CVM ended, and were never hired for any position. The harm done by Defendants continues.

140.   But for the approval of the denial of protected rights by the Defendants, Plaintiffs were maliciously and in bad faith harassed, wrongfully terminated, and permanently stigmatized.

141.   Based on the foregoing, Defendants under color of law subjected Plaintiffs to discrimination on the basis of their religion and medical condition, in violation of their Constitutional rights to property, liberty and a due process pursuant to 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

**AS AND FOR A SECOND CAUSE OF ACTION**
**FOR FAILURE TO REASONABLY ACCOMMODATE**
**THE PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS**

142.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 135 as if the same were fully set forth at length herein.

143.   Plaintiffs have sincerely held religious beliefs which forbid them from getting vaccinated with the COVID-19 vaccine.

144.   In 2020-2021 Defendants accommodated Plaintiffs at their work, as both did not have jobs that were public-facing. The employers set up spaces for the unvaccinated and vaccinated to protect everyone. It worked. Until the City demanded everyone apply to keep the accommodation. Then it was taken away and both Plaintiffs were terminated. This makes

no sense.

145.    Defendants had knowledge of Plaintiffs' sincerely-held religious beliefs yet chose to ignore these beliefs, denied their exemption requests and Appeals based upon an unconstitutional mandate and procedure known as LWOP, and gave no details or reason, for their termination. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

146.    After being accommodated for a year, Plaintiffs were denied accommodations without due process, yet other employees of the Defendants received accommodations for their religious and/or medical accommodations. No explanation for that disparate treatment was given

147.    Defendants never engaged in a dialogue about Plaintiffs' accommodation or exemption. This deprivation of a lawful procedure was intentional, acted on under color of law, and pursued in bad faith.

148.    Defendants omit information of their long-term policy in accommodating employees according to law. This matter shows that Defendants not only did not engage in a dialogue about the accommodations already given to them, but punished both Plaintiffs as guilty of misconduct for applying for exemptions.

149.    Based on the foregoing, Defendants failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiffs on the basis of their religion and medical condition, and  unlawfully discriminated against Plaintiffs in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A THIRD CAUSE OF ACTION:
### VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL
### PROTECTION CLAUSE

150.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in

paragraphs 1 through 143 as if the same were fully set forth at length herein.

151.    Defendants, while acting under the color of law, unlawfully deprived the Plaintiffs of

their rights to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of

the United States Constitution, in that they engaged in selective enforcement of their own

laws, rules, regulations, and ordinances against Plaintiffs based upon the Plaintiffs'

religion, medical condition, and Plaintiffs' constitutionally protected conduct. In so doing,

Defendants intentionally and, with malicious or bad faith intent to injure Plaintiffs,

selectively treated Plaintiffs differently from other similarly situated employees and acted

with no rational basis for the difference in treatment. Defendants' conduct was intentional,

conducted with bad faith, and wholly irrational.

152.    In Garvey v City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his

decision:

> "Though vaccination should be encouraged, public employees should not have been
> terminated for their non-compliance....The Health Commissioner cannot create a
> new condition of employment for City employees. The Mayor cannot exempt certain
> employees from these orders. Executive Order 62 renders all of these vaccine
> mandates arbitrary and capricious....prohibit an employee from reporting to work."

153.    New York City was the only location in New York State which mandated the vaccine

or termination for public employees. As a direct result of Defendants' violation of the

Plaintiffs' Fifth and Fourteenth Amendment rights of equal protection, Plaintiffs have

suffered irreparable harm for which there is no adequate remedy of law.

154.    Due to Defendants' violation of Plaintiffs' Fourteenth Amendment rights of equal

30

protection under the law, as alleged herein above, Plaintiffs have suffered and are entitled to recover compensatory and nominal damages including backpay.

155. The Fourteenth Amendment prohibits any State from denying to "any person within its jurisdiction the equal protection of the laws." 129. NY Const art, I §XI states that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state." 130. 42 U.S.C. §1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

156. Defendant Adams was the final policy maker for the City of New.

157. Plaintiffs are United States citizens domiciled in New York State. Plaintiffs are similarly situated in all material respect to every other human being because the Virus infects all human beings without distinction.

158. Plaintiffs never interacted with the public.

159. Plaintiffs were punished for being unvaccinated, whereas unvaccinated members of the public and workers in the private sector were not.

160. Mandating City workers like Plaintiffs to get vaccinated is illogical, arbitrary, and nonsensical.

161.    This policy does nothing to further the goal of stopping the spread of COVID-19.

162.    Thus, unvaccinated people in the City were punished only if they worked for the City. Even though, the City could not achieve herd immunity if every City worker were vaccinated. Even though, vaccination is a permanent measure that does not go away at the end of the workday. Still, the named Defendants singled out Plaintiffs by terminating them and taking away the accommodations already set up for them in their respective workplaces, leaving them harmed and broken.

163.    There is absolutely no permissible reason for selectively enforcing the mandate against unvaccinated City workers like Plaintiffs irrespective of vaccine efficacy.

164.    In addition, the plausibility that Defendants were motivated by impermissible considerations or malicious intent skyrockets considering that the Vaccine—as alleged herein—does not stop the transmission of the Virus.

165.    Named Defendants knew that the vaccine did not stop transmission, but mandated it anyway. Knowledge is plausibly inferred from individuals getting infected despite being boosted multiple times in addition to peer reviewed scientific literature.

166.    Adams' carve outs supports the inference that they knew it did not work. Adams acted in violation of clearly established federal law.

167.    Adams issued the Mandate under color of law.

168.    Adams' Mandate is not rationally related to furthering the public health under any conceivable circumstance. Even worse, Adams never pretended that the exceptions he created were related to furthering public health.

169.    Based on the foregoing, Defendants subjected Plaintiffs to discrimination on the basis of their religious beliefs, unlawfully discriminating against the Plaintiffs in violation of 42

U.S.C. § 1983; 1st, 5th and 14th Amendments due process clauses; N.Y. Executive Law§ 296

(New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A FOURTH CAUSE OF ACTION:
## VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE 5TH AND 14TH AMENDMENTS

170.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in

paragraphs 1 through 166 as if the same were fully set forth at length herein.

171.    Plaintiffs also bring a claim to enforce fundamental rights under the Substantive Due

Process Clause.

172.    Plaintiffs have a fundamental right to refuse medicine and protect their bodily harm, and

life from being taken by the government for reasons that are not valid and that deprive them

of 5th and 14th Amendment rights under the Constitution.

173.    Plaintiff Hong has a medical condition that placed her at heightened risk of harm from a

vaccination, yet was denied relief without any valid reason.

174.    In addition to the fundamental right to refuse even life-saving medicine, the Supreme

Court has articulated multiple fundamental rights safeguarding the doctor-patient

relationship, and the right to make medical decisions in accordance with one's chosen

physician absent state interference.

175.    The COVID vaccine never has been proven ineffective in stopping infection, and

Plaintiff Hong has a constitutional right to protect herself against harm.

176.    At all relevant times there were inadequate studies available to determine the risks and

benefits of the vaccine for any individual, leave aside those with serious health conditions

that put them at greater risk of harm.

177.    Defendants had no compelling or even legitimate reason to mandate the vaccines or to

deny religious or medical accommodation.

178.    As the vaccines cannot stop transmission of disease it is not within the police powers of the state to mandate them.

### AS AND FOR A FIFTH CAUSE OF ACTION: VIOLATION OF the FREE EXERCISE CLAUSE OF THE CONSTITUTION

179.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs 1 through 175 as if the same were fully set forth at length herein.

180.    The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government from burdening the free exercise of religion.

181.    The First Amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof..." U.S. Const. amend. I.

182.    The Supreme Court has held that "a law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 546 (1993).

183.    The Mayor forced the CVM on all municipal workers, yet implemented the CVM so that the mandate was not generally applicable. The CVM makes exceptions for secular reasons that defeat the purpose of the CVM in that it allows employers to exercise a mechanism for individualized exceptions such as medical or religious accommodations.

184.    Where there is evidence of animus, or where there is a mechanism for exemption or lack of general neutrality requirements, an infringement must be strictly scrutinized, and the Defendants bear the burden of showing that they applied a law or policy using the least restrictive means available to further a compelling state interest.

34

185.    Plaintiffs' sincerely held religious beliefs prohibit them from taking a Covid-19 vaccine.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the Local Rules, Plaintiffs demand trial by jury for all the issues pleaded herein so triable.

**WHEREFORE,** Plaintiffs request judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiffs any other relief to which they are entitled, including but not limited to:

1.    Awarding Plaintiffs their former positions, salary steps and raises, earned after termination in full, with benefits; and

2.    Awarding Plaintiffs all the back pay owed since they were removed from their salaries due to LWOP;

3.    Clearing the names and personnel files of and code that maligns the stellar work of Plaintiffs so that they may resume their careers with the City of New York.

4.    Considering Plaintiffs are prose, an opportunity to Amend their Complaint after submission of Defendants' papers.

5.    Granting such other and further relief that the Court deems just and proper.

Dated: February 21, 2025

Sonya Hong

97 Brooklyn Ave, Apt 3G
Brooklyn, NY 11216
929-613-6008
shmw57@outlook.com

Mark Whitsett

# EXHIBIT 1

### ORDER OF THE COMMISSIONER
### OF HEALTH AND MENTAL HYGIENE
### TO REQUIRE COVID-19 VACCINATION FOR
### CITY EMPLOYEES AND CERTAIN CITY CONTRACTORS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS**, the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants, and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS**, the Department reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New York City; and

**WHEREAS**, a study by Yale University demonstrated that the Department's vaccination campaign was estimated to have prevented about 250,000 COVID-19 cases, 44,000 hospitalizations, and 8,300 deaths from COVID-19 infection since the start of vaccination through July 1, 2021, and by information and belief, the number of prevented cases, hospitalizations, and death has risen since then; and

**WHEREAS**, on August 16, 2021, Mayor de Blasio issued Emergency Executive Order No. 225, the "Key to NYC," requiring that patrons and employees of establishments providing indoor entertainment, dining, and gyms and fitness centers must show proof that they have received at least one dose of an approved COVID-19 vaccine, and such Order, as amended, is still in effect; and

**WHEREAS**, on August 24, 2021, I issued an Order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting, and such Order was re-issued on September 12 and

15, 2021, and subsequently amended on September 28, 2021, and such Orders and amendment were ratified by the New York City Board of Health on September 17, 2021 and October 18, 2021; and

**WHEREAS**, on August 26, 2021, the New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a COVID-19 vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a COVID-19 vaccine by October 7, 2021; and

**WHEREAS**, on August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test; and

**WHEREAS**, on September 9, 2021 President Biden issued an Executive Order stating that "It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public," and ordering each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law"; and

**WHEREAS**, on September 12, 2021, I issued an Order requiring that staff of early childhood programs or services provided under contract with the Department of Education or the Department of Youth and Community Development provide proof of COVID-19 vaccination; and

**WHEREAS**, Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS**, City employees and City contractors provide services to all New Yorkers that are critical to the health, safety, and well-being of City residents, and the City should take reasonable measures to reduce the transmission of COVID-19 when providing such services; and

**WHEREAS**, a system of vaccination for individuals providing City services and working in City offices will potentially save lives, protect public health, and promote public safety; and

**WHEREAS**, there is a staff shortage at Department of Corrections ("DOC") facilities, and in consideration of potential effects on the health and safety of inmates in such facilities, and of the benefit to public health and employee health of a fully vaccinated correctional staff, it is necessary that the requirements of this Order for DOC uniformed personnel not assigned to posts in healthcare settings be delayed; and

**WHEREAS**, pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such Section;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is

necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, and order that:

1. My Order of August 10, 2021, relating to a vaccination or testing requirement for staff in City operated or contracted residential and congregate settings, shall be **RESCINDED** as of November 1, 2021. Such staff are subject to the requirements of this Order.

2. No later than 5pm on October 29, 2021, all City employees, except those employees described in Paragraph 5, must provide proof to the agency or office where they work that:

    a. they have been fully vaccinated against COVID-19; or
    b. they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
    c. they have received the first dose of a two-dose COVID-19 vaccine

    Any employee who received only the first dose of a two-dose vaccine at the time they provided the proof described in this Paragraph shall, within 45 days after receipt of the first dose, provide proof that they have received the second dose of vaccine.

3. Any City employee who has not provided the proof described in Paragraph 2 must be excluded from the premises at which they work beginning on November 1, 2021.

4. No later than 5pm on October 29, 2021, City agencies that contract for human services contracts must take all necessary actions to require that those human services contractors require their covered employees to provide proof that:

    a. they have been fully vaccinated against COVID-19; or
    b. they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
    c. they have received the first dose of a two-dose COVID-19 vaccine.

    Any covered employee of a human service contractor who received only the first dose of a two-dose vaccine at the time they provided the proof described in this Paragraph shall, within 45 days after receipt of the first dose, provide proof that they have received the second dose of vaccine.

    All such contractors shall submit a certification to their contracting agency confirming that they are requiring their covered employees to provide such proof. If contractors are non-compliant, the contracting City agencies may exercise any rights they may have under their contract.

5. Notwithstanding Paragraphs 3 and 4 of this Order, until November 30, 2021, the provisions of this Order shall not apply to uniformed Department of Corrections ("DOC") employees, including staff serving in Warden and Chief titles, unless such uniformed employee is assigned for any time to any of the following locations: Bellevue Hospital; Elmhurst Hospital; the DOC

infirmary in North Infirmary Command; the DOC West Facility; or any clinic staffed by Correctional Health Services.

Uniformed employees not assigned to such locations, to whom this Order does not apply until November 30, 2021, must, until such date, either:

    a.  Provide DOC with proof that:
        i.   they have been fully vaccinated against COVID-19; or
        ii.  they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
        iii. they have received the first dose of a two-dose COVID-19 vaccine, provided that they must additionally provide proof that they have received the second dose of vaccine within 45 days after receipt of the first dose; or

    b.  On a weekly basis until the employee submits the proof described in this Paragraph, provide DOC with proof of a negative COVID-19 PCR diagnostic test (not an antibody test).

6.   For the purposes of this Order:

"City employee" means a full- or part-time employee, intern, or volunteer of a New York City agency.

"Contract" means a contract awarded by the City, and any subcontract under such a contract, for work: (i) to be performed within the City of New York; and (ii) where employees can be expected to physically interact with City employees or members of the public in the course of performing work under the contract.

"Contractor" means a person or entity that has a City contract, including a subcontract as described in the definition of "contract."

"Covered employee" means a person: (i) employed by a contractor or subcontractor holding a contract; (ii) whose salary is paid in whole or in part from funds provided under a City contract; and (iii) who performs any part of the work under the contract within the City of New York. However, a person whose work under the contract does not include physical interaction with City employees or members of the public shall not be deemed to be a covered employee.

"Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine as approved or authorized for use by the Food and Drug Administration or World Health Organization.

"Human services contract" means social services contracted by an agency on behalf of third-party clients including but not limited to day care, foster care, home care, health or medical services, housing and shelter assistance, preventive services, youth services, the operation of

senior centers, employment training and assistance, vocational and educational programs, legal services and recreation programs.

7. Each City agency shall send each of its human services contractors notice that covered employees of such contractors must comply with the requirement of Paragraph 4 of this Order and request a response from each such contractor, as soon as possible, with regard to the contractor's intent to follow this Order.

8. Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law.

9. This Order shall not apply to individuals who already are subject to another Order of the Commissioner of Health and Mental Hygiene, Board of Health, the Mayor, or a State or federal entity that requires them to provide proof of full vaccination and have been granted a reasonable accommodation to such requirement.

10. This Order shall not apply to per diem poll workers hired by the New York City Board of Elections to conduct the election scheduled for November 2, 2021.

11. Subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code, this Order shall be effective immediately and remain in effect until rescinded, except that Paragraph 5 of this Order will be deemed repealed on December 1, 2021.

Dated: <u>October 20, 2021</u>

<u> </u>
Dave A. Chokshi, M.D., MSc
Commissioner

Page 5 of 5

# EXHIBIT 2

FW: Additional Details for Sep 13 Full-Time Return to the Office

From: Hong, Sonya (DOF) (hongsonya@finance.nyc.gov)

To:    somark58@yahoo.com

Date:  Wednesday, September 8, 2021 at 08:25 AM EDT

RTW

**From:** DOFEmployeeConnect <DOFEmployeeConnect@finance.nyc.gov>
**Sent:** Tuesday, September 7, 2021 7:20 PM
**To:** DOFEmployeeConnect <DOFEmployeeConnect@finance.nyc.gov>
**Cc:** DOFEmployeeConnect <DOFEmployeeConnect@finance.nyc.gov>
**Subject:** Additional Details for Sep 13 Full-Time Return to the Office

Dear DOF Employees,

As you know, we have been informed that all City agencies will resume pre-March 2020 work schedules (five days a week in the office) beginning Monday, September 13. On behalf of Commissioner Sherif Soliman, we thank you for your productive and professional service to the City of New York for the past year-and-a-half, and we look forward to welcoming all staff back to the office full time.

Below please find additional important details about our full-time return to the office.

**I. Agencywide Town Hall Meeting**

Please join us for a town hall meeting to learn more and have the opportunity to ask questions about our final phase to return to the office. We will hold two town hall sessions; click the links below to join the meetings. All employees are encouraged to attend.

- Thursday, September 9, 2:30 p.m. - 4:00 p.m.: Click here to join the meeting
- Friday, September 10, 10:00 a.m. - 11:30 a.m.: Click here to join the meeting

**II. COVID-Safe Requirement (Proof of Vaccination or Testing)**

The COVID-Safe Requirement (Executive Order 78) requires all employees to show either one-time proof of vaccination or a negative COVID-19 test once every seven days. If you have not yet submitted your proof of vaccination, please send it to DOFCOVIDVaccine@finance.nyc.gov.

For employees who choose to be tested weekly, rather than submit proof of vaccination, a negative COVID-19 PCR test taken within the preceding seven days is required. Beginning Monday, September 13, 2021, and every Monday thereafter, employees will be required to provide a negative test result to the Office of Employee Services (OES) by 12:00 p.m.  Employees may also send an email to DOFCOVIDVaccine@finance.nyc.gov to authorize OES to use previously submitted vaccination documentation for compliance.

To submit your test results, send an email to your Timekeeper Representative within the specified timeframe. Rapid antigen test results and at-home tests will not be accepted.

### III. Where to Get Vaccinated or Tested

Vaccination is free and convenient, and community-based vaccination sites are available throughout the NYC area. Vaccination sites can be found via www.nyc.gov/vaccinefinder or by calling 877-VAX-4-NYC. In addition, information about mobile and pop-up vaccination sites can be found here.

The time and leave policy for vaccinations remains the same:  employees may take up to four hours of excused leave for travel during scheduled work hours to the administration site and receipt of the vaccination for each required injection of the vaccine.

Please review the Citywide Policy for COVID-19 Vaccination for additional information , including requesting time off to receive a vaccine during work hours.

For more information on testing sites in the five boroughs, visit www.nyc.gov/covidtest. You can also receive a test specifically at a City-sponsored site.

### IV. Face Covering Policy

All employees and contractors will be required to wear a face covering at all times, **even if they are vaccinated**, while in a shared indoor City workspace. Employees working outside must wear a face covering when interacting with members of the public. Please see DCAS Directive 2020-1 for more details.

Thank you for your continued cooperation. We will share additional updates as they become available. If you have questions, please email DOFEmployeeConnect@finance.nyc.gov.


Thank you.


*Office of Employee Services*

DOFEmployeeConnect@Finance.nyc.gov



*Remember to visit the OES SharePoint site.*



# EXHIBIT 3

Name: Sonya Hong                                                    Date: 11/16/2021

To Whom It May Concern,

I am appealing the Department of Finance EEO's decision to deny my religious exemption request on November 12, 2021 for the COVID-19 vaccine mandate. My religious exemption was denied because I allegedly failed to provide any documentation or information that established that I am unable or not permitted to take the vaccine. I wrote the reasons why I could not take the Covid-19 vaccines based on my religious beliefs. I believe that my personal religious beliefs, practice and conviction was enough, but I have provided two supporting documentations. I attached a letter from Reverend Richardson and another documentation about my denomination's (the Assemblies of God) neutral stance on the Covid-19 vaccine. The following is a similar religious exemption request to the Covid-19 vaccine that I sent to the Department of Finance EEO department.

I have a sincerely held religious belief that prevents me from being vaccinated by the Covid-19 vaccines authorized by the FDA. I believe that the Covid-19 vaccines are the mark of the beast from the Bible. It is part of the end times prophesized in the book of revelations when we lose our freedom. My body is the temple of the Holy Spirit and I cannot give consent to introduce anything that could re-designs God's work. My God is perfect. God created the body both "fearfully and wonderfully" (Psalm 139:13-16). In I Corinthians 6:19, the Bible states that the body is the temple of the Holy Spirit. It says, "…do you not know that your body is the temple of the Holy Spirit who is in you, whom you have from God, and you are not your own?"

I was raised in a Christian household and church, went to Christian school in my early childhood, married a Christian and raised my children in the Christian faith. My children have been attending Christian church run daycares, camps and after-school since their birth. I took family leave from the workplace this past summer because two of the churches I used closed their daycare and summer camp due to the Covid-19 pandemic. Being a Christian is the most important in my family. My family prayed to the Lord about the Covid-19 vaccine and read the scriptures in the Bible for guidance. Based on the conflicts, mandates, and events in the today's world it was revealed to us that now is the foretold time from the Bible.

In the Bible, the book of Revelations talks about a time where there will be a ruler that mandates everyone to have to do something. In Revelations chapter 13, verses 16-17, states "He causes all, both small and great, rich and poor, free and slave, to receive a mark on their right hand or on their foreheads, and that no one may buy or sell except one who has the mark or the name of the beast, or the number of his name." As described in the Bible, the Covid-19 vaccine shot is in the arms and the forehead is part of regular free PCR testing and painfully up through the nose. For the weekly testing requirement at work, I chose to pay for the Covid-19 saliva test at Mount Sinai Hospital which is not covered by insurance and cost $140.

The Covid-19 vaccine mandate and "Key to NYC" from the Mayor of New York City makes me feel persecuted for following my Christian beliefs. The "Key to NYC" Covid-19 vaccine mandate punishes me and my family from participating in things like indoor dining, entertainment, museums, zoos, gyms, catering halls, grocery with indoor dining and even out-door concerts and New Year's Eve in Time Square. I cannot buy food and dine in the restaurant or buy a ticket to a movie without taking the

Covid-19 vaccine. Now the mandate threatens my job, a way to make money or a living and could lead to homelessness. I believe that the Covid-19 vaccines is the mark of the beast that is written about in Revelation chapter 13, verses 16-18. I am being forced to choose between my religious beliefs and my job.

This mandate is foretold in the Bible in the book of Revelation of a time when people will be forced to receive the mark of the beast in order to live, buy or sell. Currently, we seem to be in this troubled times with judgement day coming soon and the religious are being threatened to lose their jobs and become unable to buy a simple thing like food in a restaurant if we do not receive the mark of the Covid-19 vaccine. On judgement day, I will stand alone with God and be held accountable for only my life and actions without a representative like the minister, mayor or governor speaking for me. My relationship with God is personal and without intermediaries. As stated in John 3:16, "For God so loved the world, that he gave his only begotten Son, that whosoever believeth in him should not perish, but have everlasting life."

What deeply troubles me is that the Mayor of New York City went to church to tell the congregation that this Covid-19 vaccine is not the mark of the beast. He said "I want to tell everybody, you're not getting the 666 in this vaccine, OK?...I want to tell you straight up, there is no 666, there's no conspiracy." Also, the Governor of New York spoke at the Christian Cultural Center in Brooklyn and said, "God did answer our prayers. He made the smartest men and women, the scientists, the doctors, the researchers - he made them come up with a vaccine. That is from God to us and we must say, thank you, God. Thank you. And I wear my 'vaccinated' necklace all the time to say I'm vaccinated. All of you, yes, I know you're vaccinated, you're the smart ones, but you know there's people out there who aren't listening to God and what God wants. You know who they are. I need you to be my apostles. I need you to go out and talk about it and say, we owe this to each other." The Governor said she needed their help to reach the vaccine-hesitant and say "please get the vaccine because I love you and I want you to live..." The Bible talks about false prophets. Contrary to her talk to the Brooklyn congregation, the Governor of New York appealed a federal judge's ruling that allows for religious exemptions from the vaccine mandate for healthcare workers pending final ruling. The Governor also referenced her necklace that symbolizes being vaccinated. This symbolism reminds me of a cult. I was being bribed to sell my soul and get the Covid-19 vaccine for $500. Our enemy is a deceiver. In Genesis chapter 3, verses 4-5, "The serpent said to the woman, You surely will not die! For God knows that in the day you eat from it your eyes will be opened, and you will be like God, knowing good and evil."

I am requesting a religious exemption from the Covid-19 vaccine mandate based on my Christian faith and more importantly, my one-to-one relationship with God and the spirit of God that resides within. My religious principles conflicts with Mayor De Blasio's Covid-19 vaccine mandate. The Covid-19 vaccines have fractured relationships between people and created a new reason for discrimination. Vaccination status has divided family, friends and co-workers. I feel I am in a war between the vaccinated versus the unvaccinated. My faith in God prevents me from taking any of the current Covid-19 vaccines since I feel it is the mark of the beast and I cannot have the Covid-19 vaccines injected into my body which is the temple of the Holy Spirit. As a Christian, I am being persecuted and losing my freedom through the vaccine mandate and "Key to NYC" for my religious beliefs.

Thank you,

Sonya Hong

# EXHIBIT 4

To Whom It May Concern:

I have a dormant lung disease and I am requesting a medical exemption and reasonable accommodation from the Covid-19 vaccine mandate. Receiving the Covid-19 vaccine or getting infected with Covid-19 can re-activate my lung disease and lead to respiratory failure. I am at risk to be infected by Covid-19 from either a vaccinated or un-vaccinated individual. The Covid-19 vaccine is too new and risky to know the long-term effects on my medical condition. I am concerned about the Covid-19 vaccine or new type of mRNA drug impact on my condition where there is no long-term drug trial or study available. Even after the birth of both my children, I was tested at the hospital on both occasions to see if my lung disease was re-activated. Any type of stress, including side effects from a vaccine or childbirth, on my body can trigger my pulmonary disease.

Currently, I have a hour commute by bus and 2 trains to get to work. Sick people are on the bus and train and they are not screened for sickness. Once I am at work, I sit within 2 feet of 4 other co-workers. Yet, our group meetings are conducted online and conference rooms are not permitted for team meetings. I work as a data analyst and I do not have a public facing job. Since my office and public transportation has no social distancing practices, I am asking for reasonable accommodation by temporarily modifying my working conditions and environment to limit my exposure to coronavirus because I am at high risk to re-activate my pulmonary disease until the pandemic is officially declared over for NYC.

I request a medical exemption and reasonable accommodation from the Covid-19 vaccine mandate. It is dangerous to my health to take the Covid-19 vaccine with severe side effects that can trigger my lung disease and which does not stop infection, spread or death from Coronavirus but can possible prevent hospitalization. In the past when people took the vaccines for diseases like polio, they did not get polio. The Covid-19 vaccine does not prevent me from getting infected with the Coronavirus disease. I successfully teleworked or worked remotely from March 2020 to September 2021. Paying out of pocket for the weekly saliva Covid-19 testing is a financial burden. I am open to discussing any options available.

Please see the attached medical documentation.

Thank you,

Sonya Hong

to the DCAS rules and Guidelines. In 2023 he tried to get Reinstated, after the CVM ended. He was denied without any reason. The rule of OTI was that any employee could get reinstated if they requested this within a year of separation. This rule did not apply to him. **EXHIBIT 13**

61. There is nothing on record that the Citywide Panel appeal decision was ever communicated to Plaintiff Whitsett, therefore the separation from employment was based on hearsay.

62. From February 17 – March 1, 2022 Plaintiff Whitsett tried to ascertain the reason the denial was given by the Citywide Panel. OTI's HR moved the Leave Without Pay start date from February 24 to March 1, 2022. **EXHIBIT 14**

63. All other colleagues at OTI were notified 3 weeks earlier than Whitsett.

64. On March 10, 2022 Plaintiff Whitsett was forced to sign a Leave Without Pay (LWOP) waiver under duress. The illegal waiver was an agreement of voluntary resignation on June 30, 2022 if not vaccinated.

65. On June 30, 2022 Plaintiff Whitset's religious position not to vaccinate remained the same despite his accommodation request denied by the Defendants. He did not vaccinate for that reason. His employment was illegally terminated without union representation and on false terms. **EXHIBIT 15**

66. On March 13, 2023, a month after the Mayor ended the CVM, Plaintiff Whitsett made a request to be reinstated. He followed the rules set by his union contract and City, that any employee of any City agency could be reinstated to his or her job if they applied within a year of separation. He did that, but on March 14, 2022 the Defendants responded that Whitsett was not eligible for reinstatement but may be eligible for rehire by applying for a vacant position on the nyc.gov website.

# EXHIBIT 5



## Department of Finance

November 12, 2021

Sonya Hong
41-22 147 Street
Flushing, NY 11355

**RE: Vaccine Mandate Request for Reasonable Accommodation**

Dear Sonya Hong:

On October 27, 2021, the Equal Employment Opportunity office ("EEO") received your request for a reasonable accommodation for an exemption from the Order of the Commissioner of the Department of Health and Mental Hygiene to Require COVID-19 Vaccination for City Employees, dated October 20, 2021 (the "vaccine mandate"), based on religion. Your request to be exempt from the vaccine mandate has been denied.

You stated that "your religious beliefs and practices are sacred and personal to you, your family and to those who share your belief objects to the Covid-19 vaccine on religious grounds because it has brought evil by breaking and divided family, friends and co-workers based on the vaccination status. Feels the Vax is the "mark of the beast and demotic" However, you failed to provide any documentation or information that established that you are unable or not permitted to receive any of the FDA authorized COVID-19 vaccines. Your request to be exempt from the vaccine mandate cannot be approved at this time.

If you do not agree with this determination, you may appeal this decision, in writing, within 3 days of receipt of this decision. Please submit your appeal and all supporting documentation to: www.nyc.gov/vaxappeal.

Appeal decisions will be made by November 25, 2021 and the agency will be notified via the www.nyc.gov/vaxappeal portal. If your appeal is declined, you will have three (3) business days to come into compliance by submitting proof of vaccination.

Sincerely,

*Nicole E Grant*

EEO Investigator
CC: EEO File

# EXHIBIT 6

**Hong, Sonya (DOF)**

| | |
|---|---|
| **From:** | Marshall, William (DOF) |
| **Sent:** | Tuesday, May 31, 2022 10:31 PM |
| **To:** | Hong, Sonya (DOF) |
| **Cc:** | Muir, Serena (DOF) |
| **Subject:** | Fwd: [EXTERNAL] Notification of Appeal Determination for Sonya Hong |

Get Outlook for iOS

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
**Sent:** Tuesday, May 31, 2022 9:12:02 AM
**Subject:** [EXTERNAL] Notification of Appeal Determination for Sonya Hong

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.  Forward suspect email to phish@cyber.nyc.gov as an attachment (Click the More button, then forward as attachment).

This is to advise you that the City of New York Reasonable Accommodation Appeals Panel has decided to deny the appeal of Sonya Hong.

Employees who were able to submit their appeals directly through the portal will be notified by e-mail. If you submitted Sonya Hong's appeal on their behalf, we ask that you notify them promptly of this determination. If the appeal was denied, Sonya Hong will have **three business days** from the date you inform the employee to submit proof of vaccination. If the employee does not, they will be put on LWOP. If the appeal was granted, the employee will be permitted to continue coming to work unvaccinated on the condition they continue weekly testing.

Sent from the Department of Citywide Administrative Services. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.

# EXHIBIT 7



**Office of Employee Services**
66 John Street, 9th Floor
New York, NY 10038
Tel. 212.291.4749
Fax 212.361.1500

**Corinne Dickey**
**Assistant Commissioner**

June 30, 2022

Sonya Hong
41-22 147th Street
Flushing, NY 11355

Dear Ms. Hong,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees. Compliance with that Order is a condition of employment. Since you have not complied with the Order despite notice and an opportunity to do so and agreed in a signed waiver to resign your position should you not comply by June 30, 2022, **your employment with the City of New York is terminated, effective June 30, 2022.**

You may have the opportunity to purchase continued health coverage under COBRA. If so, you will receive information directly from NYCAPS Central about this program.

Department of Finance policy requires that you return any property such as a cell phone, laptop, official identification card, access key card or any other city equipment prior to the release of your final paycheck of eligible leave balances.

Please contact Florence Mallette in the Human Resources Management unit at mallettef@finance.nyc.gov or 212. 291. 4762  by no later than Wednesday July 6, 2022, to arrange a date and time to return all DOF issued materials. Failure to do so will result in delay in payment for your eligible leave balances.

Thank you for your service to the City of New York.

Sincerely,

Corinne Dickey

c: Personnel File

# EXHIBIT 8

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131



NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT
REVISED DETERMINATION

DATE MAILED  9/26/2022
SSN: ***-**-4148  LO 831

EMP: THE CITY OF NEW YORK

SONYA HONG
41-22 147TH ST
FLUSHING NY 11355

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED  X  BELOW AND READ THE BACK OF THIS FORM.

1  [XX]  NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 07/01/2022 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE.  EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT.  YOUR WEEKLY BENEFIT RATE
IS $504.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER.  BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 07/01/2022 TO COLLECT UNEMPLOYMENT
REASON  INSURANCE BENEFITS IN THE FUTURE.

YOU WERE DISCHARGED ON 07/01/22 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER PER THE DECEMBER 2021 NYC VACCINE
MANDATE. YOUR EMPLOYER INFORMED YOU ON 11/01/21 THAT RECEIVING THIS
VACCINATION WAS REQUIRED TO CONTINUE YOUR EMPLOYMENT, AND MANDATORY
VACCINATIONS ARE PERMISSIBLE UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN
THAT YOUR ACTIONS WOULD JEOPARDIZE YOUR JOB.

2  [ ]  NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

REASON

[XXX]  This notice supersedes the one sent you dated _____8/25/2022_____ which has been
cancelled.

TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM    By:    LABOR SERVICES REPRESENTATIVE
                                                              FOR THE COMMISSIONER OF LABOR

LO 412 (4-99)

# EXHIBIT 9

# Fwd: UPDATE: Vaccine Mandate Info, Incentives, and FAQs

| | |
|---|---|
| **From:** | Whitsett, Mark <mwhitsett@doitt.nyc.gov> |
| **To:** | 'somark58@yahoo.com' <somark58@yahoo.com>, mwhitset@phybertek.com <mwhitset@phybertek.com> |
| **Subject:** | Fwd: UPDATE: Vaccine Mandate Info, Incentives, and FAQs |
| **Date:** | Friday, October 22, 2021 7:57 AM |
| **Size:** | 982 KB |

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

**From:** Administrative Bulletins <AdministrativeBulletins@doitt.nyc.gov>
**Sent:** Thursday, October 21, 2021 4:06:02 PM
**Subject:** UPDATE: Vaccine Mandate Info, Incentives, and FAQs

Dear Colleagues:

As you know, the Mayor announced yesterday that all City employees must submit proof of vaccination against COVID-19 (at least one dose) **by October 29, 2021 at 5PM.** Please see below (and attached) for answers to Frequently Asked Questions regarding the new mandate and related incentive programs.

NOTE: Employees who believe they are eligible for a medical or religious exemption or accommodation from vaccination must complete the attached Reasonable Accommodation Request Form to EEOandDiversity@doitt.nyc.gov **no later than October 27, 2021.**
Employees who submit accommodation requests <u>after</u> October 27th will be placed on Leave Without Pay until their reasonable accommodation is decided, including any appeals. Medical or religious accommodations will only be granted in limited circumstances.

**What can I submit as proof of vaccination?**
Proof must be:
- An official CDC card or other official immunization card bearing the employee's name and date(s) of vaccine administration. The employer must see this document or a photograph of it;
- An Excelsior Pass issued by the State of New York; or
- The NYC COVID SAFE app that clearly displays an image of the CDC card or other official immunization card with the above noted requirements. The NYC COVID SAFE app can be downloaded for Apple or Android (or by searching "NYC COVID Safe" on Apple app store or Google Play store).

**Where do I submit proof of vaccination?**
Contact HRCommunications@doitt.nyc.gov to arrange for electronic, in-person, or virtual submission/verification of proof of vaccination.

**What incentives are available for vaccination? How do I get the $500 for getting my first dose?**

From October 20-29, 2021, employees will be eligible to receive $500 through payroll, in addition to a $100 gift card available at City operated vaccination sites, if they receive their first vaccine dose during that time period. Please visit https://www1.nyc.gov/site/coronavirus/vaccines/vaccine-incentives.page for a full list of incentives offered for vaccination. In addition, City employees are eligible to receive up to three hours of compensatory time under PSB 600-4 Temporary Citywide Policy for Vaccination of City Employees against SARS-CoV-2.

**Is weekly testing still in effect?**
Until October 29, weekly testing is still required for an employee who has not yet received their first dose. Any City employee who provides documentation of having received one dose of any COVID-19 vaccine on or before October 29, 2021 at 5 PM will not be required to continue weekly testing. An employee who receives the first dose of any COVID vaccine after October 29, 2021 will be required to undergo weekly testing until they have submitted proof of full vaccination.

**Is one dose (of a two-dose cycle) enough to satisfy the requirement?**
No.  Regardless of date of vaccine, if the City employee received a two-dose vaccine, the employee must provide documentation that the second dose has been administered within 45 days of the first dose. Failure to do so will result in the employee being placed on leave without pay.

**What if I don't submit proof of vaccination?**
Employees who do not submit proof of vaccination will not be eligible to work and will be placed on Leave Without Pay beginning November 1, 2021.

As always, please contact HRCommunications@doitt.nyc.gov with any questions.

Stay well!

Human Resources

---

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**Reasonable Accomodation Request Form June21.pdf** 359 KB

**Vaccine Mandate FAQ 102121.pdf** 332 KB

# EXHIBIT 10

Name: Mark Whitsett

Date: 10/27/2021

Religious Exemption for Vaccine Mandate

I have a sincerely held religious belief that prohibits me from being vaccinated with the COVID-19 vaccine. The COVID-19 mandate required by the City of New York for the City of New York employees is in direct opposition to my spiritual relationship with God.

I was born the youngest of 6 children. After my father received his first son (my brother), both of my parents decided that my brother would be their last child. My mother was approaching 30 years of age, which at that time was considered late, made the choice to close her Fallopian tube, but God had another plan. At the age of 29, my mother found herself pregnant with me despite the extent of her efforts. It was at that point, I was given to God and was raised in the church. My entire birth family follows the word of God. I keep fellowship in the churches, but I do not assume that any church is perfect in their views of God's message. Only the word of God and his words are without error. My relationship with God is through his Son. It is the only way. My family and I defer to the bible to solve all discrepancies or errors in the words and actions of the world. I am guided by the spirit of God and it is my personal arbitrator in life.

Since the birth of my two children, they have always attended Christian: daycare, after-school, summer camp and religious studies. God is of the utmost importance to every member of my household to date. Our family prayed to God about the COVID-19 vaccine on how to approach this matter. We asked for directions and it was revealed to us simply by asking. God gave the vision to see the truth.

In my request for religious exemption, I must state clearly what religion means. Religion is the belief system in a God and/or in some cases of others, many gods. In my religious belief there is no man, woman, king, minister, pope, president or group of people that stands between myself and my beloved and almighty God. On the day of judgment, I will stand alone before God and be held accountable for my life and my life only. I will not have a representative like a priest, minister, governor or mayor speaking on my behalf. My relationship with God is personal and there is no higher authority and requires no intermediaries. Our Lord left behind the spirit of God that dwells within all that keeps his commandments. The cost of our sin was left at the cross from the blood of his Son. There is no need to confess my sins, I only need to ask for forgiveness.

*John: 15 If ye love me, keep my commandments. 16 And I will pray the Father, and he shall give you another Comforter, that he may abide with you forever; 17 Even the Spirit of truth;*

*whom the world cannot receive, because it seeth him not, neither knoweth him: but ye know him; for he dwelleth with you, and shall be in you.*

Firstly, the vaccine goes against my religious belief because these brand new vaccines work on the DNA. DNA is the base of life and design. God created mankind and said it was good. According to my belief, because it is written in the book of God, that I cannot even give consent to having any substance that change, enhance, modify, temporarily or permanently the design of God's work, as my body is a temple of the Holy Spirit. Introducing synthetic substances to manipulate God's design is blasphemy, even under the name spiked protein. It is written: **1 Corinthians 6:19** "What? know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?"

Secondly, the strong handed vaccinations process (globally) represents the Mark of the Beast, which my God detailed in the Bible. God has clearly shown that we are living in these times. Across the globe people are dealing with the exact situation. The mandates of the vaccine in the arm OR regular testing in the foreheads using the PCR test, both of which have been described by God. I have opted out of both, by paying to have a saliva PRC test to meet the City of New York requirements.

*Revelation chapter 13 verses 16-18: And he causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads: And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name. Here is wisdom. Let him that hath understanding count the number of the beast: for it is the number of a man; and his number is Six hundred threescore and six.*

This is the mark of the beast. The current governmental leaders have already banned people who did not receive the Mark from basic everyday activities, like the ability to buy food in a restaurant, to enter into grocery stores that have restaurants, to attend any indoor activities, to join large outdoor venues and even as far as mandating no vaccines, no job. One can surely not buy or sell if they have no income and are homeless. I am sure this will continue and escalate. It is evident, we are living in the last days. How can anyone make someone choose between their God and feeding their children?

If one dares to think the idea is not valid, one would only have to look at the actions of our governmental leaders. The Governor of New York and the Mayor of New York City went to churches to address their members.

The scripture says: *Mark 13 21-22: And then if any man shall say to you Lo, here is Christ; or, lo, he is there; believe him not. For false Christs and false prophets shall rise, and shall shew signs and wonders, to seduce, if it were possible, even the elect.*

Our Governor talked to the congregation of Christian Cultural Center in Brooklyn and her words were as follows. "God did answer our prayers. He made the smartest men and women, the scientists, the doctors, the researchers – he made them come up with the vaccine. That is from God to us and we must say, thank you, God." The Governor also stated, "I know you're vaccinated, you're the smart ones, but you know there's people out there who aren't listening to God and what God wants. You know who they are." The Governor even asked the church to be her apostles and spread the good word about the vaccine. In my belief, this is the false prophecy that was written. I am uncertain how the Governor was able to make such a claim, but the bible warns us about false prophets and wonders of man. Why would the Governor believe her connection with God is somehow greater or more truthful than millions faithful followers of God who disagree? The Governor has been the most vocal advocate of removing people's religious protection. The Governor said the state will appeal a "disappointing decision" by a federal judge that allows for religious exemptions to its vaccine mandate for health care workers. The Governor stated, "I completely understand that people feel strongly about this, but sometimes you have to do a calculation of what is important." The Governor also said "people's deeply held beliefs are important, but we also have a public health objective which is overriding and that's the position we're taking in court." She clearly states public health overrides deeply held spiritual beliefs, which contradicts her message being that of God. This is blasphemy in the purest sense.

The Mayor of New York City who mandated vaccination of all city workers, went to New Life Outreach International church in the Bronx and spoke to the congregation and he said, "I want to tell everybody, you're not getting the 666 in this vaccine, OK?" We followers of Yeshua know that our enemy is a deceiver and he uses people with or without their understanding. He has been a deceiver since the introduction of mankind, and he will deceive until the end of time. My soul is not for sale for $500 and a Metrocard.

*Genesis 3:4-5 "The serpent said to the woman, 'You surely will not die! For God knows that in the day you eat from it your eyes will be opened, and you will be like God, knowing good and evil."*

In conclusion, this procedure goes against my spiritual relation with God. I am requesting a religious exemption and reasonable accommodation from the COVID-19 vaccine based on my sincerely held religious belief. I cannot take the vaccine for two reasons: 1, it desecrates my body which is a temple of God and 2, it is the Mark of the Beast prophesied in Revelations.

The accommodation that I am requesting is the exemption from this satanic requirement. Currently, testing weekly causes an unreasonable financial stress, as I am forced to circumvent the free or insurance approved nasal PCR test by using the saliva test to remain in agreement with my religious beliefs.This test costs me $140 weekly and causes hardship. I've successfully worked remotely from March 2020 to September 2021,  as my job is not customer facing. My work in or out of the office requires that I connect remotely to servers locked in

datacenters that I do not have physical access to. Currently, all my meetings in or out of the office are held remotely on MS Teams.


Thank you,

Mark Whitsett

# EXHIBIT 11

# Re: Reasonable Accommodation Appeal Denied

| | |
|---|---|
| **From:** | Whitsett, Mark <mwhitsett@doitt.nyc.gov> |
| **To:** | Brooks, Ayana M. <ambrooks@doitt.nyc.gov> |
| **Cc:** | mwhitset@phybertek.com <mwhitset@phybertek.com> |
| **Subject:** | Re: Reasonable Accommodation Appeal Denied |
| **Date:** | Tuesday, February 22, 2022 4:49 PM |
| **Size:** | 394 KB |

Hello Ayana,

I tried to email vaxappeal@dcas.nyc.gov  to request my appeal decision and the response from that address was:

*"This mailbox is not monitored; please do not reply or send an email to this mailbox."*

Please help me ascertain this information regarding my Citywide Panel Appeal decision.  I am currently on vacation.   I will reach out to you tomorrow by phone.

Regards,

-Mark Whitsett

**From:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Sent:** Tuesday, February 22, 2022 9:38 AM
**To:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Subject:** Re: Reasonable Accommodation Appeal Denied

Ayana Brooks,

I have not received an email from the Citywide Appeal Panel directly nor an email of their decision via Salesforce. No email has entered my inbox, junk, spambox or clutter folders. These folders were kept clear because I was aware that the agency never whitelisted a vendor they contracted to handle this very important matter.   Everyone in my particular situation (DOITT and other agencies) received notification directly from Salesforce with a reason for denial.  I understand that DOITT is not in control of this process, but my appeal was sent to the Appeal Panel directly and not DOITT. This is why I asked for an email to be sent to me from Salesforce.

The 3-waiver requirements that were specified in your email are not valid without receiving an answer  from the Citywide Panel  directly concerning my appeal to DOITT's initial denial decision. This is the purpose of the appeal.

The breakdown in the process could be the result of any of the following scenarios (but not limited to) :

1. There was a glitch in the process that caused them to contact the agency with erroneous information and I was not contacted due to a problem as a result.

2. The appeal information was mixed up with another employee's appeal and I was not contacted as a result.

3. The information concerning my appeal was lost or corrupted and a denial was defaulted.

4. The appeal that I uploaded was not sent directly to the panel, rather it was submitted on my behalf, which should not have been the case. I uploaded the documents to the portal. As stated in the unverified information provided, **"Employees who were able to submit their appeals directly through the portal will be notified by e-mail."**

5. The process was rushed and a denial was defaulted.

The point is, an error has been made and there is an unlimited explanation as to why.

The most critical detail that I am missing from this invalid process is my denial reason **"This decision classification for your appeals is as follows"** Without this reason, I am unable to discuss the denial with an attorney, especially with a deadline stipulated as a response.

Please have the Citywide Panel send the answer to me directly  with their decision regarding my appeal or ask IT Messaging to investigate why this very important legal detail has not entered my inbox.  A forwarded or copied email cannot be verified. I should have received an email from Salesforce when DOITT was notified. Something went terribly wrong with the process or procedure that leaves me in a grave disadvantage.


Regards,

-Mark Whitsett

---

**From:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Sent:** Thursday, February 17, 2022 4:34 PM
**To:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Subject:** Reasonable Accommodation Appeal Denied

Mark-

We received notification that your appeal of your Reasonable Accommodation determination regarding vaccinations has been denied.  If an employee's appeal is denied, they must submit proof of the first dose of a vaccination **within 3 business days of this notification of the appeal denial,** and if part of a two-dose vaccine regimen, submit proof of a second dose within 45 days of receiving that second dose. If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will be placed on Leave Without Pay immediately and may be subject to termination.

**Please provide proof of vaccination by COB Wednesday, February 23, 2022.**

11/14/24, 3:44 PM                         Re: Reasonable Accommodation Appeal Denied | Fastmail

- **If you do not choose vaccination, you will be placed on Leave Without Pay (LWOP), and you may select from one of the following options. If you do not plan to be vaccinated, <u>you may select one of these options within 21 days (no later than COB March 10, 2022).</u> You are advised and encouraged to review the attached waiver options with your union and an attorney.**

1. **You can resign using the attached Resignation Waiver.** With this option, you will be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days, to be paid following your resignation and my execution of this waiver. By executing this waiver, you will be eligible for health benefits through June 30, 2022, unless you have health insurance available from another source. <u>Review the attached Resignation Waiver for additional conditions of resignation.</u>

2. **You can submit notice of Retirement** (if eligible). With this option, the City of New York agrees to allow you to use and receive payment for your accrued annual leave and compensatory time and agrees to allow you to be placed on terminal leave as opposed to being placed on Leave Without Pay in advance of your retirement date. Your retirement from DoITT will become final after all of your accrued time and leave has been expended. <u>Review the attached Retirement Waiver for additional conditions of retirement.</u>

3. **You can choose to extend your Leave Without Pay through June 30, 2022.** With this option, will remain on Leave Without Pay through June 30, 2022 and, during this time, will be eligible for health benefits. In the event you come into compliance with the October 20, 2021 order issued by the Commissioner of the Department of Health and Mental Hygiene mandating that all City employee be vaccinated against COVID-19, and seek to return from Leave Without Pay, you must inform DoITT before June 30, 2022 of your intent to return. Once you notify DoITT of your intent to return, you have a right to return to the same work location as soon as is practicable but in no case more than two weeks following your notice of intent to return. If you have not returned from Leave Without Pay before June 30, 2022, you will be deemed to have voluntarily resigned effective June 30, 2022. <u>Review the attached Extended LWOP Waiver for additional conditions of the LWOP extension.</u>

Ayana M. Brooks, Esq.
Associate Commissioner for HR, Labor Relations, and Engagement Programs
718.403.8620
917.671.8990
ambrooks@doitt.nyc.gov


Information
Technology &
Telecommunications

**CONFIDENTIALITY NOTICE:** This communication, including any attachments, is intended only for the person(s) or entity(ies) to which it is addressed and may contain **CONFIDENTIAL** or **LEGALLY PRIVILEGED** material. If you receive this message in error, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify

11/14/24, 3:44 PM                    Re: Reasonable Accommodation Appeal Denied | Fastmail

the sender immediately of such error by telephone or by return e-mail and delete the message and all attachments from your
computer and destroy any hard copy.

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is
intended only for the addressee. If you received this e-mail in error or from someone who was not
authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments.
Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**screenShotVaxAppeal.png** 241 KB

# EXHIBIT 12



**Information
Technology &
Telecommunications**

February 28, 2022

Mark Whitsett
97 Brooklyn Avenue, #3G
Brooklyn, NY 11216

Email: mwhitsett@doitt.nyc.gov

Dear Mark Whitsett:

This letter is being sent to confirm that you that you have been placed on Leave Without Pay ("LWOP") effective March 1, 2022 based on your non-compliance with City vaccine policy, specifically the NYC Health Commissioner Order dated October 21, 2021.

Please read the summarized guidance and deadlines below provided for by agreement between DC 37 (your union) and the City of New York.  You are advised and encouraged to consult with your union representative for further information.

- Your leave is not considered a disciplinary action, and you shall continue to be eligible for health benefits while on Leave Without Pay.
- While on Leave Without Pay, you are prohibited from engaging in gainful employment.
- If you become vaccinated while on Leave Without Pay and provided appropriate documentation to the agency you may have the right to return to your same work location following notice and submission of documentation. See the link here for vaccination locations: https://vaccinefinder.nyc.gov/.

Leave and Separation Options **(Time-Sensitive)**
**You must select one of the following options no later than March 10, 2022.**

1. **You can resign** using the attached **Resignation Waiver**.  With this option, you will be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days, to be paid following your resignation and my execution of this waiver.  By executing this waiver, you will be eligible for health benefits through June 30, 2022, unless you have health insurance available from another source.  Review the attached Resignation Waiver for additional conditions of resignation.

2. **You can submit notice of Retirement** (if eligible).  With this option, the City of New York agrees to allow you to use and receive payment for your accrued annual leave and compensatory time and agrees to allow you to be placed on terminal leave as opposed to being placed on Leave Without Pay in advance of your retirement date.  Your retirement from DoITT will become final after all of your accrued time and leave has been

**NYC** Information
Technology &
Telecommunications

expended.  Review the attached Retirement Waiver for additional conditions of
retirement.

3. **You can choose to extend your Leave Without Pay through June 30, 2022.**  With this
option, will remain on Leave Without Pay through June 30, 2022 and, during this time,
will be eligible for health benefits.  In the event you come into compliance with the
October 20, 2021 order issued by the Commissioner of the Department of Health and
Mental Hygiene mandating that all City employee be vaccinated against COVID-19, and
seek to return from Leave Without Pay, you must inform DoITT before June 30, 2022 of
your intent to return.  Once you notify DoITT of your intent to return, you have a right to
return to the same work location as soon as is practicable but in no case more than two
weeks following your notice of intent to return.  If you have not returned from Leave
Without Pay before June 30, 2022, you will be deemed to have voluntarily resigned
effective June 30, 2022.  Review the attached Extended LWOP Waiver for additional
conditions of the LWOP extension.

**If you do not provide proof of vaccination or select one of the above options on or before
March 10, 2022, the agency will proceed with termination.**

Please contact your attorney and union representative with questions.  If you wish to return to
work before March 10, 2022, please immediately contact HRCommunications@doitt.nyc.gov to
arrange submission of your proof of at least one dose of vaccination against COVID-19.

Sincerely,

Ayana M. Brooks
Associate Commissioner for HR, Labor Relations & Engagement Programs

cc:    A. Perkis
       J. Daniel
       DC 37 (L 2627)

# EXHIBIT 13

**SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.**

### REINSTATEMENT AGREEMENT

**WHEREAS Mark Whitsett** was appointed to the competitive class civil service title of Certified IT LAN/WAN, Title Code No. 13652, by the Office of Technology & Innovation (OTI) on or about May 16, 2017 and thereafter passed probation; and

**WHEREAS**, on October 20, 2021, New York City Commissioner of Health David A. Chokshi, finding that a public health emergency within New York City to address the threat posed by COVID-19 to the health and . welfare of City residents was continuing, and that it was necessary for the health and safety of the City and its residents to exercise the power of the Board of Health to prevent, mitigate, control, and abate the emergency, issued an order that, in pertinent part, required all City employees to provide proof that they had been fully vaccinated against COVID-19 by a date certain and excluding them from the premises at which they worked if they did not provide such proof, unless they had received a reasonable accommodation releasing them from that requirement; and

**WHEREAS**, Mark Whitsett did not provide proof that they had been fully vaccinated by the required date and did not receive an accommodation releasing them from that requirement; and

**WHEREAS**, on or about June 30, 2022, Office of Technology & Innovation ~~dismissed Mark Whitsett~~ forced Mark Whitsett to resign from their position for failing to provide proof that they had been fully vaccinated; and

**WHEREAS**, on February 9, 2023, the New York City Board of Health resolved to make COVID-19 vaccination optional for certain City and Department of Education employees; and

**WHEREAS**, Mark Whitsett is eligible ~~to submit an application~~ for reinstatement to the title of Certified IT LAN/WAN in accordance with paragraph ~~6.2.6~~ 6.2.1 of the Personnel Rules and Regulations of the City of New York; and

**WHEREAS**, Rule ~~6.2.6~~ 6.2.1 of the Personnel Rules and Regulations of the City of New York authorizes Office of Technology & Innovation ~~in its discretion,~~ to reinstate Mark Whitsett with the approval of the Commissioner of the New York City Department of Citywide Administrative Services ("DCAS"); and

**WHEREAS**, Office of Technology & Innovation has determined that the reasons Mark Whitsett has set forth in their application for reinstatement are meritorious and that they should be reinstated to the title of [title]; and

**WHEREAS**, DCAS approves the determination, subject to the execution by Mark Whitsett of this Reinstatement Agreement and the annexed Waiver and Release.

**NOW**, it is hereby stipulated and agreed by Office of Technology & Innovation, DCAS and Mark Whitsett, that:

1.      Upon execution and delivery to Office of Technology & Innovation by Mark Whitsett of this Reinstatement Agreement and the Waiver and Release annexed hereto as Exhibit "A," pursuant to paragraph 6.2.6 of the PRR, (a) Office of Technology & Innovation will ~~exercise its discretion to~~ reinstate Mark Whitsett to the title of Certified IT LAN/WAN, Title Code No. 13652 and (b) DCAS will grant its approval of the Office of Technology & Innovation determination to reinstate Mark Whitsett to that title.

**SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.**

2. ~~The reinstatement is subject to the existence of an appropriate vacancy at Office of Technology & Innovation and the approval of the filing of that vacancy by the Mayor's Office of Management and Budget ("OMB") and shall take effect within a reasonable time after OMB provides such approval.~~

3. ~~In consideration of all of the provisions of this Reinstatement Agreement, Mark Whitsett hereby waives any and all rights of actions or claims against the City, Office of Technology & Innovation, DCAS and all present or former officials, employees, representatives, or agents of the City, Office of Technology & Innovation and DCAS ("Released Parties") for back pay, civil service rights and status for the period of the dismissal.~~

4. Mark Whitsett shall execute and deliver to Office of Technology & Innovation all documents necessary to effect this agreement, including, without limitation, a Waiver and Release in the form annexed hereto as Exhibit "A."

5. ~~Nothing contained herein shall be deemed to be an admission by the Released Parties that they have in any manner or way violated Mark Whitsett's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, the City of New York, or any other rules, regulations or bylaws of any department or subdivision of the City of New York.~~

6. ~~This Reinstatement Agreement shall not be offered as evidence in, nor is it related to, any other grievance, litigation, or settlement negotiations, except that the Stipulation may be used by any party in connection with any subsequent action or proceeding to enforce this Reinstatement Agreement.~~

7. Mark Whitsett represents that they have read the foregoing Reinstatement Agreement, know its contents, and understand its terms and provisions and they have signed it of their own volition.

8. ~~Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York or any of its agencies.~~

9. This Reinstatement Agreement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Reinstatement Agreement regarding the subject matter of this Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

10. This Reinstatement Agreement and Waiver and Release and any other document executed by the parties hereto in furtherance of the purposes of this Reinstatement Agreement and General Release, shall be governed by, interpreted, and enforced in accordance with the laws of the State of New York.

[Remainder of Page Intentionally Left Blank]

SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

11.    This Reinstatement Agreement may be signed in counterparts. A facsimile copy of this agreement will have the same force and effect as the original.

Dated: _6/28/2023_

For Office of Technology & Innovation:

_____

Mark Whitsett

For DCAS:

_____

# SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

### WAIVER AND RELEASE

**KNOW THAT I, Mark Whitsett,** in consideration of my reinstatement to the competitive class civil service title of Certified IT LAN/WAN, Title Code No. 13652, ~~hereby release and discharge the City of New York, the Office of Technology & Innovation (OTI), and the New York City Department of Citywide Administrative Services ("DCAS") and all past and present employees, representatives and agents of the City of New York, DOE and DCAS, or any or all of them, their successors and assigns, from any and all claims, liabilities or causes of action, obligations, damages, grievances and liabilities for back pay, civil service rights and status, arising out of the termination of my employment on June 30, 2022 by Office of Technology & Innovation for the period of dismissal.~~

This Waiver and General Release may not be changed orally.

**THE UNDERSIGNED HAS READ THE FOREGOING WAIVER AND RELEASE AND FULLY UNDERSTANDS IT.**

**IN WITNESS WHEREOF,** I have executed this Waiver and General Release this ___*20th*___ day of *June*, 2023.

Mark Whitsett

Sworn to before me this *20th* day of *June*, 2023

Notary Public

LEMN GERMOSEN
Notary Public - State of New York
NO. 01GE6339296
Qualified in Bronx County
My Commission Expires Mar 28, 2024

4

# EXHIBIT 14

# RE: Reasonable Accommodation Appeal Denied

| | |
|---|---|
| **From:** | Brooks, Ayana M. <ambrooks@doitt.nyc.gov> |
| **To:** | Whitsett, Mark <mwhitsett@doitt.nyc.gov>, Hampton, Elsa <ehampton@doitt.nyc.gov> |
| **Cc:** | mwhitset@phybertek.com <mwhitset@phybertek.com> |
| **Subject:** | RE: Reasonable Accommodation Appeal Denied |
| **Date:** | Wednesday, February 23, 2022 12:09 PM |
| **Size:** | 104 KB |

Mark-

I contacted the Law Department with your request and they didn't respond with additional information. I'm sorry that we can't help any further; our ability to contact the "vax appeal" is the same as yours.

Ayana M. Brooks, Esq.
Associate Commissioner for HR, Labor Relations, and Engagement Programs
718.403.8620
917.671.8990
ambrooks@doitt.nyc.gov

 Information
Technology &
Telecommunications

**CONFIDENTIALITY NOTICE:** This communication, including any attachments, is intended only for the person(s) or entity(ies) to which it is addressed and may contain **CONFIDENTIAL** or **LEGALLY PRIVILEGED** material. If you receive this message in error, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender immediately of such error by telephone or by return e-mail and delete the message and all attachments from your computer and destroy any hard copy.

**From:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Sent:** Wednesday, February 23, 2022 11:46 AM
**To:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>; Hampton, Elsa <ehampton@doitt.nyc.gov>
**Cc:** mwhitset@phybertek.com
**Subject:** Re: Reasonable Accommodation Appeal Denied

Ayana,

I did speak to my union. They advised that I contact the appeals panel directly if the agency is reluctant to assist. Unfortunately, the email auto-replied stating that it is not monitored and not to send email to that address (vaxappeal@dcas.nyc.gov). When employees received their denial emails from the panel it gave them a **decision classification,** which stated why their appeal was rejected. This classification is referenced in the media regarding City of New York municipal workers. The

11/14/24, 3:47 PM                    RE: Reasonable Accommodation Appeal Denied | Fastmail

information that you forwarded to me does not say why and I do not have a decision classification reason.

I do not understand why you cannot reach out to the panel and have this decision classification sent to me?  This is not equal treatment.  I asked you for this information on day 1.

Regards,

-Mark Whitsett

---

**From:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Sent:** Wednesday, February 23, 2022 11:14 AM
**To:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>; Hampton, Elsa <ehampton@doitt.nyc.gov>
**Cc:** mwhitset@phybertek.com <mwhitset@phybertek.com>
**Subject:** RE: Reasonable Accommodation Appeal Denied

Mark-

No additional information was provided by the panel other than what we shared.  When employees have received their denial emails, there is no additional information, as evidenced by your sample.  I'm not sure what other information you are looking for, but the EEO and HR offices are not able to provide you with anything else at this point.  You are encouraged to speak to your union about your concerns.

-ayana

Ayana M. Brooks, Esq.
Associate Commissioner for HR, Labor Relations, and Engagement Programs
718.403.8620
917.671.8990
ambrooks@doitt.nyc.gov

 Information Technology & Telecommunications

**CONFIDENTIALITY NOTICE:** This communication, including any attachments, is intended only for the person(s) or entity(ies) to which it is addressed and may contain **CONFIDENTIAL** or **LEGALLY PRIVILEGED** material.  If you receive this message in error, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender immediately of such error by telephone or by return e-mail and delete the message and all attachments from your computer and destroy any hard copy.

**From:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Sent:** Wednesday, February 23, 2022 10:58 AM
**To:** Hampton, Elsa <ehampton@doitt.nyc.gov>; Brooks, Ayana M. <ambrooks@doitt.nyc.gov>

11/14/24, 3:47 PM                                      RE: Reasonable Accommodation Appeal Denied | Fastmail

Cc: mwhitset@phybertek.com
Subject: Re: Reasonable Accommodation Appeal Denied

Hello Elsa / Ayana,

I am waiting for my appeal decision to come from the City Wide Panel as proof that
your information is authentic and/or without error.  I deserve to be notified by the panel
directly. All of my colleagues who were in the same predicament shared that they
received direct notification from the panel via a Sales Force e-mail.  I have included a
screenshot sample that shows the email that was properly sent to the employees.
They all received their decision classification from the panel.

Until I am rejected by the panel directly, I will assume that this process broken. Please
have the City Wide Panel send me the missing appeal decision letter that contains the
decision classification.  I need to know why my appeal was rejected so that I can make
an informed decision of my choices.  Right now, I am unable to explain to an attorney
why my appeal was rejected.

Regards,

-Mark Whitsett

---

From: Hampton, Elsa <ehampton@doitt.nyc.gov>
Sent: Wednesday, February 23, 2022 9:04 AM
To: Brooks, Ayana M. <ambrooks@doitt.nyc.gov>; Whitsett, Mark <mwhitsett@doitt.nyc.gov>
Subject: RE: Reasonable Accommodation Appeal Denied

Mark,

See attached notification that was sent to me.

Elsa


Elsa Hampton, Esq.
Chief EEO Officer
Executive Director
Office of EEO & Diversity Management
(646) 476-1903
Ehampton@doitt.nyc.gov

 Information
Technology &
Telecommunications

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It
is intended only for the addressee. If you received this e-mail in error or from someone who was not

authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments.
Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**From:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Sent:** Wednesday, February 23, 2022 8:51 AM
**To:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Subject:** RE: Reasonable Accommodation Appeal Denied

Hi Mark-

There is no requirement that you receive an e-mail directly from the Citywide Appeals Panel,
although the appeal system is designed to notify both the agency and the employee. This is
still part of the agency EEO process, so notification from the Agency of the panel's decision is
sufficient. Moreover, given the documentation and cooperative dialogue with the agency, you
are familiar with what the panel reviewed and should be able to confer with a lawyer about this
outcome.

Unfortunately, I am unable to change the deadlines set forth in my email of 2/17.

Ayana M. Brooks, Esq.
Associate Commissioner for HR, Labor Relations, and Engagement Programs
718.403.8620
917.671.8990
ambrooks@doitt.nyc.gov



**CONFIDENTIALITY NOTICE:** This communication, including any attachments, is intended only for the person(s) or entity(ies) to
which it is addressed and may contain **CONFIDENTIAL** or **LEGALLY PRIVILEGED** material. If you receive this message in error,
you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify
the sender immediately of such error by telephone or by return e-mail and delete the message and all attachments from your
computer and destroy any hard copy.

**From:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Sent:** Tuesday, February 22, 2022 9:38 AM
**To:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Subject:** Re: Reasonable Accommodation Appeal Denied

Ayana Brooks,

I have not received an email from the Citywide Appeal Panel directly nor an email of their decision via Salesforce. No email has entered my inbox, junk, spambox or clutter folders. These folders were kept clear because I was aware that the agency never whitelisted a vendor they contracted to handle this very important matter. Everyone in my particular situation (DOITT and other agencies) received notification directly from Salesforce with a reason for denial. I understand that DOITT is not in control of this process, but my appeal was sent to the Appeal Panel directly and not DOITT. This is why I asked for an email to be sent to me from Salesforce.

The 3-waiver requirements that were specified in your email are not valid without receiving an answer from the Citywide Panel directly concerning my appeal to DOITT's initial denial decision. This is the purpose of the appeal.

The breakdown in the process could be the result of any of the following scenarios (but not limited to) :

1. There was a glitch in the process that caused them to contact the agency with erroneous information and I was not contacted due to a problem as a result.
2. The appeal information was mixed up with another employee's appeal and I was not contacted as a result.
3. The information concerning my appeal was lost or corrupted and a denial was defaulted.
4. The appeal that I uploaded was not sent directly to the panel, rather it was submitted on my behalf, which should not have been the case. I uploaded the documents to the portal. As stated in the unverified information provided, **"Employees who were able to submit their appeals directly through the portal will be notified by e-mail."**
5. The process was rushed and a denial was defaulted.

The point is, an error has been made and there is an unlimited explanation as to why.

The most critical detail that I am missing from this invalid process is my denial reason **"This decision classification for your appeals is as follows"** Without this reason, I am unable to discuss the denial with an attorney, especially with a deadline stipulated as a response.

Please have the Citywide Panel send the answer to me directly with their decision regarding my appeal or ask IT Messaging to investigate why this very important legal detail has not entered my inbox. A forwarded or copied email cannot be verified. I should have received an email from Salesforce when DOITT was notified. Something went terribly wrong with the process or procedure that leaves me in a grave disadvantage.

Regards,

-Mark Whitsett

**From:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Sent:** Thursday, February 17, 2022 4:34 PM
**To:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Subject:** Reasonable Accommodation Appeal Denied

Mark-

We received notification that your appeal of your Reasonable Accommodation determination regarding vaccinations has been denied.  If an employee's appeal is denied, they must submit proof of the first dose of a vaccination **within 3 business days of this notification of the appeal denial,** and if part of a two-dose vaccine regimen, submit proof of a second dose within 45 days of receiving that second dose. If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will be placed on Leave Without Pay immediately and may be subject to termination.

**Please provide proof of vaccination by COB Wednesday, February 23, 2022.**

- **If you do not choose vaccination, you will be placed on Leave Without Pay (LWOP), and you may select from one of the following options.  If you do not plan to be vaccinated, <u>you may select one of these options within 21 days (no later than COB March 10, 2022).</u>  You are advised and encouraged to review the attached waiver options with your union and an attorney.**

1. **You can resign using the attached Resignation Waiver**.  With this option, you will be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days, to be paid following your resignation and my execution of this waiver.  By executing this waiver, you will be eligible for health benefits through June 30, 2022, unless you have health insurance available from another source.  <u>Review the attached Resignation Waiver for additional conditions of resignation.</u>

2. **You can submit notice of Retirement** (if eligible).  With this option, the City of New York agrees to allow you to use and receive payment for your accrued annual leave and compensatory time and agrees to allow you to be placed on terminal leave as opposed to being placed on Leave Without Pay in advance of your retirement date.  Your retirement from DoITT will become final after all of your accrued time and leave has been expended.  <u>Review the attached Retirement Waiver for additional conditions of retirement.</u>

3. **You can choose to extend your Leave Without Pay through June 30, 2022.**  With this option, will remain on Leave Without Pay through June 30, 2022 and, during this time, will be eligible for health benefits.  In the event you come into compliance with the October 20, 2021 order issued by the Commissioner of the Department of Health and Mental Hygiene mandating that all City employee be vaccinated against COVID-19, and seek to return from Leave Without Pay, you must inform DoITT before June 30, 2022 of your intent to return.  Once you notify DoITT of your intent to return, you have a right to return to the same work location as soon as is practicable but in no case more than two weeks following your notice of intent to return.  If you have not returned from Leave Without Pay before June 30, 2022, you will be deemed to have voluntarily resigned

effective June 30, 2022.  Review the attached Extended LWOP Waiver for additional conditions of the LWOP extension.

Ayana M. Brooks, Esq.
Associate Commissioner for HR, Labor Relations, and Engagement Programs
718.403.8620
917.671.8990
ambrooks@doitt.nyc.gov



Information
Technology &
Telecommunications

CONFIDENTIALITY NOTICE: This communication, including any attachments, is intended only for the person(s) or entity(ies) to which it is addressed and may contain CONFIDENTIAL or LEGALLY PRIVILEGED material.  If you receive this message in error, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender immediately of such error by telephone or by return e-mail and delete the message and all attachments from your computer and destroy any hard copy.

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**image001.png** 451 B

# EXHIBIT 15



**Office of Technology & Innovation**

June 30, 2022

Mark Whitsett
97 Brooklyn Avenue, #3G
Brooklyn, NY 11216

Via email: Mwhitset@phybertek.com

Dear Mark Whitsett:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees. Compliance with that Order is a condition of employment. Since you have not complied with the Order despite notice and an opportunity to do so and agreed in a signed waiver to resign your position should you not be in compliance by June 30, 2022, your employment with the City of New York will end, effective June 30, 2022.

Please ensure that all OTI/DOITT property is returned. You will receive information about COBRA and health coverage under separate cover.

Thank you for your service to the City of New York.

Sincerely,

Ayana M. Brooks
Associate Commissioner for HR, Labor Relations & Engagement Programs

cc:     A. Perkis
        J. Daniel
        File

# EXHIBIT 16

**SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.**

<u>REINSTATEMENT AGREEMENT</u>

**WHEREAS Mark Whitsett** was appointed to the competitive class civil service title of Certified IT LAN/WAN, Title Code No. 13652, by the Office of Technology & Innovation (OTI) on or about May 16, 2017 and thereafter passed probation; and

**WHEREAS,** on October 20, 2021, New York City Commissioner of Health David A. Chokshi, finding that a public health emergency within New York City to address the threat posed by COVID-19 to the health and welfare of City residents was continuing, and that it was necessary for the health and safety of the City and its residents to exercise the power of the Board of Health to prevent, mitigate, control, and abate the emergency, issued an order that, in pertinent part, required all City employees to provide proof that they had been fully vaccinated against COVID-19 by a date certain and excluding them from the premises at which they worked if they did not provide such proof, unless they had received a reasonable accommodation releasing them from that requirement; and

**WHEREAS,** Mark Whitsett did not provide proof that they had been fully vaccinated by the required date and did not receive an accommodation releasing them from that requirement; and

**WHEREAS,** on or about June 30, 2022, Office of Technology & Innovation ~~dismissed Mark Whitsett~~ forced Mark Whitsett to resign from their position for failing to provide proof that they had been fully vaccinated; and

**WHEREAS,** on February 9, 2023, the New York City Board of Health resolved to make COVID-19 vaccination optional for certain City and Department of Education employees; and

**WHEREAS,** Mark Whitsett is eligible ~~to submit an application~~ for reinstatement to the title of Certified IT LAN/WAN in accordance with paragraph ~~6.2.6~~ 6.2.1 of the Personnel Rules and Regulations of the City of New York; and

**WHEREAS,** Rule ~~6.2.6~~ 6.2.1 of the Personnel Rules and Regulations of the City of New York authorizes Office of Technology & Innovation ~~in its discretion~~ to reinstate Mark Whitsett with the approval of the Commissioner of the New York City Department of Citywide Administrative Services ("DCAS"); and

**WHEREAS,** Office of Technology & Innovation has determined that the reasons Mark Whitsett has set forth in their application for reinstatement are meritorious and that they should be reinstated to the title of [title]; and

**WHEREAS,** DCAS approves the determination, subject to the execution by Mark Whitsett of this Reinstatement Agreement and the annexed Waiver and Release.

**NOW,** it is hereby stipulated and agreed by Office of Technology & Innovation, DCAS and Mark Whitsett, that:

1.      Upon execution and delivery to Office of Technology & Innovation by Mark Whitsett of this Reinstatement Agreement and the Waiver and Release annexed hereto as Exhibit "A," pursuant to paragraph 6.2.6 of the PRR, (a) Office of Technology & Innovation will ~~exercise its discretion to~~ reinstate Mark Whitsett to the title of Certified IT LAN/WAN, Title Code No. 13652 and (b) DCAS will grant its approval of the Office of Technology & Innovation determination to reinstate Mark Whitsett to that title.

# SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

2. ~~The reinstatement is subject to the existence of an appropriate vacancy at Office of Technology & Innovation and the approval of the filing of that vacancy by the Mayor's Office of Management and Budget ("OMB") and shall take effect within a reasonable time after OMB provides such approval.~~

3. ~~In consideration of all of the provisions of this Reinstatement Agreement, Mark Whitsett hereby waives any and all rights of actions or claims against the City, Office of Technology & Innovation, DCAS and all present or former officials, employees, representatives, or agents of the City, Office of Technology & Innovation and DCAS ("Released Parties") for back pay, civil service rights and status for the period of the dismissal.~~

4. Mark Whitsett shall execute and deliver to Office of Technology & Innovation all documents necessary to effect this agreement, including, without limitation, a Waiver and Release in the form annexed hereto as Exhibit "A."

5. ~~Nothing contained herein shall be deemed to be an admission by the Released Parties that they have in any manner or way violated Mark Whitsett's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, the City of New York, or any other rules, regulations or bylaws of any department or subdivision of the City of New York.~~

6. ~~This Reinstatement Agreement shall not be offered as evidence in, nor is it related to, any other grievance, litigation, or settlement negotiations, except that the Stipulation may be used by any party in connection with any subsequent action or proceeding to enforce this Reinstatement Agreement.~~

7. Mark Whitsett represents that they have read the foregoing Reinstatement Agreement, know its contents, and understand its terms and provisions and they have signed it of their own volition.

8. ~~Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York or any of its agencies.~~

9. This Reinstatement Agreement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Reinstatement Agreement regarding the subject matter of this Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

10. This Reinstatement Agreement and Waiver and Release and any other document executed by the parties hereto in furtherance of the purposes of this Reinstatement Agreement and General Release, shall be governed by, interpreted, and enforced in accordance with the laws of the State of New York.

[Remainder of Page Intentionally Left Blank]

SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

     11.    This Reinstatement Agreement may be signed in counterparts. A facsimile copy of this agreement will have the same force and effect as the original.

Dated: _6/28/2023_

                                                       For Office of Technology & Innovation:

_____

Mark Whitsett

                                                       For DCAS:

_____

SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

### WAIVER AND RELEASE

KNOW THAT I, Mark Whitsett, in consideration of my reinstatement to the competitive class civil service title of Certified IT LAN/WAN, Title Code No. 13652, ~~hereby release and discharge the City of New York, the Office of Technology & Innovation (OTI), and the New York City Department of Citywide Administrative Services ("DCAS") and all past and present employees, representatives and agents of the City of New York, DOE and DCAS, or any or all of them, their successors and assigns, from any and all claims, liabilities or causes of action, obligations, damages, grievances and liabilities for back pay, civil service rights and status, arising out of the termination of my employment on June 30, 2022 by Office of Technology & Innovation for the period of dismissal.~~

This Waiver and General Release may not be changed orally.

THE UNDERSIGNED HAS READ THE FOREGOING WAIVER AND RELEASE AND FULLY UNDERSTANDS IT.

IN WITNESS WHEREOF, I have executed this Waiver and General Release this ___20th___ day of June, 2023.

Mark Whitsett

Sworn to before me this 20th day of June, 2023

Notary Public

LEHN GERMOSEN
Notary Public - State of New York
NO. 01GE6339296
Qualified in Bronx County
My Commission Expires Mar 28, 2024

4

# EXHIBIT 17

# APPENDIX

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand twenty-one.

Before:      Pierre N. Leval,
                José A. Cabranes,
                Denny Chin,
                     *Circuit Judges.*

---

Michael Kane, William Castro, Margaret Chu, Heather Clark, Stephanie Di Capua, Robert Gladding, Nwakaego Nwaifejokwu, Ingrid Romero, Trinidad Smith, Amaryllis Ruiz-Toro,

                     *Plaintiffs-Appellants,*        **ORDER**

          v.                               21-2678-cv

Bill de Blasio, in his official capacity as Mayor of the City of New York, David Chokshi, in his official capacity of Health Commissioner of the City of New York, New York City Department of Education,

                     *Defendants-Appellees.*

---

Matthew Keil, John De Luca, Sasha Delgado, Dennis Strk, Sarah Buzaglo,

                     *Plaintiffs-Appellants,*

          v.                               21-2711-cv

The City of New York, Board of Education of the City School District of New York, David Chokshi, in his Official Capacity of Health Commissioner of the City of New York, Meisha Porter, in her Official

Capacity as Chancellor of the New York City
Department of Education,

*Defendants-Appellees.*

_____

The motions of Plaintiffs-Appellants ("Plaintiffs") for an injunction pending appeal having been heard at oral argument on November 10, 2021, and Defendants-Appellees ("Defendants") having represented to this Court that "the City is working toward making an opportunity for reconsideration available more broadly to DOE employee[s] who unsuccessfully sought religious exemptions pursuant to the arbitration award's appeal process," it is hereby

**ORDERED** that this appeal is expedited and will be heard by a merits panel sitting on November 22, 2021 (the "merits panel"). Pending further order by the merits panel,

1. Plaintiffs shall receive fresh consideration of their requests for a religious accommodation by a central citywide panel consisting of representatives of the Department of Citywide Administrative Services, the City Commission on Human Rights, and the Office of the Corporation Counsel.
2. Such consideration shall adhere to the standards established by Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law. Such consideration shall not be governed by the challenged criteria set forth in Section IC of the arbitration award for United Federation of Teachers members. Accommodations will be considered for all sincerely held religious observances, practices, and beliefs.
3. Plaintiffs shall submit to the citywide panel any materials or information they wish to be considered within two weeks of entry of this order. The citywide panel shall issue a determination on each request no later than two weeks after a plaintiff has submitted such information and materials. Within two business days of the entry of this order, Defendants shall inform plaintiffs' counsel how such information and materials should be transmitted to the citywide panel.
4. The deadline to opt-in to the extended leave program and execute any accompanying waiver shall be stayed for Plaintiffs, and no steps will be taken to terminate the plaintiff's employment for noncompliance with the vaccination requirement.
5. If a plaintiff's request is granted by the citywide panel, the plaintiff will receive backpay running from the date they were placed on leave without pay.
6. This order is intended only to provide for temporary interim relief until the matter is considered by the merits panel of this court, which panel may entirely supersede these provisions for interim relief, and the parties are at liberty to advocate to the merits panel for alteration of these provisions. Unless the merits panel has previously entered a superseding order, within two weeks of the conclusion of Plaintiffs' proceedings before the citywide panel, the parties shall inform the merits panel of the result of those proceedings and advise of any further relief being sought.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of New York

|  |  |
|---|---|
| SONYA HONG, 97 Brooklyn Avenue 3G, Brooklyn, NY 11216<br>MARK WHITSETT, 97 Brooklyn Avenue 3G, Brooklyn, NY 11216<br><br>*Plaintiff(s)*<br><br>v.<br><br>CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF<br>FINANCE, NEW YORK CITY OFFICE OF TECHNOLOGY AND<br>INNOVATIONS, NYC DEPARTMENT OF CITYWIDE<br>ADMINISTRATIVE SERVICES and ERIC ADAMS<br><br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

CITY OF NEW YORK, 1 Centre Street, New York, NY 10007
NEW YORK CITY DEPARTMENT OF FINANCE, 66 John Street, 9th Floor, N.Y., N.Y.10038
NEW YORK CITY OFFICE OF TECHNOLOGY AND INNOVATIONS, 2 Metrotech Center, Brooklyn, N.Y. 11201
NYC DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, 1 Centre Street, 17th Floor, N.Y., N.Y. 10007
Eric Adams, 1 City Hall, New York, NY 10007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**BRENNA B. MAHONEY**
*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)* _____

_____  _____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____  _____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____  _____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .


I declare under penalty of perjury that this information is true.


Date: _____  _____                    _____
                                                        *Server's signature*


                                               _____
                                                        *Printed name and title*


                                               _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 4-29-21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Sonja Hong, 97 Brooklyn Avenue 36, Brooklyn, NY 11216 640-807-1357<br>Mark Whitsett, 97 Brooklyn Avenue 36, Brooklyn, NY 11216 929-613-6008 | City of New York, New York City Department of Finance, New York City Office of Technology and Innovations, NYC Department of Citywide Administrative services and Eric Adams |

**(b)** County of Residence of First Listed Plaintiff _____
*EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se Litigants

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

*Does this action include a motion for temporary restraining order or order to show cause?* Yes ☐ No ☒

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### CIVIL RIGHTS
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983 and other Civil Rights
Brief description of cause:
Wrongful deprivation of Human Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, _____, counsel for _____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐ monetary damages sought are in excess of $150,000, exclusive of interest and costs,

☒ the complaint seeks injunctive relief,

☐ the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial duplication of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

# NY-E DIVISION OF BUSINESS RULE 1(c)

1.) Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?    ☐ Yes    ☒ No

2.) If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?    ☐ Yes    ☒ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?    ☒ Yes    ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?    ☐ Yes    ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☐ Yes    ☐ No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐ Yes    (If yes, please explain    ☐ No

I certify the accuracy of all information provided above.

**Signature:** _____