UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────x

SONYA HONG and MARK WHITSETT,

                                        Plaintiffs                  DOCKET NO.



              -against-
                                                        **AMENDED COMPLAINT**
                                                         *Jury Trial Demanded*

CITY OF NEW YORK-MAYOR'S OFFICE,

                                        Defendant
────────────────────────────────x


**PLAINTIFFS SONYA HONG and MARK WHITSETT,** ("Plaintiffs") proceeding Pro

Se, as and for their Summons and Complaint filed to protect their Constitutional rights

against the above-captioned Defendant the City of New York, (henceforth "Defendant"),

alleges upon knowledge as to their own facts and upon information and belief as to all

other matters:

### PRELIMINARY STATEMENT

1. After the COVID-19 pandemic panic became a topic of concern in the fall of 2019, the

   City of New York started a process that was based upon an autocratic presumption of

   police power with widespread discrimination in implementing its vaccine mandates.

2. The First Amendment to the Constitution of the United States protects the right of the

   individual to freedom in his or her religious belief and from bodily harm. This freedom is

   subject only to the qualification that its exercise may be limited by governmental action

   where such exercise clearly and presently endangers the public health, welfare or morals.

   The instant case illustrates one facet of the problem which arises when public interests

conflict with private interests. Prince v. Massachusetts, 321 U.S. 158 (1943); In re Estate of Brooks, 32 Ill.2d 361, 205 N.E.2d 435 (1965). The COVID Vaccine Mandate (CVM) *as applied* to the Plaintiffs, was not neutral or generally applicable, and Defendant refused to give strict scrutiny to any accommodation request or appeal.

3. On August 3, 2021, Mayor de Blasio declared war on the unvaccinated, announcing a "Key to New York City" pass which intentionally excludes unvaccinated people from accessing basic aspects of life in New York in a blatant effort to coerce them to get vaccinated with one of the still-experimental COVID-19 vaccines. At a press conference, he described the goals of the program as follows:

> "The key to New York City – when you hear those words, I want you to imagine the notion that because someone's vaccinated, they can do all the amazing things that are available in this city. This is a miraculous place literally full of wonders. And, if you're vaccinated, all that's going to open up to you. You'll have the key. You can open the door. But, if you're un-vaccinated, unfortunately, you will not be able to participate in many things. That's the point we're trying to get across. It's time for people to see vaccination as literally necessary to living a good and full and healthy life. The Key to NYC Pass will be a first-in-the-nation approach. It will require vaccination for workers and customers in indoor dining, in indoor fitness facilities"
> https://www.nyc.gov/site/cecm/support/exective-order.page

4. The Mayor created political and personal chaos on employees of the City of New York, because there were no religious exemptions in the Key to NYC program, leaving religious minorities unable to participate in fundamental aspects of life in the City, including aspects "literally necessary to living a good and full and healthy life" according to the mayor. DOH Commissioner Chokshi added permission to submit religious and medical accommodation requests in September 2021. See ¶8 in the DOH October 20, 2021 mandate, **EXHIBIT 1**.

5. Two days after the "Key to NYC" was announced, on August 5, 2021, Wolf Blitzer interviewed CDC Director Rochelle Walensky ("Dr. Walensky") on CNN. Dr. Walensky

clarified that the data on vaccine effectiveness against the then-dominant delta variant are conclusive: though the vaccines appeared to prevent severe illness, they cannot stop infection or transmission. "But what they can't do anymore is prevent transmission." When asked if asymptomatic vaccinated people could pass on the virus, Dr. Walensky said, "that's exactly right." (https://stacks.cdc.gov/view/cdc/108440; and https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html)

6. The City never changed their priority, to play into the public panic and sell the idea that the vaccine would stop the virus and all infections. The Citywide Panel was set up to enforce secret allotments of token City employees to an unvaccinated workplace.

7. By discarding due process rights and adopting a facially discriminatory religious accommodation policy and a meaningless medical accommodation procedure, Defendant gave blind support for an Emergency Use Authorization (EUA) vaccine that was temporary yet created permanent harm for Plaintiffs. This order allowed accommodations for remaining unvaccinated. **EXHIBIT 1** DOH Order.

8. While hundreds of municipal workers were given approved remote positions for their religious beliefs and/or medical condition pursuant to invalid, lawless and unknown reasons never explained, Plaintiffs were denied approval, which made very little sense as both worked in jobs that were not public-facing, and had made accommodations for employees. **EXHIBIT 2** DCAS Religious Exemptions 2016-2022.

9. What is now known is that the City of New York created a public policy where asking for an accommodation became charged misconduct that led to termination without a hearing. In sum, the manner in which the NYC COVID Vaccine Mandate ("CVM")  was applied to municipal workers in NYC, including Plaintiffs Hong and Whitsett, was secretive and

3

not neutral or generally applicable. Indeed, Plaintiff Whitsett never received a decision on his request for a religious exemption/accommodation appeal, and heard about his denial from his agency's HR office. The Citywide Panel worked through computer, emailing requests and decisions. No Panel member had a dialogue with any appellant at any time.

10. The Citywide Panel was set up in October 2021 by City Law Department Attorney Eric Eichenholtz, newly appointed to head up Employment litigation. The members of this Panel were kept secret throughout 2021 and most of 2022, and the criteria used to grant or deny religious exemption/accommodation requests were then, and remain today, secret and unjustifiable under any law. There was no dialogue on the appeals with the people who were allowed to appeal. Allan Deutsch's Affirmation and the Deposition of Eric Eichenholtz tell a tale of misinformation and discrimination by the Panel, all under the excuse that there were "too many" appeals to consider each individually.  See

**The Citywide Panel and the Final Judgment in Kane-Keil-New Yorkers For Religious Liberty**
https://advocatz.com/2025/01/25/new-york-state-court-of-appeals-issues-an-amended-judgment-in-new-yorkers-for-religious-liberty-et-al-v/

and

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/

11. The Defendant, acting under color of law, created the COVID Vaccine Mandate ("CVM") in order to terminate as many municipal workers as possible in a lawless manner and punish anyone who challenged their presumed total power. The goal was to fire municipal workers who had employment protections such as Civil Service titles, which are soundly despised by the leaders of City politics.

12. That's not all that went wrong in 2021-2022. Not a single union in the City agreed with, or ratified, a change of the terms and conditions in their contracts that agreed with the City's mandate to coerce their members into getting vaccinated or lose their jobs. Yet the City imposed the CVM and argued that the mandates changed union workers' terms of employment. This was simply not true. The City used this false information and their power over the City budget and salaries as collateral, destroying the lives of thousands of honest, good workers and their families. **Civil Service Law Section 75** (https://codes.findlaw.com/ny/civil-service-law/cvs-sect-75/) gives all City workers the right to a hearing before termination if they are charged with misconduct, as Plaintiffs in this case. The Citywide Panel cannot and must not be considered a fair and just Notice and hearing under Federal Rules for Due Process 14th Amendment.

13. Plaintiffs were given only a few days to respond to the mandate that they get the vaccine or be terminated. Plaintiff Whitsett never heard from the Citywide Panel on their decision to deny his appeal.

14. The science at the time (2020-2021) decried COVID mandates because the vaccine did not stop the virus, nor did it protect anyone from transferring the virus. See the Declaration of Dr. Jayanta Bhattacharya, Affirmations and Affidavits of Dr. Harvey Risch, Dr. Peter McCullough, DCAS' Allan Deutsch, Eric Eichenholtz, Michael Melocowsky in the ADVOCATZ posts in ¶6.

15. This action seeks recovery of monetary damages for the violation of constitutional rights and due process enshrined in Federal Statutes and state law.

## JURISDICTION AND VENUE

16. This is a civil action seeking injunctive relief, monetary relief, including past and on-

going economic loss, compensatory and equitable damages for the deprivation of Constitutionally protected procedural and substantive due process rights pursuant to 42 U.S.C. Section 1983, 1st, and 14th Amendments to the United States Constitution, 42 U.S. Code § 2000e et seq., New York State Human Rights Law (NYSHRL), NY Executive Law §296 et seq., and New York City Human Rights Law (NYCHRL), NYC Administrative Code Title 8, and New York City Civil Service Laws 75-b and 77.

17.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343 for claims arising federal questions under 42 U.S.C. §1983 and 42 U.S.C. §1988, in particular the protections given by the Equal Protection Clause, First, and Fourteenth Amendments to the Constitution, as well as State law claims codified in the New York State Constitution and Civil Service Laws protecting procedural and substantive due process rights, in particular Civil Service Law Section 75.

18. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a), as well as New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") as Administrative Code §8-107, in that such claims are so related to Plaintiffs' claims within the original jurisdiction of this Court that they form part of the same case or controversy.

19. Defendants were at all times acting under color of law in breaching their covenant of good will and fair dealing with the Plaintiffs as well as committing fraud in the inducement.

20. This action's venue properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because this is the district in which a substantial part of the events giving rise to the Plaintiffs' claims occurred.

21. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and

2202.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. Plaintiffs submitted their religious and medical accommodation requests in a timely fashion yet were never given any dialogue on what accommodation could be offered or reasons for the deprivation of Constitutional rights.

23. Plaintiffs were denied their due process pursuant to the DC 37 contracts, and City, State, and Constitutional Law.

## PARTIES

24.  Plaintiff SONYA HONG held two titles at the same time at the NYC Department of Finance: first, from 09/04/2018, City Research Scientist, Data Analyst/Modeler (Non-Competitive title); second, from 06/17/2019 Statistician (Competitive Permanent Title). She had an impeccable reputation and record. Her job was not public-facing.

25. At all relevant times, Plaintiff was a public employee of DOF within the meaning of an "employee" as defined in NYSCHRL and NYCHRL and New York State Civil Service Laws § 75, 77. She lives in Brooklyn, N.Y.

26. Plaintiff MARK WHITSETT started working at the Office of Technology and Innovations OTI, (Formerly, Department of Information Technology and Telecommunications (DOITT)) in 09/08/2008. He obtained the title Certified IT Administrator (LAN/WAN) as Senior Data Protection Engineer (Competitive Permanent Title). His job was not public-facing.

27. At all relevant times, Plaintiff Whitsett was an employee of DOITT and then OTI and the City within the meaning of the NYSHRL and NYCHRL and New York State Civil Service Laws § 75, 77. He lives in Brooklyn, N.Y.

28. Defendant the CITY OF NEW YORK, acting under color of law, is a municipality organized and existing under the laws of New York State. The City of New York was and is responsible for the policy, practice, supervision, and conduct of its Officers and Agencies at all relevant times hereto. The City of New York's principal office is located at 1 Centre Street, New York NY 10007.

29. At all times herein mentioned, at all relevant times complained about herein, Defendant the City of New York has been the "employer" of the Plaintiffs as defined by the NYSHRL (N.Y. Exec. Law § 292(5)) and the NYCHRL (N.Y.C. Admin. Code § 8-102).

30. At all relevant times herein, Eric Adams was the Mayor of the City of New York, was acting under color of law, and was responsible for creating, executing, and enforcing the Vaccine Mandate. Mayor Adams is responsible for setting and overseeing the policies of the City and the manner in which they are maintained, applied, and enforced. Mayor Adams acted at all times under color of law in the acts attributed to him herein. Mayor Adams' office is located at 1 City Hall, New York, NY 10007.

31. At all times herein mentioned, Defendants employed no fewer than fifteen (15) persons.


**STATEMENT OF RELEVANT FACTS**

**City Vaccine Mandate (CVM) (Plaintiff Sonya Hong)**

32. Plaintiff Hong had two titles at the Department of Finance:

    09/04/2018    City Research Scientist (Non-competitive title starting on the hire date) Data Analyst / Modeler.

    06/17/2019    Statistician (Competitive Permanent title)

33. On March 17, 2020 the Department of Finance went on remote/telework schedule.

34. On May 3, 2021 Plaintiff Hong and all other employees returned to the office, and DOF set up a hybrid work schedule where two groups, Group A and Group B alternated between 2 days (week 1) and 3 days (week 2) in-person hybrid schedule. Telework was permitted until September 2021, at which time Plaintiff was allowed to use intermittent FMLA leave between May 2021 through September 2021.

35. In preparation for the return to the office during COVID, Plaintiff Hong's office at the Department of Finance was re-designed with Plexiglass to separate each employee from other employees.  Employees wore masks during the hybrid in-office schedule, and sat 6 feet apart with different groups coming in on different days (Group A and Group B hybrid schedule is on the excel chart). When Plaintiff went in full-time, she did weekly testing for COVID. **EXHIBIT 3a** DOF Return to Work Hybrid Plan.  **EXHIBIT 3b** DOF Return to Work Hybrid Plan. This Plan worked well because Plaintiff Hong's job did not mandate public-facing work.

36. Plaintiff Hong used intermittent FMLA between May 7, 2021 – Sept. 17, 2021; and Jan. 5, 2022 – Jan. 14, 2022, to take care of her children due to school closure due to COVID.

37. On September 13, 2021 the DOF office opened full-time and Plaintiff Hong was required to test for COVID weekly, wear a mask and social distance.

38. On October 27, 2021 Plaintiff Hong submitted to the Equal Employment Opportunity office ("EEO") her request for a religious exemption, and a request for a medical accommodation. She was told she had to apply, even though her workplace accommodated her by separating employees and intermittent remote work. **EXHIBIT 4** Hong Religious Appeal Statement; **EXHIBIT 5** Hong Medical Statement.

39. Plaintiff Hong's religious request was denied by EEO on November 12, 2021 and by the Citywide panel on December 19, 2021. **EXHIBIT 6a** Hong Religious Exemption Denied. **EXHIBIT 6b** Hong Religious Exemption Denied by Citywide Panel.

40. Plaintiff remained on salary, working for DOF, with weekly COVID testing, masking and social distancing. From April 16, 2022 – April 29, 2022 Plaintiff Hong tested positive for COVID and was on excused leave.

41. On May 31, 2022 Plaintiff Hong was notified that her medical accommodation request was denied. **EXHIBIT 7** Medical Appeal denied.

42. On June 6, 2022 Plaintiff Hong was forced to sign the unlawful document that was titled "LWOP" in which she had to sign away her right to sue for the deprivation of Constitutional rights to her job. Plaintiff did not, at any time, intentionally and willingly waive her rights to sue or be deprived of any of her employment rights. She was forced to sign the waiver under duress.

43. On June 30, 2022 Plaintiff Hong was informed by DOF that she was terminated because she did not get vaccinated by order of the Health Commissioner. She was told that "Compliance with that order is a condition of employment" which was a lie. She was already accommodated at work by the separation of employees, the mask and test policy, and the fact that her job was not public-facing. None of that relevant information mattered. Plaintiff was the only employee in her Group who was terminated. **EXHIBIT 8** Hong Termination.

44. This termination violated her Civil Service right to a due process, and did not comply with the Guidelines For the Administration of Reduction in Force issued by the NYC Department of Civil Service. https://www.cs.ny.gov/extdocs/pdf/rif_guidelines.pdf

45. On or about September 26, 2022, Plaintiff Hong was told by the NYS Department of Labor to which she had applied for unemployment, that the DOF had claimed Plaintiff was guilty of misconduct, thus denying all unemployment benefits. Plaintiff Hong was given no chance to clear her name from her file and was deprived of her due process rights.

EXHIBIT 9 Hong unemployment Denied. The damages to her caused by the so-called "termination" from service, is long-lasting and continuous.

46. After Mayor Adams made CVM voluntary, not mandatory, on February 10, 2023, Plaintiff requested reinstatement to her former position on March 13, 2023. On April 17, 2023 DOF denied her reinstatement request. On April 28, 2023 Plaintiff Hong asked DOF for reinstatement to any unit with a similar position. On May 1, 2023 the NYC DOF denied reinstatement to similar jobs to any unit at the DOF.

47. On June 21, 2023 Plaintiff Hong asked the DOF for reinstatement because a vacancy to the former position and title opened in the Tax Policy's Data Intelligence Group. On June 26, 2023 the DOF denied Plaintiff Hong reinstatement to this vacant position.

48. On December 7, 2023, Plaintiff Hong applied for Data Analyst/Modeler position in the Tax Policy's Data Intelligence Group, the same job that Plaintiff Hong held before at the NYC Department of Finance.

49. On February 15, 2024, Plaintiff Hong received information that a previous co-worker, Oren Shmuel, left the group. Hong emailed Brett Morgenstern, the previous manager at NYC Department of Finance, about the vacant Data analyst/Modeler position in the Tax Policy's Data Intelligence Group and informed him about the availability and willingness to return to the position. There was no response from Brett Morgenstern, Director of Tax Policy and Data Analytics Division's Data Intelligence Group. Brett Morgenstern reports and defers to Karen

Schlain, the Deputy Commissioner of Tax Policy and Data Analytics, who is the decision maker and responsible for the Tax Policy and Data Analytics group decisions. Plaintiff was not hired.

50. Throughout 2024 and continuing in 2025, Plaintiff Hong sent out her resume seeking positions that she was qualified for to several City Agencies. She received no response.

51. The unlawful LWOP and CVM implemented in New York City has permanently labelled Plaintiff Hong as guilty of misconduct. The City has never informed her of any procedures on how to restore her good name, give her back the job she loved and compensate her for her financial losses incurred by the injustice of the termination.

## City Vaccine Mandate (CVM) (Plaintiff Mark Whitsett)

52. Plaintiff MARK WHITSETT started working at the Office of Technology and Innovations OTI, (Formerly, Department of Information Technology and Telecommunications (DOITT)) in 09/08/2008. He obtained the title Certified IT Administrator (LAN/WAN) as Senior Data Protection Engineer (Competitive Permanent Title). His job was not public-facing.

53. From March 2020 to September 2021, the entire agency worked from home with the exception of a few infrastructure employees due to the pandemic.

54. During a few concluding months of the work from home time, Plaintiff Whitsett was on a partial FMLA leave so he could care for one of his children while daycare places were still closed for business.

55. Plaintiff Whitsett returned to the office a few months after the agency went back in partial staggered schedule. The work from home period was successful because of the back office nature of IT. The job was not public facing and employees normally worked in isolation, on computer systems that were remote to the in-office and remote-office working environments.

56. On October 20, 2021 Mayor Bill de Blasio implemented a vaccine mandate requirement of November 1, 2021 for all City Civil Service to be vaccinated. Plaintiff Whitsett wrote to his employer:

> Hello,
> Today the Mayor of the City of New York, Bill Deblasio, has demanded that all City employees be vaccinated by November 1st.  I would like to request at this time the proper documents to file for a religious exemption from this vaccination program, which is in direct opposition to my religious conviction. Please advise! Regards,-Mark Whitsett

57. On October 22, 2021 Plaintiff Whitsett received information about the COVID vaccine and what his office plan was for employees. **EXHIBIT 10.**

58. On October 27, 2021 Plaintiff Whitsett filed a Religious accommodation request with the OTI EEO office. **EXHIBIT 11**. Religious exemption request.

59. On November 3, 2021 Plaintiff Whitsett was interviewed by EEO at work.  Elsa Hampton ESQ. did the interview.

60. On November 19, 2021 Plaintiff Whitsett's Religious accommodation request was denied by EEO.

61. On November 24, 2021 Plaintiff Whitsett appealed the denial to the Citywide panel. He received an email receipt from the automated apparatus indicating the appeal was received. He was entered into the third-party workflow system.

62. On February 17, 2022 the appeal was denied without reason. Plaintiff Whitsett never received the automated religious accommodation decision email that originated from the third-party workflow system, the Citywide Appeal panel. Defendant was unable to get his requested decision criteria results. **EXHIBIT 12** Reasonable Accommodation Denied.

63. On February 28, 2022 Plaintiff Whitsett received a "Leave Without Pay" or LWOP notice. The document denied that the coerced leave was disciplinary, which Whitsett and all the other employees knew was false. OTI made a misconduct charge against him for his

submission of a religious exemption/accommodation appeal. He was discriminated against because of his religious beliefs **EXHIBIT 13**.

64. Defendant fraudulently denied Plaintiff Whitsett, who dedicated fourteen years of service to the Defendant, the right to a fair appeal process that should have been given to him pursuant to the DCAS rules and Guidelines.  In 2023 he tried to get Reinstated, after the CVM ended. He was denied without any reason. The rule of OTI was that any employee could get reinstated if they requested this within a year of separation. This rule did not apply to him.

65. There is nothing on record that the Citywide Panel appeal decision was ever communicated to Plaintiff Whitsett, therefore the separation from employment was based on hearsay.

66. From February 17 – March 1, 2022 Plaintiff Whitsett tried to ascertain the reason the denial was given by the Citywide Panel. OTI's HR moved the Leave Without Pay start date from February 24 to March 1, 2022.

67. All other colleagues at OTI were notified 3 weeks earlier than Whitsett.

68. On March 10, 2022 Plaintiff Whitsett was forced to sign a Leave Without Pay (LWOP) waiver under duress. The illegal waiver was an agreement of voluntary resignation on June 30, 2022 if not vaccinated.

69. On June 30, 2022 Plaintiff Whitsett's religious position not to vaccinate remained the same despite his accommodation request denied by the Defendant. He did not vaccinate for that reason. His employment was illegally terminated without union representation and on false terms. **EXHIBIT 14**

70. On March 13, 2023, a month after the Mayor ended the CVM, Plaintiff Whitsett made a request to be reinstated. He followed the rules set by his union contract and City, that any employee of any City agency could be reinstated to his or her job if they applied within a

year of separation. He did that, but on March 14, 2022 the Defendant responded that Whitsett was not eligible for reinstatement but may be eligible for rehire by applying for a vacant position on the nyc.gov website.

71. On March 14, 2023 Plaintiff Whitsett informed the Defendant that he had signed the extended illegal Leave Without Pay (LWOP), hence was eligible for reinstatement. He was within the year allowed by contract and law, after separating June 30, 2022.

72. On March 28, 2023 the Defendant subsequently responded with a reinstatement form (DP-71) and another illegal waiver that superseded the previous illegal LWOP (Leave Without Pay) waiver and any previous agreements, written or verbal. Whitsett did not sign the second waiver.

73. The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U. S. 458, 464 (1938). Courts should "indulge every reasonable presumption against waiver, Aetna Ins. Co. v. Kennedy, 301U. S. 389, 393 (1937), and they should "not presume acquiescence 526*526 in the loss of fundamental rights," Ohio Bell Tel. Co. v. Public Utilities Comm'n,301 U. S. 292, 307 (1937). Plaintiff did not, at any time, intentionally and willingly waive his rights to sue or be deprived of any of his constitutional rights.

74. In Carnley v. Cochran, 369 U. S. 506 (1962), the Court held:

> "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandably rejected the offer. Anything less is not waiver." Id., at 516.

15

75. On April 4, 2023 the Defendant responded, that a signed waiver was required to review and process Plaintiff Whitsett's reinstatement request.

76. On June 20, 2023, Plaintiff Whitsett returned to the Defendant a signed copy of his DP-71 reinstatement form, a signed copy of the fraudulent waiver, that struck out information that did not apply.

77. On June 21, 2023, the Defendant responded that the waiver needed to be unmodified or unaltered and that the Defendants could not proceed with Plaintiff Whitsett's reinstatement process.

78. On June 22, 2023, Plaintiff Whitsett returned a signed copy unmodified, but signed noting "under duress" due to the force to resign termination fraud committed by the Defendants.

**EXHIBIT 15**

79. On July 28, 2023, the Defendant denied the reinstatement request, despite the request requirements being met within 1-year of the separation date, submitted June 22, 2023. The reinstatement denial reason was that the line was eliminated via the Citywide Program to Eliminate the Gap (PEG). Prior to the request, Whitsett's position and title was listed in the Defendants' Human Resource computer system – Employment Self Service (ESS). Plaintiff Whitsett initiated the request on March 13, 2023 and finalized June 22, 2023.

80. Due to the actions of Defendant, Whitsett was not offered any civil service position and none were kept open for reinstatement nor did the Defendants offer him any similar or vacant positions that met the civil title requirements. The Defendant retaliated against Plaintiff Whitsett for writing "under duress" on the waiver.

81. On August 23, 2023, Plaintiff Whitsett requested a meeting with Nicole Murry-Bloomfield, Joetta Daniel, Yisroel Hecht, Kareem Gabriel, Olgierd Bilanow, to discuss the reinstatement denial. There was no response.

82. On February 15, 2024, Plaintiff Whitsett contacted Olgierd Bilanow, Yisroel Hecht and Kareem Gabriel requesting his original position back, after Defendants fraudulently declined due to a Position Elimination Gap program (PEG). His request was ignored.

83. Plaintiff Whitsett's position that was denied for reinstatement became vacant due to the retirement of Luis Liendo, an employee that occupied the same role and title as Whitsett. Olgierd Bilanow, Manager of Data Protection, did not respond to Plaintiff Whitsett's request. Yisroel Hecht, Deputy Commissioner, Infrastructure Information Management, did not respond to his request either, and neither did Kareem Gabriel, Associate Commissioner, Personnel Human Resources.

84. In the reinstatement request process, there was a lot of back and forth. Plaintiff Whitsett requested that they update the DP-71 form to include the new salary information (a raise was issued). They updated the DP-71 that included his new salary, which showed that his position was not eliminated.

85. In 2024 Plaintiff Whitsett continued to look for work. He applied to NYC Careers - OTI Data Protection Director - Director, Enterprise Data Protection Services position (reference number: 625653), March 8, 2024; B&H Photos – UNIX administrators, March 31, 2024; August 4, 2023 – NYC Careers – Backup and Recovery Manager (Job ID 580663 - Systems Administrator); August 16, 2024 – DEPT OF ENVIRONMENT PROTECTION  / Senior IT Systems Specialist (Cloud and Infrastructure) Queens, NY; November 26, 2024 – Eastwood Company – Customer Service Technical advisor.

86. Plaintiff Whitsett currently is working part-time in a driving school as a Driving instructor.

87. Whitsett was removed from the City of New York's online employee self-service system.

### City Vaccine Mandate (CVM) (Both Plaintiffs)

88. This action arises from the Defendant's unconstitutional deceit and neglect in trashing customs, policies, practices, statutes and laws protecting the rights of permanent municipal employees in public service in New York City.

89. Defendant's neglect deprived Plaintiffs' of their lawfully protected civil rights, including procedural and substantive due process with a right to be heard on matters of accommodation and on disciplinary charges made against them.

90. Both Plaintiffs' jobs were not public facing. They both worked with computers and data. Ironically, both workplaces of the Plaintiffs made the appropriate accommodations for unvaccinated employees to work together safely in 2021-2022. Defendant then forced Plaintiffs to apply to get accommodations when they already had these accommodations. Both were denied without just cause or reason without any dialogue or suggestion for alternate relief. These actions by Defendant show a deprivation of Due Process as defined by the 14th Amendment, and religious discrimination.

91. While government is fully empowered to make emergency action against life-threatening dangers, it is bedrock law in this country that constitutional rights and prohibitions do not change in an emergency. "The Constitution was adopted in a period of grave emergency. Its grants of power to the Federal Government and its limitations of the power of the States were determined in the light of emergency and they are not altered by emergency." Home Bldg. & Loan Ass'n v Blaisdell, 290 U.S. 398, 425 (1934). Thus "even in a pandemic, the Constitution cannot be put away and forgotten." Roman Catholic Diocese of Brooklyn v

Cuomo, 208 L.Ed. 2d 206, 210 (2020). A citizen has as his greatest right the inviolability of his person. Pratt v. Davis, 224 Ill. 300, 79 N.E. 562 (1903). Affirming the order for transfusions substituted judicial discretion for the individual's judgment. Application of President & Directors of Georgetown College, Inc., 331 F.2d 1000, 1013 (D.C. Cir. 1964), cert. denied 377 U.S. 978 (1964) (dissenting opinion).

92. On or about March 17, 2020, Plaintiffs' workplaces shut down, and they worked remotely.

93. On August 12, 2021 Harry Nespoli, Chairperson of the Municipal Labor Committee, wrote a letter to Renee Campion, Commissioner of the New York City Office of Labor Relations ("OLR") wherein Nespoli wrote about MLC's officers meeting with the City to negotiate working conditions for municipal employees who could not get the vaccine due to religious, medical, or other reasons. He also mentioned:

> "Make no mistake, despite calling this a vaccination policy, the City's proposal creates a new criterion and process for discipline that would allow agencies to suspend workers without pay and without the typical forms of due process provided for under the collective bargaining agreements and law….no policy should be implemented before it is negotiated."

94. The scientific community was quickly countering the increasingly harsh statements and emergency orders coming from the Mayor's office with statements about the dangers of the vaccine and the ineffectiveness to stop transmission of the virus. See Declaration of Dr. Jayanta Bhattacharya at https://www.documentcloud.org/documents/22125801-bhattacharya-declaration; and Affirmation of Dr. Harvey Risch at https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2025/01/Dr.-Harvey-Risch-AFFIDAVIT.pdf

95. Within Defendant's lies was a huge error: the implementation of the CVM pursuant to a never-before heard of "Leave Without Pay" wherein LWOP became a disciplinary action for

those who, like Plaintiffs here, challenged the coerced signing of the LWOP which waived

their Constitutional rights to get accommodation for their remaining unvaccinated.

96. What the Plaintiffs never knew until June 2022 and later, was that they had been also charged

and found guilty of misconduct by signing the LWOP. A code was placed on their personnel

files so that they could not work for the City of New York. Ever. This is retaliatory

discrimination, exactly as the US Supreme Court prohibited in Burlington v White

(**548 US 53 (2006)**).

97. Neither Plaintiff was ever given any chance to be heard on their reasons for claiming

religious exemption (both Plaintiffs) and medical need for exemption from getting vaccinated

with the COVID vaccine (Plaintiff Hong). Instead, Defendant charged Plaintiffs with

misconduct/insubordination for requesting religious and medical accommodations rather than

get vaccinated. This action by Defendant may clearly be defined as disciplinary retaliation

and discrimination, motivated by intentional harm with actual malice.


98. On March 24, 2022, the Mayor issued EMERGENCY EXECUTIVE ORDER 62,

https://www.nyc.gov/office-of-the-mayor/news/062-003/emergency-executive-order-62

which gave permission to various members of sports teams, athletes, performing artists

and others to remain unvaccinated and still do their work. This infuriated municipal

workers and DOE employees who were terminated for not getting vaccinated, because the

City and the DOE showed their cards – the COVID Vaccine Mandate ("CVM") as applied

in New York City, was an Order that was not neutral, and did not have general

applicability, but targeted City Agencies and municipal workers.

99. "Salus populi" or "health of the people" seems to be the mantra of the Defendant in this

matter except they acted under color of law to make up any arguments that were

convenient for their agenda rather than those that made sense or had constitutional validity. Salus populi expresses a common law principal for the state's—and NYC's—exercise of police powers.

100.    The agenda of the Defendant was to allow City agencies to cull the municipal workforce according to a business model created by Jack Welch. Welch said that businesses should always fire the bottom 10% of the workforce every year, because this keeps everyone on their toes.

101.    In this case, the Defendants' theme was: "government can restrain individual liberties to the extent it furthers the ends of preventing harm to other citizens. If the CVM stopped the COVID-19 virus in its' tracks, NYC would have a compelling interest to mandate everyone living and working there to get vaccinated. Even if the Vaccine resulted in even mild side effects, the benefit to the public would outweigh the risk to the individual."

102.    There was a problem with this argument, namely that the COVID vaccine did not, and does not, stop the transmission of the virus and does not slow the spread of the virus, or prevent COVID-19 either.

103.    The risk of contracting COVID-19 is omnipresent in every public place, not just City workplaces, and both the DOF and OTI accommodated their unvaccinated employees who were never public-facing.

104.    Thus the CVM was never generally applicable or neutral.

105.    COVID-19 Vaccines are completely different than traditional vaccines. Prevalent breakthrough cases do not exist for measles, mumps, rubella, and polio in people who have had received vaccination or gained natural immunity.

106.    Both Plaintiffs had compelling and sincere religious beliefs that prohibited them from

getting vaccinated with the COVID vaccine.

107.    Plaintiff Hong has a medical condition that prevented her from getting vaccinated, as she explained when she submitted her request for an accommodation in October 2021. A copy of her doctor's evaluation will be presented in discovery under seal if requested.

108.    Plaintiffs received either an auto-machine-created denials (Hong) that had no details about why she was denied, or no decision at all (Whitsett) in violation of the rules of City Service and their rights under Civil Service Law Section 75(b):

> "A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information:**(i)** regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or**(ii)**which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation."

109.    Civil Service Law Section 77 says:

> "Pursuant to N.Y. Civil Service Law Section 77, a City employee who is unlawfully removed from his or her position, and who thereafter is restored to such position as a result of court order, is entitled to receive back pay and other benefits. See, e.g., Johnson v. New York City Dep't of Env't Prot., 824 N.Y.S.2d 39 (1st Dep't 2006), aff'd 882 N.E.2d 386 (2008). Section 77 requires compensation for back pay and other losses. See Boylan v. Town of Yorktown, 579 N.Y.S.2d 126, 127 (2d Dep't 1992); Johnson, 824 N.Y.S.2d at 40 (a reinstated City employee is entitled to recover lost overtime "to the extent that those amounts can be documented")."

110.    None of the members of the Citywide panel could give accurate numbers or individual criteria for the approvals or denial of the appeals brought to the Citywide Panel. Each person deposed said there were way too many applicants to know each person's information, and no one knew what "undue burden" meant in terms of NYSHRL and NYCHRL standards.

111.    The scam promoted by the City of New York was that the Citywide Panel supposedly

"protected" religious freedom in the municipal workplace with the assistance of the

Department of Citywide Administrative Services pursuant to TITLE VII. In the case of

former NYPD Isaac Valdez, Attorney Jimmy Wagner wrote as follows:

"The NYPD states it will not reinstate Mr. Valdez unless he gets vaccinated in violation of
his religious beliefs. However, in a brutal twist of infinite government mocking of
Plaintiff's religious beliefs, Plaintiff has been hired to work as a private contractor, armed
professional guard in the NYC subway systems, without any requirement to be vaccinated,
for half the pay rate and minimal benefits. How can Plaintiff work as if he was doing the
same task from municipal employment to private employment. It is legally discriminatory
practice against Plaintiff based on his religious beliefs."
(Index No. 152301/2022)

112.    On January 31 2023 in the same case, Mr. Michael Melocowsky, Executive Director of

the Equal  Employment Opportunity Division (EEOD) of the NYPD testified that if he

found someone credible in their religious beliefs, and they had held them for a long time,

then maybe he would give this person a reasonable accommodation, which was weekly

testing and no finding of a positive PCR for the COVID virus. He approved 176 out of

almost 7,000 applicants. He could not say whether these approved people had medical or

religious appeals, he was vague on the credibility determination criteria, and knew of no

costs for what an "undue burden" on the agency might mean. He could not remember any

individual who was interviewed in person.

113.    The Citywide Panel, under the direction of the Mayor's office and the City of New

York, failed to comply with the directive from this Court to follow Title VII and Human

Rights Law. That was their directive.

114.    LWOP was stunningly in violation of all the rights Plaintiffs had as permanent city

service employees. Human Resources law does not have any forced leave without pay.

Leaves are voluntary. The employment contract for city employees allows leaves for

sabbaticals, bereavement, illness, taking care of a relative, and injuries. If someone wants to take a sabbatical, or time off to take care of an ill relative, he or she may apply to take an unpaid leave from their work for a limited time. This applies to the Family Leave Act as well. All these are common in the workplace, and voluntary.

115.    While this case challenges Defendant's deprivation of Plaintiffs' due process in the manner in which the  COVID Mandate was implemented, not the Mandate itself, it is worth noting the decision of Judge Gerard J. Neri in the case Medical Professionals For Informed Consent et al., v Mary T. Bassett, Index. No. 008575/2022:

> "Arbitrary action is without sound basis in reason and is generally taken without regard to the Respondents acknowledge then-current COVID-19 shots do not prevent transmission (see Summary of Assessment of Public Comment, NYSCEF Doc. No.7, p. 25). The Mandate defines, in the loosest meaning of the word, "fully vaccinated" as determined by the Department in accordance with applicable federal guidelines and recommendations" (ibid). "[I]t is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning" (Gawron v. Town of Cheektowaga, 117 A.D.3d 1410, 1412 [Fourth Dept. 2014], citing Majewski v. Broadalbin-Perth Cent. Sch. Dist., 91 N.Y.2d 577,583 [1998]). A term which is defined at the whim of an entity, subject to change without a moment's notice contains all the hallmarks of "absurdity" and is no definition at all. In the alternative, the Court finds the Mandate is arbitrary and capricious."

> In his footnote he wrote:

> "1 Absurdity -1)  the quality or state of being absurd; 2) something that is absurd –

> https://www.merriam-webster.com/dictionary/absurdity

> Absurd - 1) ridiculously unreasonable, unsound, or incongruous; 2) having no rational or orderly relationship to human life; 3) dealing with the absurd (the state or condition in which human beings exist in an irrational and meaningless universe and in which human life has no ultimate meaning) - https://www.merriam-webster.com/dictionary/absurd".

116.    In order for Plaintiffs to be lawfully terminated, they both had to have intentionally committed a known act of misconduct that brought harm to someone or the Agency. They

then had to be given a hearing at which they presented their statements and supporting documents and were given a chance to get the same from their employer. At all times they had the right to face their accusers at a fair hearing. This never happened.

117.    Plaintiffs were found guilty of misconduct and terminated for their religious beliefs (and medical condition – Hong)  and given no due process mandated by union contract DC37 and by Statute, Civil Service Law.

118.    Both Plaintiffs filed Notices of Claim in 2024. Defendants never responded.

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR RELIGIOUS DISCRIMINATION

119.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 118 as if the same were fully set forth at length herein.

120.    Plaintiffs submitted to Defendants statements on their sincere religious beliefs which forbade them from getting vaccinated with the COVID-19 vaccine. Hong was denied by a computer, while Whitsett received no message. Other employees similarly situated were granted exemption/accommodations for their religious beliefs which prohibited getting vaccine.

121.    Plaintiff Hong was the only employee terminated in her group for submitting her exemption request.

122.    Defendant has neither a legitimate nor compelling interest in exercising express and overt religious discrimination. Defendant's invocation of "undue hardship" or "did not meet criteria" defenses are plainly false pretexts attempting to cover for the Defendant's explicit religious discrimination.

123.    Defendant had knowledge of Plaintiffs' sincerely-held religious beliefs yet chose to

25

ignore these beliefs, forced them into a suspension without pay, denied their exemption requests and Appeals based upon an unconstitutional ruling that cited "undue burden"  or "does not meet criteria" without any further details or reason, and terminated their employment.

124.    This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023 :

> "The Court holds that showing "more than a de minimis cost," as that phrase is used in common parlance, does not suffice to establish "undue hardship" under Title VII. ….."

125.    Further, a hardship that is attributable to employer animosity to a particular religion, to religion in general, or to the very notion of accommodating religious practice, cannot be considered "undue."  Bias or hostility to a religious practice or accommodation cannot supply a defense.

126.    Defendant wrongfully, deliberately, in bad faith and under color of law attempted to fraudulently induce Plaintiffs to choose to relinquish their protected beliefs in order to submit to an experimental vaccine, and then punished them both for not agreeing to this extortion and discrimination.

127.    Eric Adams did not enforce the mandate as it applied to employees in the private sector; he and NYC did not prevent unvaccinated private sector employees from going to work; he and NYC did not fine private sector employees for not complying with the Mandate.

128.     The Mandate only applied to City Workers like the Plaintiffs.

129.    A government employer may not punish some employees, but not others, for the same activity, due only to differences in the employees' religious beliefs. **EXHIBIT 2** lists hundreds of City employees in 2021 and 2022 who received religious

exemptions/accommodations. This undermines the Defendant's argument that vaccination was mandatory for all as it pertains to health and safety concerns. No one knows what the underlying criteria for a religious exemption/accommodation was. However, the inference can be made, and Plaintiffs are making it, that the real reason for the Citywide Panel approvals/denials of religious accommodations was pre-textual discrimination, not health and safety in the workplace. "Undue Hardship" in the context used by Defendant here, makes no sense and has no basis in reality.  See Hernandez v The Office of The Richmond County District Attorney, Michael McMahon, and the City of New York, 24-cv-5790, E.D.N.Y.

130.    At the start of the pandemic, Plaintiffs' agencies gave them the needed accommodations to continue working, then terminated them while allowing others in the same location to keep their jobs. All DOF and DOITT employees operate under the same legal authority, are part of the same governmental structure, are subject to the same Vaccine Mandate and review process, and perform identical job duties without facing the public.

131.    The government may not test the sincerity of an employee's religious beliefs by judging whether his or her beliefs are doctrinally coherent or legitimate in the eyes of the government.  Nor may a government employer discriminate against religion by implementing policies that exempt employees for secular reasons more readily than religious ones.  All such discrimination violates the Free Exercise and Establishment Clauses of the First Amendment and the corresponding rights incorporated against the states by the Fourteenth Amendment.  "When there is no plausible explanation for religious discrimination other than animus, it is subject to strict scrutiny, regardless of whether the government employer admits that its actions were motivated by hostility to certain religions." (JANE DOES et al., v BOARD OF REGENTS OF THE UNIVERSITY OF COLORADO et al., No. 22-1027, U.S.

Court of Appeals D.C. No. 1:21-CV-02637-RM-KMT., May 7, 2024)

132.     Plaintiff Hong's unemployment and her unvaccinated status due to her medical condition led directly to her being harassed and belittled by employees and her workplace peer and supervisors who were vaccinated.

133.     In the new category of discipline titled "insubordinate unvaccinated employee", Plaintiffs were not only removed unfairly and without due process from their jobs, but ostracized and humiliated by peers both inside and outside of the workplace.

134.     Both Plaintiffs sought their jobs back after the CVM ended, and were never hired for any position. The harm done by Defendant continues. Plaintiffs have been unable to return to their jobs due to on-going and continuous discriminatory animus.

135.     But for the approval of the denial of protected rights by the Defendant, Plaintiffs were maliciously and in bad faith harassed, wrongfully terminated, and permanently stigmatized.

136.     Based on the foregoing, Defendant under color of law subjected Plaintiffs to discrimination on the basis of their religion and medical condition, in violation of their Constitutional rights to property, liberty and a due process pursuant to 42 U.S.C. § 1983; First and Fourteenth Amendments; Civil Service Law; N.Y. Executive Law§ 296 (New York State Human Rights Law), and N.Y.C. Human Rights Law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR FAILURE TO REASONABLY ACCOMMODATE
## THE PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS

137.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs 1 through 136 as if the same were fully set forth at length herein.

138.     Plaintiffs have sincerely held religious beliefs which forbid them from getting vaccinated with the COVID-19 vaccine.

139.    In 2020-2021 Defendant accommodated Plaintiffs at their work, as both did not have jobs that were public-facing. The employers set up spaces for the unvaccinated and vaccinated to protect everyone. It worked, until the City demanded everyone apply to keep the accommodation. Then it was taken away and both Plaintiffs were terminated. This makes no sense.

140.    Pursuant to the NYCHRL,

It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof to impose upon a person as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such person to violate, or forego a practice of, such person's creed or religion, … and the employer shall make reasonable accommodation to the religious needs of such person.
N.Y.C. Admin. Code § 8–107(3)(a).

141.    The NYSHRL provides:

It shall be an unlawful discriminatory practice for any employer, or an employee or agent thereof, to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require such person to violate or forego a sincerely held practice of his or her religion, including but not limited to the observance of any particular day or days or any portion thereof as a sabbath or other holy day in accordance with the requirements of his or her religion or the wearing of any attire, clothing, or facial hair in accordance with the requirements of his or her religion, unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's or prospective employee's sincerely held religious observance or practice without undue hardship on the conduct of the employer's business.

N.Y. Executive Law § 296(10)(a).

142.    Defendant had knowledge of Plaintiffs' sincerely-held religious beliefs yet chose to ignore these beliefs, denied Plaintiffs their exemption requests and Appeals based upon an unconstitutional mandate and procedure known as LWOP, and gave no details or reason, for their termination. This directly contradicts the ruling in Groff v Dejoy, U.S. Supreme Court Docket 22-174, June 29, 2023.

143.    Plaintiffs had sincerely held religious beliefs which prohibit them from receiving

COVID-19 vaccinations.

144.    After being accommodated for a year and performing the duties required of their jobs in a satisfactory and competent manner, Plaintiffs were denied accommodations without due process, yet other employees of the Defendant received accommodations for their religious and/or medical accommodations. No explanation for that disparate treatment was given

145.    Defendant never engaged in a dialogue about Plaintiffs' accommodation or exemption. This deprivation of a lawful procedure was intentional, acted on under color of law, and pursued in bad faith.

146.    Defendant omits information of their long-term policy in accommodating employees according to law. This matter shows that Defendant not only did not engage in a dialogue about the accommodations already given to them, but punished both Plaintiffs as guilty of misconduct for applying for exemptions.

147.    As a direct and proximate result of Defendant's failure to accommodate, Plaintiffs suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages in an amount to be determined at trial.

148.    Based on the foregoing, Defendant failed to provide a reasonable accommodation and as a result, discriminated against the Plaintiffs on the basis of their religion and medical condition, and  unlawfully discriminated against Plaintiffs in violation of the Equal Protection of the Law contained within the 14th Amendment; 42 U.S.C. § 1983; N.Y. Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION:
## VIOLATION OF THE FOURTEENTH AMENDMENT EQUAL
## PROTECTION CLAUSE

149.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in

paragraphs 1 through 148 as if the same were fully set forth at length herein.

150.    Defendant, while acting under the color of law, unlawfully deprived the Plaintiffs of

their rights to Equal Protection of the Laws, guaranteed by the Fourteenth Amendment of

the United States Constitution, in that they engaged in selective enforcement of their own

laws, rules, regulations, and ordinances against Plaintiffs based upon the Plaintiffs'

religion, medical condition, and Plaintiffs' constitutionally protected conduct.

151.    Defendant intentionally and, with malicious or bad faith intent to injure Plaintiffs,

selectively treated Plaintiffs differently from other similarly situated employees and acted

with no rational basis for the difference in treatment. Defendant's conduct was intentional,

conducted with bad faith, and wholly irrational.

152.    In Garvey v City of NY (Index No. 85163/2022), Judge Ralph Porzio wrote in his

decision:

> "Though vaccination should be encouraged, public employees should not have been
> terminated for their non-compliance….The Health Commissioner cannot create a
> new condition of employment for City employees. The Mayor cannot exempt certain
> employees from these orders. Executive Order 62 renders all of these vaccine
> mandates arbitrary and capricious….prohibit an employee from reporting to work."

153.    New York City was the only location in New York State which mandated the vaccine

or termination for public employees. As a direct result of Defendant's violation of the

Plaintiffs' Fourteenth Amendment rights of equal protection, Plaintiffs have suffered

irreparable harm for which there is no adequate remedy of law.

154.    Due to Defendant's violation of Plaintiffs' Fourteenth Amendment rights of equal

protection under the law, as alleged herein above, Plaintiffs have suffered and are entitled to recover compensatory and nominal damages including backpay.

155.    The Fourteenth Amendment prohibits any State from denying to "any person within its jurisdiction the equal protection of the laws." 129. NY Const art, I §XI states that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed, or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state." 130. 42 U.S.C. §1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

156.    Defendant Adams was the final policy maker for the City of New York.

157.    Plaintiffs are United States citizens domiciled in New York State.  Plaintiffs are similarly situated in all material respect to every other human being because the Virus infects all human beings without distinction.

158.     Plaintiffs never interacted with the public.

159.    Plaintiffs were punished for being unvaccinated, whereas unvaccinated members of the public and workers in the private sector were not.

160.    Mandating City workers like Plaintiffs to get vaccinated is illogical, arbitrary, and nonsensical.

161.    This policy does nothing to further the goal of stopping the spread of COVID-19.

162.    Thus, unvaccinated people in the City were punished only if they worked for the City. Even though, the City could not achieve herd immunity if every City worker were vaccinated.  Even though, vaccination is a permanent measure that does not go away at the end of the workday. Still, the named Defendant singled out Plaintiffs by terminating them and taking away the accommodations already set up for them in their respective workplaces, leaving them harmed and broken.

163.    There is absolutely no permissible reason for selectively enforcing the mandate against unvaccinated City workers like Plaintiffs irrespective of vaccine efficacy.

164.    In addition, the plausibility that Defendant was motivated by impermissible considerations or malicious intent skyrockets considering that the Vaccine—as alleged herein—does not stop the transmission of the Virus, and does not prevent a vaccinated person from getting COVID.

165.    Defendant knew that the vaccine did not stop transmission, but mandated it anyway. Knowledge is plausibly inferred from individuals getting infected despite being boosted multiple times in addition to peer reviewed scientific literature.

166.    Adams' carve outs supports the inference that they knew it did not work. Adams acted in violation of clearly established federal law.

167.    Adams issued the Mandate under color of law.

168.    Adams' Mandate as it was applied to Plaintiffs is not rationally related to furthering the public health under any conceivable circumstance. Even worse, Adams never pretended that the exceptions he created were related to furthering public health.

169.    Based on the foregoing, Defendant subjected Plaintiffs to discrimination on the basis of

their religious beliefs, unlawfully discriminating against the Plaintiffs in violation of 42

U.S.C. § 1983; 1st, and 14th Amendments due process clauses; Civil Service Law; N.Y.

Executive Law§ 296 (New York State Human Rights Law); and N.Y.C. Human Rights Law.

### AS AND FOR A FOURTH CAUSE OF ACTION:
### FAILURE TO ENGAGE IN A COOPERATIVE DIALOGUE
### IN VIOLATION OF NYCHRL

170.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs

1 through 169 as if the same were fully set forth at length herein.

171.    The NYCHRL requires employers to engage in a cooperative dialogue with an

employee who requests a reasonable accommodation on the basis of religion.

172.    The NYCHRL provides a separate cause of action against employers who fail to

engage in a cooperative dialogue with employees, like Plaintiffs in this case, who request a

reasonable accommodation:

It shall be an unlawful discriminatory practice for an employer, labor organization or
employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a
cooperative dialogue within a reasonable time with a person who has requested an
accommodation or who the covered entity has notice may require such an accommodation:
1.  For religious needs as provided in subdivision 3 of this section.

N.Y.C. Admin. Code § 8-107 (28)(a).

173.    Defendant was obligated to engage in a cooperative dialogue with Plaintiffs regarding

their need for a reasonable accommodation to the Vaccine Mandate.

174.    Defendant refused to engage in any cooperative dialogue and simply denied Plaintiffs'

requests for a reasonable accommodation.

175.    The NYCHRL prohibits Defendant from denying Plaintiffs' requests for a

reasonable accommodation until it engaged in a cooperative dialogue with them:

The determination that no reasonable accommodation would enable the person requesting an

34

accommodation to satisfy the essential requisites of a job or enjoy the right or rights in question may only be made after the parties have engaged, or the covered entity has attempted to engage, in a cooperative dialogue.

N.Y.C. Admin. Code § 8-107 (28)(e).

177. Defendant violated the NYCHRL by denying Plaintiffs' requests for a reasonable accommodation without first engaging in a cooperative dialogue.

178. Plaintiffs sufficiently articulated sincerely held religious beliefs that conflict with the Vaccine Mandate.

179. The Citywide Panel never had *any* communications with Plaintiffs regarding their accommodation requests before denying them.

180.  As a direct and proximate result of Defendant's unlawful discriminatory practices, Plaintiffs suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self confidence, and emotional pain and suffering for which they are entitled to an award of monetary damages in an amount to be determined at trial.

181. As a direct and proximate result of Defendant's violations of the NYCHRL, N.Y.C. Admin. Code § 8-107 (28)(a)(1) and § 8-107 (28)(e), Plaintiffs are entitled to declaratory and injunctive relief.

 182. Defendant is liable to Plaintiffs for compensatory damages, including pain and suffering, and punitive damages in an amount to be determined at trial.


### AS AND FOR A FIFTH CAUSE OF ACTION: VIOLATION OF the FREE EXERCISE CLAUSE OF THE CONSTITUTION

183.    Plaintiffs repeat, reiterate, and reallege each and every allegation contained in

paragraphs 1 through 182 as if the same were fully set forth at length herein.

184.    The Free Exercise Clause of the First Amendment to the United States Constitution

prohibits the government from burdening the free exercise of religion.

185.    The First Amendment provides, in pertinent part, that "Congress shall make no law

respecting an establishment of religion or prohibiting the free exercise thereof…" U.S. Const.

amend. I.

186.    The Supreme Court has held that "a law burdening religious practice that is not neutral or

not of general application must undergo the most rigorous of scrutiny." Church of Lukumi

Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 546 (1993).

187.    The Mayor forced the CVM on all municipal workers, yet implemented the CVM so that

the mandate was not generally applicable. The CVM makes exceptions for secular reasons

that defeat the purpose of the CVM in that it allows employers to exercise a mechanism for

individualized exceptions such as medical or religious accommodations.

188.    Where there is evidence of animus, or where there is a mechanism for exemption or lack

of general neutrality requirements, an infringement must be strictly scrutinized, and the

Defendant bears the burden of showing that they applied a law or policy using the least

restrictive means available to further a compelling state interest.

189.    Plaintiffs' sincerely held religious beliefs prohibit them from taking a Covid-19 vaccine.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the Local

Rules, Plaintiffs demand trial by jury for all the issues pleaded herein so triable.


**WHEREFORE,** Plaintiffs request judgment against the Defendants for all compensatory,

emotional, psychological and punitive damages, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that this Court grant Plaintiffs any other relief to which they are entitled, including but not limited to:

1. Awarding Plaintiffs their former positions, salary steps, and raises, earned after termination in full, with benefits; and

2. Awarding Plaintiffs all the back pay owed since they were removed from their salaries;

3. Clearing the names and personnel files of any record on the termination maligns the stellar work of Plaintiffs so that they may resume their careers with the City of New York.

4. Considering Plaintiffs are prose, an opportunity to Amend their Complaint after submission of Defendant's papers.

5. Granting such other and further relief that the Court deems just and proper.

Dated: September 15, 2025

/s/ Sonya Hong                                    /s/ Mark Whitsett
Sonya Hong                                          Mark Whitsett

97 Brooklyn Ave, Apt 3G
Brooklyn, NY 11216
929-613-6008
shmw57@outlook.com

EXHIBIT 1

## ORDER OF THE COMMISSIONER
## OF HEALTH AND MENTAL HYGIENE
## TO REQUIRE COVID-19 VACCINATION FOR
## CITY EMPLOYEES AND CERTAIN CITY CONTRACTORS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS,** the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants, and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the Department reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New York City; and

**WHEREAS,** a study by Yale University demonstrated that the Department's vaccination campaign was estimated to have prevented about 250,000 COVID-19 cases, 44,000 hospitalizations, and 8,300 deaths from COVID-19 infection since the start of vaccination through July 1, 2021, and by information and belief, the number of prevented cases, hospitalizations, and death has risen since then; and

**WHEREAS,** on August 16, 2021, Mayor de Blasio issued Emergency Executive Order No. 225, the "Key to NYC," requiring that patrons and employees of establishments providing indoor entertainment, dining, and gyms and fitness centers must show proof that they have received at least one dose of an approved COVID-19 vaccine, and such Order, as amended, is still in effect; and

**WHEREAS,** on August 24, 2021, I issued an Order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting, and such Order was re-issued on September 12 and

15, 2021, and subsequently amended on September 28, 2021, and such Orders and amendment were ratified by the New York City Board of Health on September 17, 2021 and October 18, 2021; and

**WHEREAS**, on August 26, 2021, the New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a COVID-19 vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a COVID-19 vaccine by October 7, 2021; and

**WHEREAS,** on August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test; and

**WHEREAS,** on September 9, 2021 President Biden issued an Executive Order stating that "It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public," and ordering each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law"; and

**WHEREAS,** on September 12, 2021, I issued an Order requiring that staff of early childhood programs or services provided under contract with the Department of Education or the Department of Youth and Community Development provide proof of COVID-19 vaccination; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** City employees and City contractors provide services to all New Yorkers that are critical to the health, safety, and well-being of City residents, and the City should take reasonable measures to reduce the transmission of COVID-19 when providing such services; and

**WHEREAS**, a system of vaccination for individuals providing City services and working in City offices will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** there is a staff shortage at Department of Corrections ("DOC") facilities, and in consideration of potential effects on the health and safety of inmates in such facilities, and of the benefit to public health and employee health of a fully vaccinated correctional staff, it is necessary that the requirements of this Order for DOC uniformed personnel not assigned to posts in healthcare settings be delayed; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such Section;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is

necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, and order that:

1. My Order of August 10, 2021, relating to a vaccination or testing requirement for staff in City operated or contracted residential and congregate settings, shall be **RESCINDED** as of November 1, 2021. Such staff are subject to the requirements of this Order.

2. No later than 5pm on October 29, 2021, all City employees, except those employees described in Paragraph 5, must provide proof to the agency or office where they work that:

   a. they have been fully vaccinated against COVID-19; or
   b. they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
   c. they have received the first dose of a two-dose COVID-19 vaccine

   Any employee who received only the first dose of a two-dose vaccine at the time they provided the proof described in this Paragraph shall, within 45 days after receipt of the first dose, provide proof that they have received the second dose of vaccine.

3. Any City employee who has not provided the proof described in Paragraph 2 must be excluded from the premises at which they work beginning on November 1, 2021.

4. No later than 5pm on October 29, 2021, City agencies that contract for human services contracts must take all necessary actions to require that those human services contractors require their covered employees to provide proof that:

   a. they have been fully vaccinated against COVID-19; or
   b. they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
   c. they have received the first dose of a two-dose COVID-19 vaccine.

   Any covered employee of a human service contractor who received only the first dose of a two-dose vaccine at the time they provided the proof described in this Paragraph shall, within 45 days after receipt of the first dose, provide proof that they have received the second dose of vaccine.

   All such contractors shall submit a certification to their contracting agency confirming that they are requiring their covered employees to provide such proof. If contractors are non-compliant, the contracting City agencies may exercise any rights they may have under their contract.

5. Notwithstanding Paragraphs 3 and 4 of this Order, until November 30, 2021, the provisions of this Order shall not apply to uniformed Department of Corrections ("DOC") employees, including staff serving in Warden and Chief titles, unless such uniformed employee is assigned for any time to any of the following locations: Bellevue Hospital; Elmhurst Hospital; the DOC

infirmary in North Infirmary Command; the DOC West Facility; or any clinic staffed by Correctional Health Services.

Uniformed employees not assigned to such locations, to whom this Order does not apply until November 30, 2021, must, until such date, either:

    a.  Provide DOC with proof that:
        i.  they have been fully vaccinated against COVID-19; or
        ii.  they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
        iii.  they have received the first dose of a two-dose COVID-19 vaccine, provided that they must additionally provide proof that they have received the second dose of vaccine within 45 days after receipt of the first dose; or

    b.  On a weekly basis until the employee submits the proof described in this Paragraph, provide DOC with proof of a negative COVID-19 PCR diagnostic test (not an antibody test).

6.   For the purposes of this Order:

"City employee" means a full- or part-time employee, intern, or volunteer of a New York City agency.

"Contract" means a contract awarded by the City, and any subcontract under such a contract, for work: (i) to be performed within the City of New York; and (ii) where employees can be expected to physically interact with City employees or members of the public in the course of performing work under the contract.

"Contractor" means a person or entity that has a City contract, including a subcontract as described in the definition of "contract."

"Covered employee" means a person: (i) employed by a contractor or subcontractor holding a contract; (ii) whose salary is paid in whole or in part from funds provided under a City contract; and (iii) who performs any part of the work under the contract within the City of New York. However, a person whose work under the contract does not include physical interaction with City employees or members of the public shall not be deemed to be a covered employee.

"Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine as approved or authorized for use by the Food and Drug Administration or World Health Organization.

"Human services contract" means social services contracted by an agency on behalf of third-party clients including but not limited to day care, foster care, home care, health or medical services, housing and shelter assistance, preventive services, youth services, the operation of

senior centers, employment training and assistance, vocational and educational programs, legal services and recreation programs.

7.  Each City agency shall send each of its human services contractors notice that covered employees of such contractors must comply with the requirement of Paragraph 4 of this Order and request a response from each such contractor, as soon as possible, with regard to the contractor's intent to follow this Order.

8.  Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law.

9.  This Order shall not apply to individuals who already are subject to another Order of the Commissioner of Health and Mental Hygiene, Board of Health, the Mayor, or a State or federal entity that requires them to provide proof of full vaccination and have been granted a reasonable accommodation to such requirement.

10. This Order shall not apply to per diem poll workers hired by the New York City Board of Elections to conduct the election scheduled for November 2, 2021.

11. Subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code, this Order shall be effective immediately and remain in effect until rescinded, except that Paragraph 5 of this Order will be deemed repealed on December 1, 2021.

Dated:  October 20, 2021

_____
Dave A. Chokshi, M.D., MSc
Commissioner

EXHIBIT 2

Reasonable Accommodation Requests (Religion)
2016-2022

| Agency Code | Agency | 2016 Total Requests | 2016 Requests Granted | 2016 Requests Denied | 2017 Total Requests | 2017 Requests Granted | 2017 Requests Denied | 2018 Total Requests | 2018 Requests Granted | 2018 Requests Denied | 2019 Total Requests | 2019 Requests Granted | 2019 Requests Denied | 2020 Total Requests | 2020 Requests Granted | 2020 Requests Denied | 2021 Total Requests | 2021 Requests Granted | 2021 Requests Denied | 2022 Total Requests | 2022 Requests Granted | 2022 Request Denied |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 002 | OFFICE OF THE MAYOR | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 1 | 0 |
| 004 | CAMPAIGN FINANCE BOARD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 1 | 2 | 2 | 2 | 0 |
| 008 | OFFICE OF THE ACTUARY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 | 0 | 0 | 0 |
| 009 | NYC EMPLOYEES' RETIREMENT SYSTEM | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 33 | 32 | 0 | 4 | 3 | 0 |
| 012 | BOROUGH PRESIDENT BROOKLYN | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | 0 | 0 |
| 014 | BOROUGH PRESIDENT RICHMOND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 |
| 011 | OFFICE OF THE COMPTROLLER | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 1 |
| 019 | OFFICE OF MANAGEMENT AND BUDGET | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 1 | 1 | 7 | 6 | 0 |
| 025 | LAW DEPARTMENT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 51 | 17 | 28 | 12 | 10 | 0 |
| 030 | DEPARTMENT OF CITY PLANNING | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 3 | 1 | 7 | 5 | 1 |
| 032 | DEPARTMENT OF INVESTIGATION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 14 | 1 | 11 | 2 | 2 | 0 |
| 041 | TEACHERS' RETIREMENT SYSTEM | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 9 | 1 | 0 | 0 | 0 |
| 054 | CIVILIAN COMPLAINT REVIEW BOARD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 2 | 1 | 1 | 1 | 0 |
| 056 | POLICE DEPARTMENT | 117 | 126 | 2 | 607 | 363 | 12 | 490 | 458 | 5 | 3078 | 2288 | 4 | 3095 | 521 | 0 | 639 | 410 | 98 | 662 | 538 | 30 |
| 057 | FIRE DEPARTMENT | 25 | 16 | 0 | 29 | 18 | 0 | 41 | 25 | 3 | 39 | 34 | 1 | 12 | 8 | 0 | 1682 | 43 | 977 | 47 | 24 | 13 |
| 063 | DEPARTMENT OF VETERANS' SERVICES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 067 | ADMINISTRATION FOR CHILDREN'S SERVICES | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 271 | 112 | 131 | 46 | 25 | 2 |
| 069 | HRA/DEPARTMENT OF SOCIAL SERVICES | 14 | 10 | 0 | 38 | 11 | 0 | 40 | 19 | 7 | 28 | 18 | 1 | 3 | 1 | 0 | 312 | 274 | 149 | 61 | 12 | 23 |
| 071 | DEPARTMENT OF HOMELESS SERVICES | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 53 | 25 | 24 | 10 | 3 | 1 |
| 072 | DEPARTMENT OF CORRECTION | 61 | 39 | 14 | 209 | 178 | 12 | 187 | 140 | 0 | 135 | 108 | 12 | 85 | 58 | 12 | 87 | 63 | 16 | 11 | 8 | 2 |
| 070 | BOARD OF CORRECTIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 082 | MAYOR'S OFFICE OF CONTRACT SERVICES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 1 | 2 | 2 | 1 | 1 |
| 103 | CITY CLERK | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 |
| 125 | DEPARTMENT FOR THE AGING | 1 | 1 | 0 | 3 | 3 | 0 | 1 | 1 | 0 | 8 | 7 | 0 | 2 | 2 | 0 | 19 | 15 | 4 | 22 | 22 | 0 |
| 127 | FINANCIAL INFORMATION SERVICES AGENCY | 1 | 1 | 0 | 6 | 6 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 | 5 | 6 | 1 | 1 | 0 |
| 131 | OFFICE OF PAYROLL ADMINISTRATION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 | 1 | 2 | 1 | 1 | 0 |
| 156 | TAXI AND LIMOUSINE COMMISSION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 | 0 | 0 | 3 | 0 | 0 |
| 214 | OFFICE OF LABOR RELATIONS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 1 | 1 | 0 |
| 226 | COMMISSION ON HUMAN RIGHTS | 2 | 2 | 0 | 3 | 3 | 0 | 4 | 4 | 0 | 6 | 6 | 0 | 1 | 1 | 0 | 1 | 1 | 0 | 3 | 3 | 0 |
| 256 | NYC POLICE PENSION FUND | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 261 | DEPARTMENT OF YOUTH AND COMMUNITY DEVELOPMENT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 1 | 3 | 2 | 2 | 0 |
| 781 | DEPARTMENT OF PROBATION | 0 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 3 | 2 | 1 | 38 | 5 | 33 | 8 | 7 | 1 |
| 806 | HOUSING PRESERVATION & DEVELOPMENT | 0 | 0 | 0 | 3 | 3 | 0 | 4 | 4 | 1 | 8 | 8 | 7 | 0 | 0 | 0 | 59 | 45 | 4 | 17 | 12 | 0 |
| 810 | DEPARTMENT OF BUILDINGS | 0 | 0 | 0 | 13 | 11 | 0 | 39 | 27 | 0 | 34 | 34 | 0 | 14 | 13 | 0 | 58 | 7 | 51 | 41 | 22 | 10 |
| 816 | DEPARTMENT OF HEALTH AND MENTAL HYGIENE | 0 | 0 | 0 | 33 | 27 | 1 | 40 | 38 | 0 | 40 | 38 | 0 | 3 | 1 | 0 | 192 | 86 | 86 | 65 | 52 | 0 |
| 826 | OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS (OATH) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 1 | 0 | 0 |
| 826 | DEPARTMENT OF ENVIRONMENTAL PROTECTION | 2 | 2 | 0 | 20 | 19 | 0 | 14 | 13 | 0 | 14 | 13 | 0 | 4 | 4 | 0 | 9 | 9 | 0 | 29 | 23 | 0 |
| 827 | DEPARTMENT OF SANITATION | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 |
| 831 | BUSINESS INTEGRITY COMMISSION | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 1 | 3 | 2 | 2 | 0 |
| 836 | DEPARTMENT OF FINANCE | 8 | 8 | 0 | 45 | 45 | 0 | 94 | 94 | 0 | 130 | 129 | 0 | 30 | 29 | 0 | 50 | 37 | 13 | 13 | 8 | 0 |
| 841 | DEPARTMENT OF TRANSPORTATION | 0 | 0 | 0 | 3 | 2 | 0 | 0 | 0 | 0 | 7 | 7 | 0 | 3 | 2 | 0 | 288 | 125 | 145 | 55 | 48 | 1 |
| 846 | DEPARTMENT OF PARKS & RECREATION | 2 | 2 | 0 | 2 | 1 | 0 | 6 | 5 | 0 | 9 | 8 | 0 | 3 | 3 | 0 | 196 | 63 | 133 | 48 | 21 | 24 |
| 850 | DEPARTMENT OF DESIGN AND CONSTRUCTION | 0 | 0 | 0 | 20 | 19 | 0 | 23 | 23 | 0 | 49 | 49 | 0 | 25 | 31 | 0 | 37 | 17 | 0 | 50 | 50 | 0 |
| 858 | OFFICE OF TECHNOLOGY & INNOVATION | 0 | 0 | 0 | 5 | 5 | 0 | 4 | 4 | 0 | 6 | 5 | 0 | 1 | 1 | 0 | 34 | 2 | 32 | 16 | 13 | 0 |
| 860 | DEPT. OF RECORDS AND INFORMATION SERVICES | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 |
| 866 | DEPARTMENT OF CONSUMER & WORKER PROTECTION | 0 | 0 | 0 | 3 | 3 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 3 | 3 | 0 | 8 | 3 | 4 | 8 | 4 | 2 |
| 868 | DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES | 0 | 0 | 0 | 9 | 9 | 0 | 4 | 4 | 0 | 10 | 10 | 0 | 0 | 0 | 0 | 62 | 9 | 48 | 18 | 16 | 2 |
| 901 | DISTRICT ATTORNEY NEW YORK COUNTY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 | 2 | 2 | 0 | 21 | 18 | 0 | 3 | 6 | 0 |
| 902 | DISTRICT ATTORNEY-BRONX COUNTY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 0 |
| 903 | DISTRICT ATTORNEY-KINGS COUNTY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 19 | 1 | 9 | 2 | 2 | 0 |
| 904 | DISTRICT ATTORNEY-QUEENS COUNTY | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 25 | 24 | 1 | 1 | 1 | 0 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------X

MICHAEL RIZZO,                          :

          Plaintiff,       :

     -against-                          :

NEW YORK CITY DEPARTMENT OF             :
SANITATION and CITY OF NEW YORK,

          Defendants.      :

-------------------------------X

**Docket No. 23-cv-07190-JMF**

**<u>AFFIRMATION OF</u>**
**<u>JIMMY WAGNER, ESQ.</u>**

JIMMY WAGNER, ESQ., an attorney duly admitted to practice before the Court of the State of New York, hereby affirms the following to be true, under penalty of perjury:

1.     On October 14, 2023, I submitted a FOIL request with the New York City Department of Citywide Administrative Services ("DCAS") requesting "across the city broken down by agency, how many Reasonable Religious Accommodation requests were made by employees to their City Employer for the years 2016-2022 with a tally if the accommodation was granted or denied."

2.     On November 22, 2023, I received a response from Alan Deutsch, Senior Counsel/Records Access Officer of DCAS, which provided "a report showing the number of religion-based reasonable accommodation requests made by City employees for the calendar years 2016 through 2022."

3.     That report, a true and accurate copy of which is attached hereto, indicated that in 2021, 1,169 New York City Department of Sanitation employees requested religious accommodations. 306 were approved and 858 were denied.

Dated: Brooklyn, New York
      December 21, 2023

Respectfully submitted,

Jimmy Wagner
Attorney-at-Law
2055 Flatbush Ave
Brooklyn, NY 11234
Office: 929-477-8889

2

**Fwd: FOIL Request - Reasonable Religious Accommodation Requests**

1 message

**Jimmy Wagner** <jimmy013@gmail.com>                                    Thu, Dec 21, 2023 at 11:09 AM
To: Christina Martinez <christinamartinezesq@gmail.com>

Here you go.

Jimmy Wagner
Attorney-at-Law
2055 Flatbush Ave
Brooklyn, NY 11234
Office: 929-477-8889
Cell: 718-288-2048
https://www.jwagnerlegal.com


---------- Forwarded message ---------
From: **Alan Deutsch (DCAS)** <adeutsch@dcas.nyc.gov>
Date: Wed, Nov 22, 2023 at 10:55 AM
Subject: RE: FOIL Request - Reasonable Religious Accommodation Requests
To: Jimmy Wagner <jimmy013@gmail.com>


Mr. Wagner,


I'm writing in response to your Freedom of Information Request, copied below, for a report showing the number of religion-based reasonable accommodation requests made by City employees for the calendar years 2016 through 2022.


Enclosed is a report containing the requested information, as reported to DCAS.  Please note that, following each column showing the number of requests made in a given year, the following two columns show the disposition (granted/denied) of the requests made in the subject year.


 Sincerely,


  Alan Deutsch


**Alan Deutsch**

**Senior Counsel/Records Access Officer**

**NYC Department of Citywide Administrative Services (DCAS)**

**P: 212-386-6226 I adeutsch@dcas.nyc.gov**


**From:** Jimmy Wagner <jimmy013@gmail.com>
**Sent:** Saturday, October 14, 2023 10:54 AM
**To:** foilrequest (DCAS) <foilrequest@dcas.nyc.gov>
**Subject:**  Reasonable Religious Accommodation Requests - FOIL REQUEST


Dear Sir or Madam:


I am requesting across the city broken down by agency, how many Reasonable Religious Accommodation requests were made by employees to their City Employer for the years 2016-2022 with a tally if the accommodation was granted or denied.


Thank you.


Jimmy Wagner

Attorney-at-Law

2055 Flatbush Ave

Brooklyn, NY 11234

Office: 929-477-8889

Cell: 718-288-2048

https://www.jwagnerlegal.com


Sent from the Department of Citywide Administrative Services. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.

Reasonable Accommodations Requests (Religion) 1-1-16 to 12-31-22.xlsx
15K

EXHIBIT 3a

## FW: Additional Details for Sep 13 Full-Time Return to the Office

From: Hong, Sonya (DOF) (hongsonya@finance.nyc.gov)

To: somark58@yahoo.com

Date: Wednesday, September 8, 2021 at 08:25 AM EDT

RTW

**From:** DOFEmployeeConnect <DOFEmployeeConnect@finance.nyc.gov>
**Sent:** Tuesday, September 7, 2021 7:20 PM
**To:** DOFEmployeeConnect <DOFEmployeeConnect@finance.nyc.gov>
**Cc:** DOFEmployeeConnect <DOFEmployeeConnect@finance.nyc.gov>
**Subject:** Additional Details for Sep 13 Full-Time Return to the Office

Dear DOF Employees,

As you know, we have been informed that all City agencies will resume pre-March 2020 work schedules (five days a week in the office) beginning Monday, September 13. On behalf of Commissioner Sherif Soliman, we thank you for your productive and professional service to the City of New York for the past year-and-a-half, and we look forward to welcoming all staff back to the office full time.

Below please find additional important details about our full-time return to the office.

**I. Agencywide Town Hall Meeting**

Please join us for a town hall meeting to learn more and have the opportunity to ask questions about our final phase to return to the office. We will hold two town hall sessions; click the links below to join the meetings. All employees are encouraged to attend.

- Thursday, September 9, 2:30 p.m. - 4:00 p.m.: Click here to join the meeting
- Friday, September 10, 10:00 a.m. - 11:30 a.m.: Click here to join the meeting

**II. COVID-Safe Requirement (Proof of Vaccination or Testing)**

The COVID-Safe Requirement (Executive Order 78) requires all employees to show either one-time proof of vaccination or a negative COVID-19 test once every seven days. If you have not yet submitted your proof of vaccination, please send it to DOFCOVIDVaccine@finance.nyc.gov.

For employees who choose to be tested weekly, rather than submit proof of vaccination, a negative COVID-19 PCR test taken within the preceding seven days is required. Beginning Monday, September 13, 2021, and every Monday thereafter, employees will be required to provide a negative test result to the Office of Employee Services (OES) by 12:00 p.m.  Employees may also send an email to DOFCOVIDVaccine@finance.nyc.gov to authorize OES to use previously submitted vaccination documentation for compliance.

To submit your test results, send an email to your Timekeeper Representative within the specified timeframe. Rapid antigen test results and at-home tests will not be accepted.

### III. Where to Get Vaccinated or Tested

Vaccination is free and convenient, and community-based vaccination sites are available throughout the NYC area. Vaccination sites can be found via www.nyc.gov/vaccinefinder or by calling 877-VAX-4-NYC. In addition, information about mobile and pop-up vaccination sites can be found here.

The time and leave policy for vaccinations remains the same:  employees may take up to four hours of excused leave for travel during scheduled work hours to the administration site and receipt of the vaccination for each required injection of the vaccine.

Please review the Citywide Policy for COVID-19 Vaccination for additional information , including requesting time off to receive a vaccine during work hours.

For more information on testing sites in the five boroughs, visit www.nyc.gov/covidtest. You can also receive a test specifically at a City-sponsored site.

### IV. Face Covering Policy

All employees and contractors will be required to wear a face covering at all times, **even if they are vaccinated**, while in a shared indoor City workspace. Employees working outside must wear a face covering when interacting with members of the public. Please see DCAS Directive 2020-1 for more details.

Thank you for your continued cooperation. We will share additional updates as they become available. If you have questions, please email DOFEmployeeConnect@finance.nyc.gov.

Thank you.

*Office of Employee Services*

DOFEmployeeConnect@Finance.nyc.gov



***Remember to visit the OES SharePoint site.***



EXHIBIT 3b

**Tax Policy & Data Analytics**
**Re-Opening Plan Work Schedule - Hybrid/Days in office**

| | |
|---|---|
| **096**<br>Karen Schlain    (Thu/Frid)<br>(Wed/Thu/Fri) Telework | (Office #1) |
| **095 -Grp B**<br>David Ho<br>wk1 (Thu/Frid)<br>wk2(Wed/Thu/Fri) | (Office #2) |

| 192 - Grp B<br>Shyann Browne<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) Telework | 080 - Grp A<br>David Adler<br>wk1 (Mon,Tue,Wed)<br>wk2(Mon,Tue) | 081<br>Vacant | 063 - Grp A<br>Marie Lum<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 066 - Grp B<br>Marina Tsinis<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) | 048 - Grp A<br>Lilya Sukach<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 050 - Grp B<br>Hsing (May) Lee<br>wk1 (Thu/Frid)<br>wk2(Wed/Thu/Fri) | 031 Grp A<br>Steven Pawlowski<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 030 - Grp B<br>Kijong Kim<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) |
|---|---|---|---|---|---|---|---|---|
| 197 Grp A<br>Rene'e Tolliver<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 085<br>Vacant | 088 - Grp A<br>Huilu (Sandy) Li<br>wk1(Mon,Tue,Wed)<br>wk2(Wed/Thu/Fri) Telework | 068 -Grp B<br>Maricar Mabutas<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) | 071 - Grp A<br>Nicole Hills<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 053 - Grp B<br>Seth  Samuelson<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) | 047 - Grp A<br>John Campagne<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 025 - Grp A<br>Oren Shmuel<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | |
| | 089 - Grp A<br>Michael American<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 087<br>Vacant | 072 - Grp A<br>Sherill Rigual<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue)Telework | 064 - Grp B<br>Korvin Vicente<br>wk1 (Thu/Frid)<br>wk2(Wed/Thu/Fri) | 052 - Grp A<br>Matthew Penfold<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 051 -Grp B<br>Alexander James<br>wk1 (Thu/Frid)<br>wk2(Wed/Thu/Fri) | 028 - Grp A<br>Wanda Kam<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 029<br>CWPYMT |

Sonya Hong<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri)<br>Telework

| 200 - Grp B<br>Ziying Li<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) | | 091 - Grp A<br>Amal Ikhlef<br>(Mon,Tue,Wed)<br>(Mon,Tue)Telework | 092 - Grp B<br>Louis Pereira<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) | 057 - Grp A<br>John Sarich<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) | 058    Vacant |
|---|---|---|---|---|---|
| 187 - Grp A<br>RachelOdes<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue)Telework | | 093 - Grp B<br>Di Han<br>wk1(Thu/Frid)<br>wk2(Wed/Thu/Fri) | 094 - Grp A<br>Steven Robinson<br>wk1(Mon,Tue)<br>wk2(Mon,Tue)<br>Telework | 059<br>Vacant | 060 - Grp A<br>Brett Morgenstern<br>wk1(Mon,Tue,Wed)<br>wk2(Mon,Tue) |

EXHIBIT 4

Name: Sonya Hong                                                    Date: 11/16/2021

To Whom It May Concern,

I am appealing the Department of Finance EEO's decision to deny my religious exemption request on November 12, 2021 for the COVID-19 vaccine mandate.  My religious exemption was denied because I allegedly failed to provide any documentation or information that established that I am unable or not permitted to take the vaccine.  I wrote the reasons why I could not take the Covid-19 vaccines based on my religious beliefs.  I believe that my personal religious beliefs, practice and conviction was enough, but I have provided two supporting documentations.  I attached a letter from Reverend Richardson and another documentation about my denomination's (the Assemblies of God) neutral stance on the Covid-19 vaccine.  The following is a similar religious exemption request to the Covid-19 vaccine that I sent to the Department of Finance EEO department.

I have a sincerely held religious belief that prevents me from being vaccinated by the Covid-19 vaccines authorized by the FDA.  I believe that the Covid-19 vaccines are the mark of the beast from the Bible.  It is part of the end times prophesized in the book of revelations when we lose our freedom.  My body is the temple of the Holy Spirit and I cannot give consent to introduce anything that could re-designs God's work.  My God is perfect.  God created the body both "fearfully and wonderfully" (Psalm 139:13-16).  In I Corinthians 6:19, the Bible states that the body is the temple of the Holy Spirit.  It says, "…do you not know that your body is the temple of the Holy Spirit who is in you, whom you have from God, and you are not your own?"

I was raised in a Christian household and church, went to Christian school in my early childhood, married a Christian and raised my children in the Christian faith.  My children have been attending Christian church run daycares, camps and after-school since their birth.  I took family leave from the workplace this past summer because two of the churches I used closed their daycare and summer camp due to the Covid-19 pandemic.  Being a Christian is the most important in my family.  My family prayed to the Lord about the Covid-19 vaccine and read the scriptures in the Bible for guidance.  Based on the conflicts, mandates, and events in the today's world it was revealed to us that now is the foretold time from the Bible.

In the Bible, the book of Revelations talks about a time where there will be a ruler that mandates everyone to have to do something.  In Revelations chapter 13, verses 16-17, states "He causes all, both small and great, rich and poor, free and slave, to receive a mark on their right hand or on their foreheads, and that no one may buy or sell except one who has the mark or the name of the beast, or the number of his name." As described in the Bible, the Covid-19 vaccine shot is in the arms and the forehead is part of regular free PCR testing and painfully up through the nose.  For the weekly testing requirement at work, I chose to pay for the Covid-19 saliva test at Mount Sinai Hospital which is not covered by insurance and cost $140.

The Covid-19 vaccine mandate and "Key to NYC" from the Mayor of New York City makes me feel persecuted for following my Christian beliefs.  The "Key to NYC" Covid-19 vaccine mandate punishes me and my family from participating in things like indoor dining, entertainment, museums, zoos, gyms, catering halls, grocery with indoor dining and even out-door concerts and New Year's Eve in Time Square.  I cannot buy food and dine in the restaurant or buy a ticket to a movie without taking the

Covid-19 vaccine.  Now the mandate threatens my job, a way to make money or a living and could lead to homelessness.  I believe that the Covid-19 vaccines is the mark of the beast that is written about in Revelation chapter 13, verses 16-18.  I am being forced to choose between my religious beliefs and my job.

This mandate is foretold in the Bible in the book of Revelation of a time when people will be forced to receive the mark of the beast in order to live, buy or sell.  Currently, we seem to be in this troubled times with judgement day coming soon and the religious are being threatened to lose their jobs and become unable to buy a simple thing like food in a restaurant if we do not receive the mark of the Covid-19 vaccine.  On judgement day, I will stand alone with God and be held accountable for only my life and actions without a representative like the minister, mayor or governor speaking for me.  My relationship with God is personal and without intermediaries.  As stated in John 3:16, "For God so loved the world, that he gave his only begotten Son, that whosoever believeth in him should not perish, but have everlasting life."

What deeply troubles me is that the Mayor of New York City went to church to tell the congregation that this Covid-19 vaccine is not the mark of the beast.  He said "I want to tell everybody, you're not getting the 666 in this vaccine, OK?...I want to tell you straight up, there is no 666, there's no conspiracy."  Also, the Governor of New York spoke at the Christian Cultural Center in Brooklyn and said, "God did answer our prayers. He made the smartest men and women, the scientists, the doctors, the researchers - he made them come up with a vaccine. That is from God to us and we must say, thank you, God. Thank you.  And I wear my 'vaccinated' necklace all the time to say I'm vaccinated. All of you, yes, I know you're vaccinated, you're the smart ones, but you know there's people out there who aren't listening to God and what God wants. You know who they are.  I need you to be my apostles. I need you to go out and talk about it and say, we owe this to each other."  The Governor said she needed their help to reach the vaccine-hesitant and say "please get the vaccine because I love you and I want you to live…"  The Bible talks about false prophets.  Contrary to her talk to the Brooklyn congregation, the Governor of New York appealed a federal judge's ruling that allows for religious exemptions from the vaccine mandate for healthcare workers pending final ruling.  The Governor also referenced her necklace that symbolizes being vaccinated.  This symbolism reminds me of a cult.  I was being bribed to sell my soul and get the Covid-19 vaccine for $500.  Our enemy is a deceiver.  In Genesis chapter 3, verses 4-5, "The serpent said to the woman, You surely will not die!  For God knows that in the day you eat from it your eyes will be opened, and you will be like God, knowing good and evil."

I am requesting a religious exemption from the Covid-19 vaccine mandate based on my Christian faith and more importantly, my one-to-one relationship with God and the spirit of God that resides within.  My religious principles conflicts with Mayor De Blasio's Covid-19 vaccine mandate.  The Covid-19 vaccines have fractured relationships between people and created a new reason for discrimination.  Vaccination status has divided family, friends and co-workers.  I feel I am in a war between the vaccinated versus the unvaccinated.  My faith in God prevents me from taking any of the current Covid-19 vaccines since I feel it is the mark of the beast and I cannot have the Covid-19 vaccines injected into my body which is the temple of the Holy Spirit.   As a Christian, I am being persecuted and losing my freedom through the vaccine mandate and "Key to NYC" for my religious beliefs.

Thank you,

Sonya Hong

EXHIBIT 5

To Whom It May Concern:

I have a dormant lung disease and I am requesting a medical exemption and reasonable accommodation from the Covid-19 vaccine mandate.  Receiving the Covid-19 vaccine or getting infected with Covid-19 can re-activate my lung disease and lead to respiratory failure. I am at risk to be infected by Covid-19 from either a vaccinated or un-vaccinated individual.  The Covid-19 vaccine is too new and risky to know the long-term effects on my medical condition.  I am concerned about the Covid-19 vaccine or new type of mRNA drug impact on my condition where there is no long-term drug trial or study available.  Even after the birth of both my children, I was tested at the hospital on both occasions to see if my lung disease was re-activated.  Any type of stress, including side effects from a vaccine or childbirth, on my body can trigger my pulmonary disease.

Currently, I have a hour commute by bus and 2 trains to get to work.  Sick people are on the bus and train and they are not screened for sickness.  Once I am at work, I sit within 2 feet of 4 other co-workers.  Yet, our group meetings are conducted online and conference rooms are not permitted for team meetings.  I work as a data analyst and I do not have a public facing job.  Since my office and public transportation has no social distancing practices, I am asking for reasonable accommodation by temporarily modifying my working conditions and environment to limit my exposure to coronavirus because I am at high risk to re-activate my pulmonary disease until the pandemic is officially declared over for NYC.

I request a medical exemption and reasonable accommodation from the Covid-19 vaccine mandate.  It is dangerous to my health to take the Covid-19 vaccine with severe side effects that can trigger my lung disease and which does not stop infection, spread or death from Coronavirus but can possible prevent hospitalization.  In the past when people took the vaccines for diseases like polio, they did not get polio.  The Covid-19 vaccine does not prevent me from getting infected with the Coronavirus disease.  I successfully teleworked or worked remotely from March 2020 to September 2021.  Paying out of pocket for the weekly saliva Covid-19 testing is a financial burden.  I am open to discussing any options available.

Please see the attached medical documentation.

Thank you,

Sonya Hong

EXHIBIT 6a



November 12, 2021

Sonya Hong
41-22 147 Street
Flushing, NY 11355

**RE: Vaccine Mandate Request for Reasonable Accommodation**

Dear Sonya Hong:

On October 27, 2021, the Equal Employment Opportunity office ("EEO") received your request for a reasonable accommodation for an exemption from the Order of the Commissioner of the Department of Health and Mental Hygiene to Require COVID-19 Vaccination for City Employees, dated October 20, 2021 (the "vaccine mandate"), based on religion.  Your request to be exempt from the vaccine mandate has been denied.

You stated that "your religious beliefs and practices are sacred and personal to you, your family and to those who share your belief objects to the Covid-19 vaccine on religious grounds because it has brought evil by breaking and divided family, friends and co-workers based on the vaccination status. Feels the Vax is the "mark of the beast and demotic" However, you failed to provide any documentation or information that established that you are unable or not permitted to receive any of the FDA authorized COVID-19 vaccines.  Your request to be exempt from the vaccine mandate cannot be approved at this time.

If you do not agree with this determination, you may appeal this decision, in writing, within 3 days of receipt of this decision. Please submit your appeal and all supporting documentation to: www.nyc.gov/vaxappeal.

Appeal decisions will be made by November 25, 2021 and the agency will be notified via the www.nyc.gov/vaxappeal portal.  If your appeal is declined, you will have three (3) business days to come into compliance by submitting proof of vaccination.


Sincerely,

*Nichole E. Grant*

EEO Investigator
CC: EEO File

EXHIBIT 6b

From: noreply@salesforce.com <noreply@salesforce.com> On Behalf Of NYC Employee Vaccine Appeals

Sent: Sunday, December 19, 2021 6:58 PM

To: Hong, Sonya (DOF) <HongSonya@finance.nyc.gov>

Subject: [EXTERNAL] Reasonable Accommodation Appeal Determination


CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.  Forward suspect email to phish@cyber.nyc.gov <mailto:phish@cyber.nyc.gov>  as an attachment (Click the More button, then forward as attachment).


The City of New York Reasonable Accommodation Appeals Panel has carefully reviewed your Agency's determination, all of the documentation submitted to the agency and the additional information you submitted in connection with the appeal. Based on this review, the Appeals Panel has decided to deny your appeal. This determination represents the final decision with respect to your reasonable accommodation request.


The decision classification for your appeal is as follows: Does Not Meet Criteria


Pursuant to the City of New York's policy concerning the vaccine mandate, you now have three business days from the date of this notice to submit proof of vaccination. If you do not do so, you will be placed on a leave without pay (LWOP).


_____


Sent from the Department of Citywide Administrative Services. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.

EXHIBIT 7

**Hong, Sonya (DOF)**

| | |
|---|---|
| **From:** | Marshall, William (DOF) |
| **Sent:** | Tuesday, May 31, 2022 10:31 PM |
| **To:** | Hong, Sonya (DOF) |
| **Cc:** | Muir, Serena (DOF) |
| **Subject:** | Fwd: [EXTERNAL] Notification of Appeal Determination for Sonya Hong |

Get Outlook for iOS

**From:** noreply@salesforce.com <noreply@salesforce.com> on behalf of NYC Employee Vaccine Appeals <vaxappeal@dcas.nyc.gov>
**Sent:** Tuesday, May 31, 2022 9:12:02 AM
**Subject:** [EXTERNAL] Notification of Appeal Determination for Sonya Hong

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.  Forward suspect email to phish@cyber.nyc.gov as an attachment (Click the More button, then forward as attachment).

This is to advise you that the City of New York Reasonable Accommodation Appeals Panel has decided to deny the appeal of Sonya Hong.

Employees who were able to submit their appeals directly through the portal will be notified by e-mail. If you submitted Sonya Hong's appeal on their behalf, we ask that you notify them promptly of this determination. If the appeal was denied, Sonya Hong will have **three business days** from the date you inform the employee to submit proof of vaccination. If the employee does not, they will be put on LWOP. If the appeal was granted, the employee will be permitted to continue coming to work unvaccinated on the condition they continue weekly testing.

Sent from the Department of Citywide Administrative Services. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. This footnote also confirms that this email message has been swept for the presence of computer viruses.

EXHIBIT 8



**Department of Finance**

Office of Employee Services
66 John Street, 9th Floor
New York, NY 10038
Tel. 212.291.4749
Fax 212.361.1500

Corinne Dickey
Assistant Commissioner

June 30, 2022

Sonya Hong
41-22 147th Street
Flushing, NY 11355

Dear Ms. Hong,

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees. Compliance with that Order is a condition of employment. Since you have not complied with the Order despite notice and an opportunity to do so and agreed in a signed waiver to resign your position should you not comply by June 30, 2022, **your employment with the City of New York is terminated, effective June 30, 2022.**

You may have the opportunity to purchase continued health coverage under COBRA. If so, you will receive information directly from NYCAPS Central about this program.

Department of Finance policy requires that you return any property such as a cell phone, laptop, official identification card, access key card or any other city equipment prior to the release of your final paycheck of eligible leave balances.

Please contact Florence Mallette in the Human Resources Management unit at mallettef@finance.nyc.gov or 212. 291. 4762 by no later than Wednesday July 6, 2022, to arrange a date and time to return all DOF issued materials. Failure to do so will result in delay in payment for your eligible leave balances.

Thank you for your service to the City of New York.

Sincerely,

Corinne Dickey

c: Personnel File

EXHIBIT 9

NYS DEPARTMENT OF LABOR
PO BOX 15131
ALBANY NY 12212-5131

NEW YORK STATE DEPARTMENT OF LABOR
NOTICE OF DETERMINATION TO CLAIMANT
REVISED DETERMINATION

DATE MAILED: 9/26/2022
SSN: ***-**-4148 LO: 831

EMP: THE CITY OF NEW YORK

SONYA HONG
41-22 147TH ST
FLUSHING NY 11355

PLEASE REFER TO THOSE ITEMS WHICH ARE SELECTED [X] BELOW AND READ THE BACK OF THIS FORM

1. [XX] NOTICE OF DETERMINATION

NO UNEMPLOYMENT INSURANCE BENEFITS WILL BE PAID TO YOU FOR THE PERIOD BEGIN-
NING 07/01/2022 UNTIL YOU HAVE SUBSEQUENTLY WORKED FOR AN EMPLOYER AND EARNED
AT LEAST 10 TIMES YOUR WEEKLY BENEFIT RATE. EMPLOYMENT AND EARNINGS FROM NON
COVERED, EXCLUDED OR SELF-EMPLOYMENT WILL NOT COUNT. YOUR WEEKLY BENEFIT RATE
IS $504.

DETERMINATION

YOU WERE DISCHARGED FOR MISCONDUCT IN CONNECTION WITH YOUR EMPLOYMENT WITH
THE ABOVE EMPLOYER. BECAUSE OF THIS DETERMINATION, YOU WILL NOT BE ABLE TO
USE YOUR WAGES FROM THIS EMPLOYER BEFORE 07/01/2022 TO COLLECT UNEMPLOYMENT
INSURANCE BENEFITS IN THE FUTURE.

REASON

YOU WERE DISCHARGED ON 07/01/22 BECAUSE YOU REFUSED TO GET THE COVID
19 VACCINATION AS REQUIRED BY YOUR EMPLOYER PER THE DECEMBER 2021 NYC VACCINE
MANDATE. YOUR EMPLOYER INFORMED YOU ON 11/01/21 THAT RECEIVING THIS
VACCINATION WAS REQUIRED TO CONTINUE YOUR EMPLOYMENT, AND MANDATORY
VACCINATIONS ARE PERMISSIBLE UNDER NYS LAW. YOU KNEW OR SHOULD HAVE KNOWN
THAT YOUR ACTIONS WOULD JEOPARDIZE YOUR JOB.

2. [ ] NOTICE OF DETERMINATION OF WILFUL MISREPRESENTATION

REASON

[XXX] This notice supersedes the one sent you dated _____8/25/2022_____ which has been
cancelled.

**TO PROTECT YOUR RIGHTS, READ THE BACK OF THIS FORM**    By: LABOR SERVICES REPRESENTATIVE
FOR THE COMMISSIONER OF LABOR

LO 412 (4-99)

EXHIBIT 10

Case 1:25-cv-00922-LDH-VMS   Document 31   Filed 09/15/25   Page 70 of 91 PageID #: 218

# Fwd: UPDATE: Vaccine Mandate Info, Incentives, and FAQs

**From:**   Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**To:**     'somark58@yahoo.com' <somark58@yahoo.com>,
            mwhitset@phybertek.com <mwhitset@phybertek.com>
**Subject:** Fwd: UPDATE: Vaccine Mandate Info, Incentives, and FAQs
**Date:**   Friday, October 22, 2021 7:57 AM
**Size:**   982 KB

---

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Administrative Bulletins <AdministrativeBulletins@doitt.nyc.gov>
**Sent:** Thursday, October 21, 2021 4:06:02 PM
**Subject:** UPDATE: Vaccine Mandate Info, Incentives, and FAQs

Dear Colleagues:

As you know, the Mayor announced yesterday that all City employees must submit proof of vaccination against COVID-19 (at least one dose) **by October 29, 2021 at 5PM**.  Please see below (and attached) for answers to Frequently Asked Questions regarding the new mandate and related incentive programs.

NOTE: Employees who believe they are eligible for a medical or religious exemption or accommodation from vaccination must complete the attached Reasonable Accommodation Request Form to EEOandDiversity@doitt.nyc.gov **no later than October 27, 2021.**
Employees who submit accommodation requests <u>after</u> October 27th will be placed on Leave Without Pay until their reasonable accommodation is decided, including any appeals.  Medical or religious accommodations will only be granted in limited circumstances.

**What can I submit as proof of vaccination?**
Proof must be:
- An official CDC card or other official immunization card bearing the employee's name and date(s) of vaccine administration. The employer must see this document or a photograph of it;
- An Excelsior Pass issued by the State of New York; or
- The NYC COVID SAFE app that clearly displays an image of the CDC card or other official immunization card with the above noted requirements. The NYC COVID SAFE app can be downloaded for Apple or Android (or by searching "NYC COVID Safe" on Apple app store or Google Play store).

**Where do I submit proof of vaccination?**
Contact HRCommunications@doitt.nyc.gov to arrange for electronic, in-person, or virtual submission/verification of proof of vaccination.

**What incentives are available for vaccination? How do I get the $500 for getting my first dose?**

From October 20-29, 2021, employees will be eligible to receive $500 through payroll, in addition to a $100 gift card available at City operated vaccination sites, if they receive their first vaccine dose during that time period. Please visit https://www1.nyc.gov/site/coronavirus/vaccines/vaccine-incentives.page for a full list of incentives offered for vaccination. In addition, City employees are eligible to receive up to three hours of compensatory time under PSB 600-4 Temporary Citywide Policy for Vaccination of City Employees against SARS-CoV-2.

**Is weekly testing still in effect?**
Until October 29, weekly testing is still required for an employee who has not yet received their first dose. Any City employee who provides documentation of having received one dose of any COVID-19 vaccine on or before October 29, 2021 at 5 PM will not be required to continue weekly testing. An employee who receives the first dose of any COVID vaccine after October 29, 2021 will be required to undergo weekly testing until they submitted proof of full vaccination.

**Is one dose (of a two-dose cycle) enough to satisfy the requirement?**
No.  Regardless of date of vaccine, if the City employee received a two-dose vaccine, the employee must provide documentation that the second dose has been administered within 45 days of the first dose. Failure to do so will result in the employee being placed on leave without pay.

**What if I don't submit proof of vaccination?**
Employees who do not submit proof of vaccination will not be eligible to work and will be placed on Leave Without Pay beginning November 1, 2021.

As always, please contact HRCommunications@doitt.nyc.gov with any questions.

Stay well!

Human Resources

---

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**Reasonable Accomodation Request Form June21.pdf** 359 KB

**Vaccine Mandate FAQ 102121.pdf** 332 KB

EXHIBIT 11

Name: Mark Whitsett

Date: 10/27/2021

Religious Exemption for Vaccine Mandate

I have a sincerely held religious belief that prohibits me from being vaccinated with the COVID-19 vaccine. The COVID-19 mandate required by the City of New York for the City of New York employees is in direct opposition to my spiritual relationship with God.

I was born the youngest of 6 children. After my father received his first son (my brother), both of my parents decided that my brother would be their last child. My mother was approaching 30 years of age, which at that time was considered late, made the choice to close her Fallopian tube, but God had another plan. At the age of 29, my mother found herself pregnant with me despite the extent of her efforts. It was at that point, I was given to God and was raised in the church. My entire birth family follows the word of God. I keep fellowship in the churches, but I do not assume that any church is perfect in their views of God's message. Only the word of God and his words are without error.  My relationship with God is through his Son. It is the only way.  My family and I defer to the bible to solve all discrepancies or errors in the words and actions of the world. I am guided by the spirit of God and it is my personal arbitrator in life.

Since the birth of my two children, they have always attended Christian: daycare, after-school, summer camp and religious studies. God is of the utmost importance to every member of my household to date. Our family prayed to God about the COVID-19 vaccine on how to approach this matter. We asked for directions and it was revealed to us simply by asking. God gave the vision to see the truth.

In my request for religious exemption, I must state clearly what religion means. Religion is the belief system in a God and/or in some cases of others, many gods. In my religious belief there is no man, woman, king, minister, pope, president or group of people that stands between myself and my beloved and almighty God. On the day of judgment, I will stand alone before God and be held accountable for my life and my life only. I will not have a representative like a priest, minister, governor or mayor speaking on my behalf. My relationship with God is personal and there is no higher authority and requires no intermediaries. Our Lord left behind the spirit of God that dwells within all that keeps his commandments. The cost of our sin was left at the cross from the blood of his Son. There is no need to confess my sins, I only need to ask for forgiveness.

*John: 15 If ye love me, keep my commandments. 16 And I will pray the Father, and he shall give you another Comforter, that he may abide with you forever; 17 Even the Spirit of truth;*

*whom the world cannot receive, because it seeth him not, neither knoweth him: but ye know him; for he dwelleth with you, and shall be in you.*

Firstly, the vaccine goes against my religious belief because these brand new vaccines work on the DNA. DNA is the base of life and design.  God created mankind and said it was good. According to my belief, because it is written in the book of God, that I cannot even give consent to having any substance that change, enhance, modify, temporarily or permanently the design of God's work, as my body is a temple of the Holy Spirit. Introducing synthetic substances to manipulate God's design is blasphemy, even under the name spiked protein.  It is written: **1 Corinthians 6:19** "What? know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and ye are not your own?"

Secondly, the strong handed vaccinations process (globally) represents the Mark of the Beast, which my God detailed in the Bible. God has clearly shown that we are living in these times. Across the globe people are dealing with the exact situation. The mandates of the vaccine in the arm OR regular testing in the foreheads using the PCR test, both of which have been described by God. I have opted out of both, by paying to have a saliva PRC test to meet the City of New York requirements.

*Revelation chapter 13 verses 16-18: And he causeth all, both small and great, rich and poor, free and bond, to receive a mark in their right hand, or in their foreheads: And that no man might buy or sell, save he that had the mark, or the name of the beast, or the number of his name. Here is wisdom. Let him that hath understanding count the number of the beast: for it is the number of a man; and his number is Six hundred threescore and six.*

This is the mark of the beast.  The current governmental leaders have already banned  people who did not receive the Mark from basic everyday activities, like the ability to buy food in a restaurant, to enter into grocery stores that have restaurants, to attend any indoor activities, to join large outdoor venues and even as far as mandating no vaccines, no job. One can surely not buy or sell if they have no income and are homeless.  I am sure this will continue and escalate. It is evident, we are living in the last days. How can anyone make someone choose between their God and feeding their children?

If one dares to think the idea is not valid, one would only have to look at the actions of our governmental leaders. The Governor of New York and the Mayor of New York City went to churches to address their members.

The scripture says: *Mark 13 21-22: And then if any man shall say to you Lo, here is Christ; or, lo, he is there; believe him not. For false Christs and false prophets shall rise, and shall shew signs and wonders, to seduce, if it were possible, even the elect.*

Our Governor talked to the congregation of Christian Cultural Center in Brooklyn and her words were as follows. "God did answer our prayers. He made the smartest men and women, the scientists, the doctors, the researchers – he made them come up with the vaccine. That is from God to us and we must say, thank you, God." The Governor also stated, "I know you're vaccinated, you're the smart ones, but you know there's people out there who aren't listening to God and what God wants. You know who they are." The Governor even asked the church to be her apostles and spread the good word about the vaccine. In my belief, this is the false prophecy that was written. I am uncertain how the Governor was able to make such a claim, but the bible warns us about false prophets and wonders of man. Why would the Governor believe her connection with God is somehow greater or more truthful than millions faithful followers of God who disagree? The Governor has been the most vocal advocate of removing people's religious protection. The Governor said the state will appeal a "disappointing decision" by a federal judge that allows for religious exemptions to its vaccine mandate for health care workers. The Governor stated, "I completely understand that people feel strongly about this, but sometimes you have to do a calculation of what is important." The Governor also said "people's deeply held beliefs are important, but we also have a public health objective which is overriding and that's the position we're taking in court." She clearly states public health overrides deeply held spiritual beliefs, which contradicts her message being that of God. This is blasphemy in the purest sense.

The Mayor of New York City who mandated vaccination of all city workers, went to New Life Outreach International church in the Bronx and spoke to the congregation and he said, "I want to tell everybody, you're not getting the 666 in this vaccine, OK?"  We followers of Yeshua know that our enemy is a deceiver and he uses people with or without their understanding. He has been a deceiver since the introduction of mankind, and he will deceive until the end of time. My soul is not for sale for $500 and a Metrocard.

*Genesis 3:4-5 "The serpent said to the woman, 'You surely will not die! For God knows that in the day you eat from it your eyes will be opened, and you will be like God, knowing good and evil."*

In conclusion, this procedure goes against my spiritual relation with God. I am requesting a religious exemption and reasonable accommodation from the COVID-19 vaccine based on my sincerely held religious belief. I cannot take the vaccine for two reasons: 1, it desecrates my body which is a temple of God and 2, it is the Mark of the Beast prophesied in Revelations.

The accommodation that I am requesting is the exemption from this satanic requirement. Currently, testing weekly causes an unreasonable financial stress, as I am forced to circumvent the free or insurance approved nasal PCR test by using the saliva test to remain in agreement with my religious beliefs.This test costs me $140 weekly and causes hardship. I've successfully worked remotely from March 2020 to September 2021,  as my job is not customer facing. My work in or out of the office requires that I connect remotely to servers locked in

datacenters that I do not have physical access to. Currently, all my meetings in or out of the office are held remotely on MS Teams.


Thank you,

Mark Whitsett

EXHIBIT 12

# Re: Reasonable Accommodation Appeal Denied

| | |
|---|---|
| **From:** | Whitsett, Mark <mwhitsett@doitt.nyc.gov> |
| **To:** | Brooks, Ayana M. <ambrooks@doitt.nyc.gov> |
| **Cc:** | mwhitset@phybertek.com <mwhitset@phybertek.com> |
| **Subject:** | Re: Reasonable Accommodation Appeal Denied |
| **Date:** | Tuesday, February 22, 2022 4:49 PM |
| **Size:** | 394 KB |

Hello Ayana,

I tried to email vaxappeal@dcas.nyc.gov  to request my appeal decision and the response from that address was:

*"This mailbox is not monitored; please do not reply or send an email to this mailbox."*

Please help me ascertain this information regarding my Citywide Panel Appeal decision.  I am currently on vacation.   I will reach out to you tomorrow by phone.

Regards,

-Mark Whitsett

---

**From:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Sent:** Tuesday, February 22, 2022 9:38 AM
**To:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Subject:** Re: Reasonable Accommodation Appeal Denied

Ayana Brooks,

I have not received an email from the Citywide Appeal Panel directly nor an email of their decision via Salesforce. No email has entered my inbox, junk, spambox or clutter folders. These folders were kept clear because I was aware that the agency never whitelisted a vendor they contracted to handle this very important matter.   Everyone in my particular situation (DOITT and other agencies) received notification directly from Salesforce with a reason for denial.  I understand that DOITT is not in control of this process, but my appeal was sent to the Appeal Panel directly and not DOITT. This is why I asked for an email to be sent to me from Salesforce.

The 3-waiver requirements that were specified in your email are not valid without receiving an answer  from the Citywide Panel  directly concerning my appeal to DOITT's initial denial decision. This is the purpose of the appeal.

The breakdown in the process could be the result of any of the following scenarios (but not limited to) :

1. There was a glitch in the process that caused them to contact the agency with erroneous information and I was not contacted due to a problem as a result.
2. The appeal information was mixed up with another employee's appeal and I was not contacted as a result.
3. The information concerning my appeal was lost or corrupted and a denial was defaulted.
4. The appeal that I uploaded was not sent directly to the panel, rather it was submitted on my behalf, which should not have been the case. I uploaded the documents to the portal. As stated in the unverified information provided, **"Employees who were able to submit their appeals directly through the portal will be notified by e-mail."**
5. The process was rushed and a denial was defaulted.

The point is, an error has been made and there is an unlimited explanation as to why.

The most critical detail that I am missing from this invalid process is my denial reason "**This decision classification for your appeals is as follows**" Without this reason, I am unable to discuss the denial with an attorney, especially with a deadline stipulated as a response.

Please have the Citywide Panel send the answer to me directly  with their decision regarding my appeal or ask IT Messaging to investigate why this very important legal detail has not entered my inbox.  A forwarded or copied email cannot be verified. I should have received an email from Salesforce when DOITT was notified. Something went terribly wrong with the process or procedure that leaves me in a grave disadvantage.


Regards,

-Mark Whitsett

---

**From:** Brooks, Ayana M. <ambrooks@doitt.nyc.gov>
**Sent:** Thursday, February 17, 2022 4:34 PM
**To:** Whitsett, Mark <mwhitsett@doitt.nyc.gov>
**Subject:** Reasonable Accommodation Appeal Denied

Mark-

We received notification that your appeal of your Reasonable Accommodation determination regarding vaccinations has been denied.  If an employee's appeal is denied, they must submit proof of the first dose of a vaccination **within 3 business days of this notification of the appeal denial,** and if part of a two-dose vaccine regimen, submit proof of a second dose within 45 days of receiving that second dose. If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will be placed on Leave Without Pay immediately and may be subject to termination.

**Please provide proof of vaccination by COB Wednesday, February 23, 2022.**

- **If you do not choose vaccination, you will be placed on Leave Without Pay (LWOP), and you may select from one of the following options.  If you do not plan to be vaccinated, <u>you may select one of these options within 21 days (no later than COB March 10, 2022).</u>  You are advised and encouraged to review the attached waiver options with your union and an attorney.**

-

1. **You can resign using the attached Resignation Waiver**.  With this option, you will be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days, to be paid following your resignation and my execution of this waiver.  By executing this waiver, you will be eligible for health benefits through June 30, 2022, unless you have health insurance available from another source.  <u>Review the attached Resignation Waiver for additional conditions of resignation.</u>

2. **You can submit notice of Retirement** (if eligible).  With this option, the City of New York agrees to allow you to use and receive payment for your accrued annual leave and compensatory time and agrees to allow you to be placed on terminal leave as opposed to being placed on Leave Without Pay in advance of your retirement date.  Your retirement from DoITT will become final after all of your accrued time and leave has been expended.  <u>Review the attached Retirement Waiver for additional conditions of retirement.</u>

-

3. **You can choose to extend your Leave Without Pay through June 30, 2022.**  With this option, will remain on Leave Without Pay through June 30, 2022 and, during this time, will be eligible for health benefits.  In the event you come into compliance with the October 20, 2021 order issued by the Commissioner of the Department of Health and Mental Hygiene mandating that all City employee be vaccinated against COVID-19, and seek to return from Leave Without Pay, you must inform DoITT before June 30, 2022 of your intent to return.  Once you notify DoITT of your intent to return, you have a right to return to the same work location as soon as is practicable but in no case more than two weeks following your notice of intent to return.  If you have not returned from Leave Without Pay before June 30, 2022, you will be deemed to have voluntarily resigned effective June 30, 2022.  <u>Review the attached Extended LWOP Waiver for additional conditions of the LWOP extension.</u>

   -

Ayana M. Brooks, Esq.
Associate Commissioner for HR, Labor Relations, and Engagement Programs
718.403.8620
917.671.8990
ambrooks@doitt.nyc.gov



**CONFIDENTIALITY NOTICE:** This communication, including any attachments, is intended only for the person(s) or entity(ies) to which it is addressed and may contain **CONFIDENTIAL** or **LEGALLY PRIVILEGED** material.  If you receive this message in error, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify

the sender immediately of such error by telephone or by return e-mail and delete the message and all attachments from your computer and destroy any hard copy.

---

This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

**screenShotVaxAppeal.png** 241 KB

EXHIBIT 13


**Information Technology & Telecommunications**

February 28, 2022

Mark Whitsett
97 Brooklyn Avenue, #3G
Brooklyn, NY 11216

Email: mwhitsett@doitt.nyc.gov

Dear Mark Whitsett:

This letter is being sent to confirm that you that you have been placed on Leave Without Pay ("LWOP") effective March 1, 2022 based on your non-compliance with City vaccine policy, specifically the NYC Health Commissioner Order dated October 21, 2021.

Please read the summarized guidance and deadlines below provided for by agreement between DC 37 (your union) and the City of New York.  You are advised and encouraged to consult with your union representative for further information.

- Your leave is not considered a disciplinary action, and you shall continue to be eligible for health benefits while on Leave Without Pay.
- While on Leave Without Pay, you are prohibited from engaging in gainful employment.
- If you become vaccinated while on Leave Without Pay and provided appropriate documentation to the agency you may have the right to return to your same work location following notice and submission of documentation. See the link here for vaccination locations: https://vaccinefinder.nyc.gov/.

Leave and Separation Options **(Time-Sensitive)**
**You must select one of the following options no later than March 10, 2022.**

1. **You can resign** using the attached **Resignation Waiver**.  With this option, you will be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days, to be paid following your resignation and my execution of this waiver.  By executing this waiver, you will be eligible for health benefits through June 30, 2022, unless you have health insurance available from another source.  Review the attached Resignation Waiver for additional conditions of resignation.

2. **You can submit notice of Retirement** (if eligible).  With this option, the City of New York agrees to allow you to use and receive payment for your accrued annual leave and compensatory time and agrees to allow you to be placed on terminal leave as opposed to being placed on Leave Without Pay in advance of your retirement date.  Your retirement from DoITT will become final after all of your accrued time and leave has been



expended.  <u>Review the attached Retirement Waiver for additional conditions of retirement.</u>

3. **You can choose to extend your Leave Without Pay through June 30, 2022.**  With this option, will remain on Leave Without Pay through June 30, 2022 and, during this time, will be eligible for health benefits.  In the event you come into compliance with the October 20, 2021 order issued by the Commissioner of the Department of Health and Mental Hygiene mandating that all City employee be vaccinated against COVID-19, and seek to return from Leave Without Pay, you must inform DoITT before June 30, 2022 of your intent to return.  Once you notify DoITT of your intent to return, you have a right to return to the same work location as soon as is practicable but in no case more than two weeks following your notice of intent to return.  If you have not returned from Leave Without Pay before June 30, 2022, you will be deemed to have voluntarily resigned effective June 30, 2022.  <u>Review the attached Extended LWOP Waiver for additional conditions of the LWOP extension.</u>

**If you do not provide proof of vaccination or select one of the above options on or before March 10, 2022, the agency will proceed with termination.**

Please contact your attorney and union representative with questions.  If you wish to return to work before March 10, 2022, please immediately contact <u>HRCommunications@doitt.nyc.gov</u> to arrange submission of your proof of at least one dose of vaccination against COVID-19.

Sincerely,

Ayana M. Brooks
Associate Commissioner for HR, Labor Relations & Engagement Programs


cc:    A. Perkis
       J. Daniel
       DC 37 (L 2627)

EXHIBIT 14



June 30, 2022

Mark Whitsett
97 Brooklyn Avenue, #3G
Brooklyn, NY 11216

Via email: Mwhitset@phybertek.com

Dear Mark Whitsett:

You have previously received notice regarding your failure to comply with the New York City Health Commissioner's Order requiring vaccination of all City of New York employees. Compliance with that Order is a condition of employment. Since you have not complied with the Order despite notice and an opportunity to do so and agreed in a signed waiver to resign your position should you not be in compliance by June 30, 2022, your employment with the City of New York will end, effective June 30, 2022.

Please ensure that all OTI/DOITT property is returned. You will receive information about COBRA and health coverage under separate cover.

Thank you for your service to the City of New York.

Sincerely,

Ayana M. Brooks
Associate Commissioner for HR, Labor Relations & Engagement Programs

cc:     A. Perkis
        J. Daniel
        File

EXHIBIT 15

SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

<u>**REINSTATEMENT AGREEMENT**</u>

**WHEREAS Mark Whitsett** was appointed to the competitive class civil service title of Certified IT LAN/WAN, Title Code No. 13652, by the Office of Technology & Innovation (OTI) on or about May 16, 2017 and thereafter passed probation; and

**WHEREAS,** on October 20, 2021, New York City Commissioner of Health David A. Chokshi, finding that a public health emergency within New York City to address the threat posed by COVID-19 to the health and . welfare of City residents was continuing, and that it was necessary for the health and safety of the City and its residents to exercise the power of the Board of Health to prevent, mitigate, control, and abate the emergency, issued an order that, in pertinent part, required all City employees to provide proof that they had been fully vaccinated against COVID-19 by a date certain and excluding them from the premises at which they worked if they did not provide such proof, unless they had received a reasonable accommodation releasing them from that requirement; and

**WHEREAS,** Mark Whitsett did not provide proof that they had been fully vaccinated by the required date and did not receive an accommodation releasing them from that requirement; and

**WHEREAS,** on or about June 30, 2022, Office of Technology & Innovation ~~dismissed Mark Whitsett~~ forced Mark Whitsett to resign from their position for failing to provide proof that they had been fully vaccinated; and

**WHEREAS,** on February 9, 2023, the New York City Board of Health resolved to make COVID-19 vaccination optional for certain City and Department of Education employees; and

**WHEREAS,** Mark Whitsett is eligible ~~to submit an application~~ for reinstatement to the title of Certified IT LAN/WAN in accordance with paragraph ~~6.2.6~~ 6.2.1 of the Personnel Rules and Regulations of the City of New York; and

**WHEREAS,** Rule ~~6.2.6~~ 6.2.1 of the Personnel Rules and Regulations of the City of New York authorizes Office of Technology & Innovation ~~in its discretion,~~ to reinstate Mark Whitsett with the approval of the Commissioner of the New York City Department of Citywide Administrative Services ("DCAS"); and

**WHEREAS,** Office of Technology & Innovation has determined that the reasons Mark Whitsett has set forth in their application for reinstatement are meritorious and that they should be reinstated to the title of [title]; and

**WHEREAS,** DCAS approves the determination, subject to the execution by Mark Whitsett of this Reinstatement Agreement and the annexed Waiver and Release.

**NOW,** it is hereby stipulated and agreed by Office of Technology & Innovation, DCAS and Mark Whitsett, that:

1.      Upon execution and delivery to Office of Technology & Innovation by Mark Whitsett of this Reinstatement Agreement and the Waiver and Release annexed hereto as Exhibit "A," pursuant to paragraph 6.2.6 of the PRR, (a) Office of Technology & Innovation will ~~exercise its discretion to~~ reinstate Mark Whitsett to the title of Certified IT LAN/WAN, Title Code No. 13652 and (b) DCAS will grant its approval of the Office of Technology & Innovation determination to reinstate Mark Whitsett to that title.

# SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

2.     ~~The reinstatement is subject to the existence of an appropriate vacancy at Office of Technology & Innovation and the approval of the filing of that vacancy by the Mayor's Office of Management and Budget ("OMB") and shall take effect within a reasonable time after OMB provides such approval.~~

3.     ~~In consideration of all of the provisions of this Reinstatement Agreement, Mark Whitsett hereby waives any and all rights of actions or claims against the City, Office of Technology & Innovation, DCAS and all present or former officials, employees, representatives, or agents of the City, Office of Technology & Innovation and DCAS ("Released Parties") for back pay, civil service rights and status for the period of the dismissal.~~

4.     Mark Whitsett shall execute and deliver to Office of Technology & Innovation all documents necessary to effect this agreement, including, without limitation, a Waiver and Release in the form annexed hereto as Exhibit "A."

5.     ~~Nothing contained herein shall be deemed to be an admission by the Released Parties that they have in any manner or way violated Mark Whitsett's rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, the City of New York, or any other rules, regulations or bylaws of any department or subdivision of the City of New York.~~

6.     ~~This Reinstatement Agreement shall not be offered as evidence in, nor is it related to, any other grievance, litigation, or settlement negotiations, except that the Stipulation may be used by any party in connection with any subsequent action or proceeding to enforce this Reinstatement Agreement.~~

7.     Mark Whitsett represents that they have read the foregoing Reinstatement Agreement, know its contents, and understand its terms and provisions and they have signed it of their own volition.

8.     ~~Nothing contained herein shall be deemed to constitute a policy or practice of the City of New York or any of its agencies.~~

9.     This Reinstatement Agreement contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Reinstatement Agreement regarding the subject matter of this Agreement shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

10.    This Reinstatement Agreement and Waiver and Release and any other document executed by the parties hereto in furtherance of the purposes of this Reinstatement Agreement and General Release, shall be governed by, interpreted, and enforced in accordance with the laws of the State of New York.

[Remainder of Page Intentionally Left Blank]

SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

11.     This Reinstatement Agreement may be signed in counterparts. A facsimile copy of this agreement will have the same force and effect as the original.

Dated: _6/28/2023_

For Office of Technology & Innovation:

_____

Mark Whitsett

For DCAS:

_____

3

SIGNED UNDER GREAT FINANCIAL DISTRESS - BECAUSE JOB WRONGLY REQUIRES A SIGNATURE.

### WAIVER AND RELEASE

**KNOW THAT I, Mark Whitsett,** in consideration of my reinstatement to the competitive class civil service title of Certified IT LAN/WAN, Title Code No. 13652, ~~hereby release and discharge the City of New York, the Office of Technology & Innovation (OTI), and the New York City Department of Citywide Administrative Services ("DCAS") and all past and present employees, representatives and agents of the City of New York, DOE and DCAS, or any or all of them, their successors and assigns, from any and all claims, liabilities or causes of action, obligations, damages, grievances and liabilities for back pay, civil service rights and status, arising out of the termination of my employment on June 30, 2022 by Office of Technology & Innovation for the period of dismissal.~~

This Waiver and General Release may not be changed orally.

**THE UNDERSIGNED HAS READ THE FOREGOING WAIVER AND RELEASE AND FULLY UNDERSTANDS IT.**

**IN WITNESS WHEREOF,** I have executed this Waiver and General Release this _20th_ day of June, 2023.

_____
Mark Whitsett

Sworn to before me this 20th
day of June, 2023

_____
**Notary Public**

LENIN GERMOSEN
Notary Public - State of New York
NO. 01GE6339296
Qualified in Bronx County
My Commission Expires Mar 28, 2024